**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

**68TH STREET SITE WORK GROUP,**

    **Plaintiff,**

    **v.**

**7-ELEVEN, INC.,** *et al.***,**

    **Defendants.**

                            **Civil Action No.**

                        **1:20-cv-03385-SAG**

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ARMACELL, LLC'S
MOTION TO DISMISS BASED ON LACK OF PERSONAL JURISDICTION AND
FAILURE TO STATE A CLAIM**

Armacell, LLC ("Armacell"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(2) and (6), submits this Memorandum of Law in support of its Motion to Dismiss the Complaint filed by plaintiff, 68th Street Site Work Group ("Plaintiff"). The Complaint should be dismissed because Armacell is not subject to this Court's jurisdiction and because the Complaint fails to state a claim against Armacell. The bare conclusory statement that Armacell is a successor to the entity that allegedly arranged for the transportation and disposal of hazardous substances at the Site is sorely insufficient to withstand a motion to dismiss under both Fed. R. Civ. P. 12(b)(2) and (6).

**STATUS OF ARMACELL**

Armacell is a Delaware limited liability company with its principal place of business in North Carolina. (Exhibit A, Declaration of Ciro Ahumada, ¶ 3.) None of Armacell's members are individual citizens of Maryland nor entities organized/incorporated or principally based in Maryland. (*Id.* ¶ 4.) Armacell owns no real property in Maryland, is not engaged in activities

which constitute doing intrastate business in the state, and accordingly has never registered with the Maryland State Department of Assessments and Taxation to do business in Maryland. (*Id.* ¶¶ 5-6.)

## **INTRODUCTION**

Plaintiff has filed an action under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 *et seq.* ("CERCLA"), against 160 defendants seeking contribution and a declaration of the defendants' liability for past and future costs incurred for hazardous substance cleanup and response at the 68th Street Superfund Site ("the Site") in the City and County of Baltimore, Maryland. (ECF 1 ("Compl.") ¶¶ 1, 4-26.) Plaintiff purports to bring claims against Armacell as the corporate successor to Monarch Rubber Company ("Monarch"), an entity that allegedly arranged for disposal or treatment of hazardous substances at the Site. (*Id.* ¶¶ 111-16.)

Armacell should be dismissed from this action because it is not subject to this Court's jurisdiction. Plaintiff does not – and cannot – allege that Armacell has sufficient minimum contacts with Maryland necessary for the Court to exercise general jurisdiction. Equally, specific jurisdiction does not exist over Armacell because none of the events underlying Plaintiff's claims arise out of any action directed by Armacell at Maryland. While Plaintiff alleges, without any factual support, that Armacell is the "successor" to an entity that purportedly arranged for or disposed of hazardous substances at the Site, Plaintiff fails to plead any facts that provide a legal basis for that conclusion. Further, the Complaint alleges no facts that would allow this Court to infer that Armacell is subject to liability.

Moreover, in deciding this Motion, the Court may consider the Asset Purchase Agreement ("APA") between Armacell and Monarch which confirms that Armacell merely

purchased certain assets of Monarch located in West Virginia. (Exhibit B, APA, § 1.2(a);

Schedule 1.2(a) (identifying the purchased real property as 100 Locust Avenue, Spencer West

Virginia 25276-0188); § 1.3(i) (expressly excluding from the transaction all assets located at

Monarch's Baltimore, Maryland facility).) The Court may also consider documents in the public

record that evidence Monarch's continued existence after the transfer of assets under the APA. In

no sense can Armacell be considered liable to Plaintiff, as a successor to Monarch, under

CERCLA. Accordingly, the Court should dismiss Armacell from this action.

## FACTUAL BACKGROUND

### I.     The Complaint's Allegations

The Complaint alleges that the Site is "an aggregate of seven landfills" and a former

concrete plant located on over 239 acres in Baltimore County and the City of Baltimore. (Compl.

¶¶ 4, 7.) Waste disposal activities allegedly occurred from the 1950s through the early 1970s. (*Id.*

¶ 6.) In 2017, the EPA and the State of Maryland entered into a consent decree with certain

potentially responsible parties ("PRPs") under 42 U.S.C. § 9607 for remediation of the Site. (*Id.*

¶ 22.) Plaintiff is an unincorporated association of twelve PRPs, each of which entered into the

2017 consent decree. (*Id.* ¶¶ 22, 27.)

The Complaint seeks contribution of past and future remediation expenses from 160

Defendants, each of which Plaintiff contends generated and/or transported hazardous substances

treated and/or disposed of at the Site. (*Id.* ¶ 1.) Plaintiff does *not* allege that Armacell generated,

transported, disposed of or arranged for the disposal of any hazardous substances to the Site.

Rather, Armacell's only purported connection to the Site is through Monarch Rubber Co.

("Monarch"), which entity Plaintiff alleges "by contract, agreement or otherwise, arranged for

disposal or treatment, or arranged with a transporter for transport for disposal or treatment of

waste containing hazardous substances at" the Site. (*Id.* ¶ 111.) Plaintiff alleges that Monarch manufactured rubber products and was responsible for waste streams of "rubber product waste, transportation waste, and general office waste" containing hazardous substances. (*Id.* ¶¶ 114-15.) With regard to Armacell, Plaintiff sole allegations are that "Armacell acquired Monarch," Armacell "is the successor to" Monarch, and Armacell refused to accede to Plaintiff's demand that it reimburse Plaintiff for response costs at the Site. (*Id.* ¶¶ 112-13, 117-18.) In the 156-page, 1,216 paragraph Complaint, these are the only allegations that purport to identify Armacell as a PRP under CERCLA, or as subject to the jurisdiction of this Court.

## II.  Armacell and the APA

While Plaintiff's Complaint concludes that Armacell "acquired" and is a "successor" to Monarch, Plaintiff does not allege any supporting facts or describe the nature of any transaction that would render Armacell a "successor" to Monarch. In 2005 and pursuant to an Asset Purchase Agreement ("APA"), Armacell purchased from Monarch certain assets used in or relating to the operation of a facility located in Spencer, *West Virginia*. (Ex. A ¶ 7; Ex. B § 1.2(a); Schedule 1.2(a).) The APA specifically excluded any assets or property associated with a separate facility owned by Monarch in Baltimore. (Ex. A ¶ 8; Ex. B § 1.3(i).) Moreover, the APA is governed by West Virginia law. (Ex. B § 13.7.) Under the APA, Armacell "shall not assume any liability or obligation of [Monarch] (i) in respect to the use, storage, transportation, discharge, handling or disposal of any Hazardous Material[1] . . . prior to the Effective Time . . ." (*Id.* § 1.4(b)(i); Ex. A ¶ 9.) The APA does not provide for the transfer of stock or shares in

---

[1] Hazardous Material is broadly defined in section 3.20(b) of the APA and includes "hazardous substance or materials, waste, pollutant or contaminant, defined as such in (or for the purposes of) the Environmental Laws," including CERCLA.

Monarch. None of Armacell's officers, directors, or members have been officers, directors, or shareholders of Monarch, and vice versa. (Ex. A ¶ 11.) Subsequent to the scheduled closing of the transaction on March 10, 2005 (*see* Ex. B § 10.1), Monarch sold its Baltimore facility to another entity, Devon/Pulaski LLC, on March 24, 2005. (Exhibit C, Maryland SDAT Real Property Report.) Documents filed with the State of Maryland, available at www.Maryland.gov, evidence that Monarch changed its name to DJDM Investment Company on April 1, 2005, and that DJDM Investment Company existed for at least ten years thereafter and changed its registered agent in 2013. (Exhibit D, Maryland Filings.)

Plaintiff 's Complaint advises the Court that "by letter dated August 28, 2020, Plaintiff demanded that Armacell reimburse Plaintiff for a specified amount of response costs incurred and to be incurred by Plaintiff" at the Site (Compl. ¶ 117), and "Armacell has refused to cooperate" and pay the demand. (*Id*. ¶ 118.) What Plaintiff fails to advise the Court is that in response to Plaintiff's demand, Armacell provided excerpts from the APA, clarifying the nature of Armacell's acquisition, and the public records reflecting Monarch's continued existence after the referenced asset sale, attached hereto as Exhibit C. (*See* Exhibit E, Attorney Correspondence, Sept. 24, 2020 Letter from Attorney Rushton to Attorney Guthrie.) Plaintiff responded via email dated October 22, 2020, incorrectly asserting that the sale of the Baltimore facility predated the APA, and insisting that Armacell was the successor to Monarch without identifying the specific basis for the imposition of successor liability against Armacell on which Plaintiff relied. (*Id.*, Oct. 22, 2020 Email from Attorney Guthrie to Attorney Rushton.) Armacell directed a second letter to Plaintiff reiterating the deficiencies in Plaintiff's legal argument. (*Id.*, Oct. 29, 2020 Letter from Attorney Rushton to Attorney Guthrie.) This lawsuit followed, notwithstanding the lack of any reasonable dispute that Armacell did not and has not acquired Monarch, that

Armacell is not liable to Plaintiff as a successor to Monarch, and Armacell did not and has not ever disposed or arranged for the disposal or treatment of waste at the Site.

**STANDARD OF REVIEW**

I.      **Fed. R. Civ. P. 12(b)(2)**

"When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989) (citation omitted). "[T]he plaintiff bears the burden [of] making a prima facie showing of a sufficient jurisdictional basis to survive a jurisdictional challenge." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009) (citation omitted). "The Court may address personal jurisdiction as a preliminary matter, ruling solely on the motion papers, supporting legal memoranda, affidavits, and the allegations in the complaint." *Johnson-Howard v. AECOM Special Missions Services, Inc.*, 434 F. Supp. 3d 359, 365 (D. Md. 2020) (citation omitted). However, "conclusory allegations" of jurisdiction are "not entitled to the presumption of truth." *Haley Paint Co. v. E.I. Dupont De Nemours & Co.*, 775 F. Supp. 2d 790, 799 (D. Md. 2011) (citation omitted).

The Court also may consider evidence outside the pleadings when resolving a motion under Rule 12(b)(2). *Structural Pres. Sys., LLC v. Andrews*, 931 F. Supp. 2d 667, 671 (D. Md. 2013) (citing *Silo Point II LLC v. Suffolk Const. Co.*, 578 F. Supp. 2d 807, 809 (D. Md. 2008)); *see also* 5B Alan Wright & Arthur Miller, Federal Practice and Procedure § 1351, at 305 (3d ed. 2004) ("Wright & Miller") ("The court may receive and weigh the contents of affidavits and any other relevant matter submitted by the parties to assist it in determining the jurisdictional facts.").

In determining whether the plaintiff has proved a prima facie case of personal jurisdiction, the Court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993)) (citing *Combs*, 886 F.2d at 676). However, the court is "not required . . . to look solely to the plaintiff's proof in drawing those inferences." *Id.* at 62.

## II.  Fed. R. Civ. P. 12(b)(6)

While Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," "to give the defendant fair notice of what the claim is and the grounds upon which it rests," a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). Instead, to survive a motion to dismiss, the plaintiff must plead "factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S., at 555).

In a Rule 12(b)(6) context, the reviewing court must determine whether a complaint alleges sufficient facts "to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal,* 556 U.S. at 679 (citation omitted). Claims reach facial plausibility only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted).

The Court's task in evaluating a motion to dismiss is to look to whether any well-pleaded, non-conclusory factual allegations plausibly state a claim for relief – "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). In reviewing a motion to dismiss, the Court may take judicial notice of matters of public record, consider documents attached to the complaint, and documents attached to the motion to dismiss, so long as they are integral to the complaint and authentic, without converting the motion into a summary judgment motion. *Secretary of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citing *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006)). *See also Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (observing that a court does not convert a motion to dismiss to a motion for summary judgment when it takes judicial notice of public records); *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013). ("[C]ourts may consider relevant facts obtained from the public record, so long as these facts are construed in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint." (internal quotation omitted)).

## ARGUMENT

### I.  Plaintiff's Claim Against Armacell Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(2).

The United States Supreme Court has long held that personal jurisdiction over a nonresident defendant is constitutionally permissible so long as the defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation omitted). Courts have separated this test into individual "prongs," first ascertaining whether the threshold of "minimum contacts" is met, and then considering

whether the exercise of jurisdiction on the basis of those contacts is "constitutionally reasonable." *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (citation omitted).

Due process jurisprudence recognizes "two types of personal jurisdiction: general and specific." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India,* 551 F.3d 285, 292 n. 15 (4th Cir. 2009). The Fourth Circuit has explained:

> General personal jurisdiction, on the one hand, requires "continuous and systematic" contacts with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred. Specific personal jurisdiction, on the other hand, requires only that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state.

*Id.* (citing, *inter alia*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984)).

**A.  This Court Lacks General Jurisdiction Over Armacell.**

Plaintiff fails to satisfy the standards for general jurisdiction set by both the Fourth Circuit and the Supreme Court. "General jurisdiction permits the court to hear any and all claims against the defendant, regardless of where the claims arose or the plaintiff's citizenship," provided that the defendant's contacts are "so constant and pervasive as to render it essentially at home in the forum state." *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 131-32 (4th Cir. 2020) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)). "[T]he threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction." *ALS Scan*, 293 F.3d at 715 (internal quotation omitted); *accord Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005). The Fourth Circuit has long held that "broad constructions of general jurisdiction" are "generally disfavored." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993).

According to the Supreme Court, the "paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (citation omitted). A corporation is "at home in the forum where it is incorporated and the forum where it has its principal place of business." *Fidrych*, 952 F.3d at 133 (citing *Daimler,* 571 U.S. at 137). Only in an exceptional case "could the contacts with another forum be 'so substantial and of such a nature as to render the corporation at home in that State.'" *Id.* (quoting *Daimler*, 571 U.S. at 139 n.19).[2] The Constitution "does not permit a State to hale an out-of-state corporation before its courts when the corporation is not 'at home' in the State." *BNSF Ry. Co. v. Tyrell*, 137 S. Ct. 1548, 1554 (2017) (*citing Daimler*, 571 U.S. at 127).

Further, the general jurisdiction analysis does not focus "solely on the magnitude of the defendant's in-state contacts." *Daimler*, 571 U.S. at 139 n.20 (internal quotations omitted). The Supreme Court reasoned: "General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." *Id.* (citation omitted). Thus, it must be an "exceptional case" for general jurisdiction to be exerted over a corporation in a forum where that corporation is not incorporated and does not maintain

---

[2] The *Daimler* analysis has also been applied by Courts in this Circuit to limited liability companies like Armacell. *See Brian Wishneff & Assocs. v. 10 South St. Assocs., LLC*, 2016 WL 627358 at * 3 (W.D. Va. Feb. 16, 2016) (finding no general jurisdiction over Delaware limited liability company with principal place of business in New York, where none of the LLC's members were located in Virginia, and where the LLC did not own any real property in the state).

its principal place of business. *Id.* at 139 n.19. *See also BNSF Ry. Co.*, 137 S. Ct. at 1559

(holding that a railway company with "2,000 miles of railroad track and more than 2,000

employees in Montana" was not subject to general jurisdiction in the state).

Armacell is a Delaware LLC principally based in North Carolina. (Ex. A ¶ 3.) None of its

members are located in Maryland. (*Id.* ¶ 4.) Armacell owns no real property in Maryland, is not

engaged in activities constituting the transaction of intrastate business in Maryland, and is not

registered to transact business in Maryland. (*Id.* ¶¶ 5-6.) Accordingly, there are no exceptional

circumstances under which this Court should assert general jurisdiction over Armacell.

### B.   This Court Lacks Specific Personal Jurisdiction Over Armacell.

Absent general jurisdiction, a plaintiff may rely on specific personal jurisdiction where

the cause of action is related to or arises out of a defendant's contacts with the forum.

*Helicopteros Nacionales*, 466 U.S. at 414 n.8 (citation omitted). A court evaluating jurisdiction

must first determine (1) whether jurisdiction is authorized under the state's long-arm statute, and

(2) whether it conforms to the due process requirements of the Fourteenth Amendment. *Arkansas*

*Nursing Home Acquisition, LLC v. CFG Cmty. Bank*, 460 F. Supp. 3d 621, 638-39 (D. Md.

2020) (citations omitted). Maryland's long-arm statute, Md. Code Ann. Cts. & Jud. Proc., § 6-

103(b), is coextensive with the outer limits of personal jurisdiction permitted under the United

States Constitution. *Id.* (citing *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.,* 334

F.3d 390, 396 (4th Cir. 2003)). In assessing whether the exercise of specific jurisdiction

comports with due process, courts in the Fourth Circuit consider "(1) the extent to which the

defendant purposefully availed itself of the privilege of conducting activities in the State; (2)

whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether

the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs*, 561 F.3d at 278 (citation omitted).

Plaintiff has named Armacell among 160 defendants alleged to be PRPs liable for contribution costs under CERCLA. The Complaint contains no allegations regarding Armacell and personal jurisdiction. Plaintiff does not allege that Armacell has any connections to Maryland, let alone any that would give rise to Plaintiff's claims. Plaintiff does not allege any facts that Armacell purposely availed itself of the privilege of conducting any activities in Maryland, or that Plaintiff's claims arise in any way out of any activities of Armacell in Maryland or at the Site. Rather, Plaintiff baldly concludes that Armacell is a successor to Monarch, which entity Plaintiff contends arranged for the disposal and/or treatment of waste containing hazardous substances at the Site. (Compl. ¶¶ 111-15.) Despite the fact that successor liability is the linchpin of Plaintiff's case against Armacell, Plaintiff fails to "adequately plead [any] facts that could raise such an inference of successorship." *Metro Container Grp. v. AC & T Co., Inc.*, 450 F. Supp. 3d 583, 604 (E.D. Pa. 2020), *order vacated on other grounds on reconsideration sub nom. Metro Container Grp. v. AC&T Co., Inc.*, 2020 WL 3060381 (E.D. Pa. June 8, 2020).[3] *Accord Dubois v. All Am. Transp. Inc.*, 2006 WL2054640, at *4 (D. Or. July 24, 2006) ("In the face of defendants' denial that defendant Elite is a successor to defendant AAT, plaintiff's mere assertion on information and belief that Elite is a successor corporation,

---

[3] This was a CERCLA case brought on behalf of another group of PRPs by the same law firm representing Plaintiff in this action. In *Metro Container Group*, the court explained that a "plaintiff asserting successor liability must adequately plead facts that could raise such an inference of successorship. This is true under either FRCP 12(b)(2) or Rule 12(b)(6)." *Id.* (citation omitted). Rather than plausibly alleging facts to support successor liability, the court found that plaintiff's allegations only amounted to "conclusory finger-pointing" and "nothing more than the lightest weight blanket allegations." *Id.* Consequently, the court granted defendants' motions to dismiss based on lack of personal jurisdiction and failure to state a claim.

unsupported by any evidence, is insufficient to make that showing."). *See also Crawford Harbor Associates v. Blake Constr. Co., Inc.*, 661 F. Supp. 880, 886 (E.D. Va. 1987) ("Because there is no basis to conclude that any purposeful activity by the [alleged predecessor] in question can be attributed to [defendant] under Virginia law, [defendant's] motion to dismiss will be granted.").

Plaintiff's allegations with respect to Armacell and Monarch are conclusory and do not support the exercise of specific personal jurisdiction against Armacell. Moreover, Plaintiff cannot in good faith or in accordance with Rule 11(b)(3) allege facts in support of its successor liability theory because none exist.

The Fourth Circuit has held that a successor *may* be liable for the actions of a predecessor under CERCLA. *PCS Nitrogen Inc. v. Ashley II of Charleston LLC*, 714 F.3d 161, 173 (4th Cir. 2013) (citation omitted). Federal courts often consider common law in analyzing successor liability under CERCLA. *Dixon Lumber Co., Inc. v. Austinville Limestone Co., Inc.*, 256 F. Supp. 3d 658, 669 (W.D. Va. 2017) ("*Dixon I*") (citations omitted). Applying common law principles of successor liability, the Fourth Circuit has held that "a corporation that acquires the assets of another corporation typically does not acquire its liabilities, unless: (1) the successor expressly or impliedly agrees to assume the liabilities of the predecessor; (2) the transaction may be considered a de facto merger; (3) the successor may be considered a mere continuation of the predecessor; or (4) the transaction is fraudulent." *PCS Nitrogen Inc.*, 714 F.3d at 173 (internal quotation omitted).[4]

---

[4] In the alternative, if either Maryland or West Virginia law applies, the analysis and end result are the same. *See Martin v. TWP Enterprises Inc.*, 132 A.3d 361, 371 (Md. Ct. Spec. App. 2016) (noting the general rule against successor liability unless one of the same four exceptions applies); *Davis v. Celotex Corp.*, 420 S.E.2d 557, 563 (W. Va. 1992) ("Thus, we conclude that a successor corporation can be found liable for the debts and obligations of a predecessor corporation if there was an express or implied assumption of liability, if the transaction was fraudulent, or if some element of the transaction was not made in good faith. Successor liability

Here, Plaintiff fails to identify which of the four exceptions it relies on in asserting successor liability or allege facts supporting the application of any of the four exceptions to Armacell, and, implicitly, fails to establish any basis for this Court to assert personal jurisdiction over Armacell. With no basis to assert specific personal jurisdiction over Armacell, this Court must dismiss Armacell from the case. *Metro Container Grp.*, 450 F. Supp. 3d at 604.

## II.     Plaintiff's Claim Against Armacell Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6).

"A plaintiff asserting successor liability must adequately plead facts that could raise such an inference of successorship." *Id*. "This is true under either FRCP 12(b)(2) or Rule 12(b)(6)." *Id. (citation omitted).* Here, the Complaint's dearth of factual allegations regarding Armacell's successor liability merits Armacell's dismissal under Rule 12(b)(6) in addition to Rule 12(b)(2).

To plead a claim for contribution or cost recovery under section 107(a) of CERCLA, 42 U.S.C. § 9607(a), Plaintiff must plead and establish "(1) that the site in question is a 'facility,' as defined in 42 U.S.C. § 9601(9); (2) that the defendant is a potentially responsible party under 42 U.S.C. § 9607(a); (3) that a release or threatened release of a hazardous substance from the facility has occurred; and (4) that the release or threatened release has caused the plaintiff to incur response costs." *Dixon Lumber Co., Inc. v. Austinville Limestone Co., Inc.*, 386 F. Supp. 3d 688, 715 (W.D. Va. 2019) (citation omitted). Plaintiff alleges no facts that would, if accepted as true, establish that Armacell is a PRP. Plaintiff makes only the vague and conclusory assertion that Armacell is a successor to Monarch. In Plaintiff's 1,216-paragraph Complaint, only two paragraphs are set aside for Armacell's alleged liability:

112.    Defendant Armacell, LLC ("Armacell") is the successor to Monarch Rubber Co.

---

will also attach in a consolidation or merger . . . [or] where the successor corporation is a mere continuation or reincarnation of its predecessor.").

113.    In or about 2005, Armacell acquired Monarch Rubber Company.

(Compl. ¶¶ 112-13.)

Neither of these allegations contains any factual support for the imposition of successor

liability against Armacell. As discussed above, the default rule for alleged successors is one of

non-liability, unless one of four exceptions applies. *PCS Nitrogen Inc.*, 714 F.3d at 173 (citation

omitted). It is not enough for Plaintiff to baldly allege only that Armacell acquired Monarch or

that Armacell is Monarch's successor. Plaintiff must plead facts that "could raise such an

inference of successorship." *Metro Container Grp.*, 450 F. Supp. 3d at 604. Plaintiff pleads no

facts in support of its legal conclusions, Plaintiff fails to identify which if any exception to the

general rule of successor non-liability governs its claim against Armacell, and Plaintiff provides

no facts that raise its right to relief above anything other than speculation. This is fatal to

Plaintiff's claims against Armacell.

Under Rule 8 of the Federal Rules of Civil Procedure and the Supreme Court's

clarification of the federal pleading standard in *Twombly* and *Iqbal*, labels, conclusions and

threadbare recitals, such as the bare assertion that Armacell is a "successor" to Monarch, cannot

withstand a motion to dismiss under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678 (citation omitted). In

*Carolina Power & Light Co. v. 3M Co.*, 2010 WL 11420854 at *16 (E.D.N.C. Mar. 24, 2010) *on

reconsideration in part* 2010 WL 2837009 (E.D.N.C. July 19, 2010), an Eastern District of North

Carolina court dismissed CERCLA claims against putative successors in interest where the

complaint made allegations of successor liability substantially identical to those pled against

Armacell here. In *Carolina Power*, the complaint alleged that the defendants were "successors in

interest to and/or responsible for the environmental liabilities of" alleged predecessors. *Id.* The

court granted the motion to dismiss, reasoning that the complaint did not allege "facts that would

15

give notice to successor defendants *as to the particular theory of successor liability* that claimants seek to put forward." *Id.* (emphasis added). The same result should follow here, where Plaintiff's Complaint relies on a bare legal conclusion that Armacell is a successor to Monarch without *any* factual allegation as to *how* Armacell is liable under one of the four exceptions to the general principle that asset purchasers are not liable as corporate successors.

The *Carolina Power* decision is not an outlier, and courts in other circuits have likewise held that conclusory allegations of successor liability, without supporting, plausible factual allegations, are not sufficient to state a claim under CERCLA. *See*, *e.g.*, *Metro Container Grp.*, 450 F. Supp. 3d at 604-05 (granting motion to dismiss CERCLA claim, filed by the same law firm representing plaintiff in this case, under Rules 12(b)(2) and 12(b)(6) where plaintiff failed to plausibly allege a theory of successor liability); *New York v. Town of Clarkstown,* 95 F. Supp. 3d 660, 682 (S.D.N.Y. 2015) ("To state a claim based on successor liability, a plaintiff must plead enough facts for the court to infer that one of the exceptions to the general rule finding that a business entity acquiring the assets from another business generally results in no successor liability.") (quotation omitted); *Hobart Corp. v. Dayton Power & Light Co.*, 2014 WL 631518, at *3 (S.D. Ohio Feb. 18, 2014) (declining to accept legal conclusions pled in complaint that Defendant was legal successor in interest under theories of de facto merger, mere continuation, and/or assumption of liabilities where complaint lacked specific factual allegations in support of any of the exceptions); *Ferguson v. Arcata Redwood Co., LLC*, 2004 WL 2600471, at *5 (N.D. Cal. Nov. 12, 2004) ("Plaintiff has failed to allege facts sufficient to support any of the four exceptions to the general rule that asset purchasers are not liable as corporate successors.").

The case law is clear on the issue. Where, as here, a plaintiff relying on a theory of successor liability does not allege in its complaint facts supporting the application of one of the

four exceptions to the general rule of successor non-liability, the complaint should be dismissed.

Plaintiff's failure to plead more than a bare conclusion that Armacell is a successor to Monarch

requires that Armacell be dismissed from this case under Rule 12(b)(6).

### III. The Court May Consider The APA, Which Further Demonstrates That Armacell Is Not a Successor to Monarch.

As explained above, Plaintiff's Complaint contains no factual content that would allow

this Court to draw any reasonable inference that Armacell is a successor to Monarch and liable

for any contamination at the Site. Plaintiff's Complaint is comprised exclusively of a threadbare

legal conclusion that Armacell "acquired" and is the "successor" to Monarch.  Plaintiff's failure

to plead any plausible facts supporting a theory of successor liability alone merits Armacell's

dismissal under Rule 12(b)(2) and Rule 12(b)(6).

The Court may also consider documents in the public record and the APA between

Armacell and Monarch when deciding this Motion to Dismiss under either Rule 12(b)(2) or

12(b)(6). These documents, individually and together, clearly demonstrate that Armacell is not

successor to Monarch.

In the context of Rule 12(b)(2), courts routinely consider materials outside of the

pleadings for purposes of determining whether personal jurisdiction exists. *See Pilates, Inc. v.

Pilates Inst., Inc.*, 891 F. Supp. 175, 178 n.2 (S.D.N.Y. 1995) (permitting submission of

"affidavits and other documentation outside of the pleadings . . . [b]ecause a rule 12(b)(2) motion

is inherently a matter requiring the resolution of factual issues outside of the pleadings.")

(quotation omitted). Moreover, a motion under Rule 12(b)(2) may not be converted into one for

summary judgment where the movant submits affidavits or other documentation in support of the

motion. *Wilson-Cook Medical, Inc. v. Wilson*, 942 F.2d 247, 252 (4th Cir. 1991) (citation

omitted). As explained above, the only basis for personal jurisdiction over Armacell in Maryland

is the conclusory allegation that Armacell acquired and is a successor to Monarch. Thus, the Court may properly consider documents in the public record that show Monarch filing a name change subsequent to the 2005 transaction with Armacell and evidencing its continued existence into 2016 and the APA, which evidences the limited nature of Armacell's acquisition, in determining whether this Court may assert personal jurisdiction over Armacell. *Structural Pres. Sys., LLC*, 931 F. Supp. 2d at 671 (citing *Silo Point II LLC*, 578 F. Supp. 2d at 809); *see also* Wright & Miller § 1351, at 305 ("The court may receive and weigh the contents of affidavits and any other relevant matter submitted by the parties to assist it in determining the jurisdictional facts.").

In the context of Rule 12(b)(6), courts may consider documents that are "integral" to plaintiff's claim even if not attached to the complaint without converting the motion into a motion for summary judgment. *See Secretary of State for Defence*, 484 F.3d at 705 (citation omitted). Here, the APA is integral to Plaintiff's claim because, without a transaction or acquisition of some sort between Armacell and Monarch establishing successor liability, Armacell is not liable. Plaintiff does not allege that Armacell did anything to make it independently liable. Plaintiff's only theory against Armacell is for successor liability. Given that Plaintiff's Complaint alludes to an "acquisition," the Court should be able to review the document underlying that transaction, the APA, when deciding the motion to dismiss.

The APA, material excerpts of which were provided to Plaintiff's counsel prior to the filing of this lawsuit, clearly demonstrates that Armacell is not a successor. The APA and its material terms are unambiguous. The APA provides only for the purchase of certain assets located in West Virginia and specifically excludes from the transaction all assets of Monarch located at Monarch's Baltimore, Maryland facility. (Ex. B § 1.3(i).) Indeed, the APA's

governing law provision states that "[t]his Agreement shall be governed by the laws of the State of West Virginia applicable to agreements made and *to be performed entirely within such state*." (Id. § 13.7) (emphasis added). Moreover, the parties expressly agreed that Armacell "shall not assume any liability or obligation of [Monarch] (i) in respect to the use, storage, transportation, discharge, handling or disposal of any Hazardous Material . . . prior to the Effective Time . . . ." (*Id*. § 1.4(b)(i).) Hazardous Material is broadly defined to include hazardous substances defined as such under environmental laws, including CERCLA. (*Id.* § 3.20(b).) Even in the absence of an express exclusion of liability, a purchasing entity does not assume the liabilities of the selling entity without "actions [that] nevertheless imply that [the purchaser] meant to assume such liabilities." *Dixon I*, 256 F. Supp. 3d at 673 (citation omitted). Here, there is an unambiguous express exclusion of successor liability for the very claims Plaintiff brings against Armacell.

Further this Court may take judicial notice of documents that are clearly in the public record. Filings made by Monarch with the Maryland State Department of Assessments and Taxation are clearly in the public record and are available at www.Maryland.gov. These documents on their face evidence Monarch's continued existence after the sale to Armacell, the filing of a mere name change later that year, and the company's existence as a separate and independent company from Armacell for at least ten years after the sale of West Virginia assets to Armacell. (Ex. D.) In short, there is not and cannot be any basis for successor liability for Armacell.

## **CONCLUSION**

For the reasons stated herein, Armacell respectfully requests that it be dismissed from this action with prejudice, and that the Court award all such further relief as it deems just and equitable.

Dated: February 9, 2021                    Respectfully submitted,

                                           */s/ David B. Hamilton*_____
                                           David B. Hamilton (Bar No. 04308)
                                           Womble Bond Dickinson (US) LLP
                                           100 Light Street, 26th Floor
                                           Baltimore, MD 21202
                                           (410) 545-5850 (telephone)
                                           (410) 545-5801 (facsimile)
                                           David.Hamilton@wbd-us.com

                                           Jason C. Hicks (*pro hac vice to be filed*)
                                           Womble Bond Dickinson (US) LLP
                                           201 E. Main Street, Suite P
                                           Charlottesville, VA 22902
                                           (202) 857-4536 (telephone)
                                           (202) 261-0013 (facsimile)
                                           Jason.Hicks@wbd-us.com

                                           Lisa K. Rushton (*pro hac vice to be filed*)
                                           Womble Bond Dickinson (US) LLP
                                           555 Fayetteville Street, Suite 1100
                                           Raleigh, NC 27601
                                           (919) 755-2164 (telephone)
                                           (919) 755-2150 (facsimile)
                                           Lisa.Rushton@wbd-us.com

                                           *Attorneys for Defendant Armacell, LLC*

20

## **CERTIFICATE OF SERVICE**

I certify that, on February 9, 2021, the foregoing DEFENDANT ARMACELL, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS BASED ON PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record in this matter.

*/s/ David B. Hamilton*_____
David B. Hamilton
