**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

**68TH STREET SITE WORK GROUP,**

    **Plaintiff,**

  **v.**

**7-ELEVEN, INC.,** *et al.*,

    **Defendants.**

      **Civil Action No.**

     **1:20-cv-03385-SAG**

## ARMACELL, LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS BASED ON LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM

Armacell, LLC ("Armacell"), by and through its undersigned counsel, submits this Reply Memorandum of Law in support of its Motion to Dismiss the Complaint filed by Plaintiff, 68th Street Site Work Group ("Plaintiff").

## INTRODUCTION

Plaintiff's Response emphasizes its failure to allege in the Complaint any facts that would support the imposition of successor liability against Armacell. For that reason alone, the claims against Armacell should be dismissed under Rules 12(b)(2) and (b)(6).

Moreover, as Armacell has explained, the Court may consider the asset purchase agreement ("APA") at issue, the declaration of an Armacell executive, and the public records attached as exhibits to Armacell's motion, which Plaintiff has not disputed in its Response. These documents clearly demonstrate the absence of successor liability and even undermine Plaintiff's speculation that Armacell is some form of a successor. Instead of disputing the APA, Plaintiff raises in its Response other "facts" outside of the Complaint. Even if the Court were to

1

treat these assertions of fact as true, Plaintiff's submission *still* fails to set forth a prima facie case for successor liability or the exercise of jurisdiction over Armacell. The Court should grant Armacell's Motion.

## ARGUMENT

### I.   Plaintiff's Complaint Fails to Set Forth a Prima Facie Showing of Personal Jurisdiction.

#### A.  Plaintiff Misstates the Standard of Review on a Rule 12(b)(2) Motion.

First, Plaintiff conflates the assertion of successorship with the necessary *showing* of successor liability, and undersells its burden on a Rule 12(b)(2) motion. While Plaintiff fails to plead any facts that support its conclusory allegations that Armacell is Monarch Rubber Co.'s ("Monarch") successor, Plaintiff nevertheless suggests in its Response that "personal jurisdiction over the [presumed] predecessor company is sufficient to exercise personal jurisdiction over the successor." (ECF 284 at 4.) This is incorrect. As even the case that Plaintiff cites, *City of Richmond, Va. v. Madison Mgmt. Group, Inc.*, holds, jurisdiction may be asserted over a successor only where there is "evidence supporting the imposition upon [the successor] of *successor liability*." 918 F.2d 438, 455 (4th Cir. 1990) (emphasis added). It is not enough for Plaintiff to plead that Armacell is one of the companies that "succeeded" Monarch, or that Armacell "acquired" Monarch. Plaintiff must set forth a prima facie case for successor *liability*. *Leonard v. Bed, Bath & Beyond, Inc.*, 2016 WL 158587 at *3 (E.D.N.C. Jan. 8, 2016). Stated another way, the common law rule and assumption is that successors are not liable for the obligations of their predecessors. This means that Plaintiff must allege facts supporting the imposition of one of the four common law exceptions to the default rule of successor non-liability: (1) that the successor expressly or impliedly assumed the predecessor's liabilities; (2) that the successor is a mere continuation of the predecessor; (3) that the transaction at issue was a

2

de facto merger; or (4) that the transaction was fraudulent. *PCS Nitrogen Inc. v. Ashley II of Charleston LLC*, 714 F.3d 161, 173 (4th Cir. 2013) (citation omitted). Plaintiff's failure to allege such facts in its Complaint is fatal to its claims against Armacell.

Plaintiff bears the burden to set forth a prima facie showing of personal jurisdiction over Armacell. (ECF 284 at 3) (citing *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003)). This requires more than a showing that Armacell is Monarch's successor. It requires a showing of (1) personal jurisdiction over the predecessor ***and*** (2) successor *liability* under the applicable law, i.e., that one of the four common law exceptions applies. *Leonard*, 2016 WL 158587 at *3 (citation omitted); *McClary v. Erie Engine & Mfg. Co.*, 856 F. Supp. 52, 57 (D.N.H. 1994) (citations omitted). Plaintiff did not make such a prima facie showing in its Complaint, nor do the additional allegations averred in Plaintiff's Response cure that failure.[1]

The Court may likewise consider matters outside the pleadings in resolving Armacell's Motion. *Structural Pres. Sys., LLC v. Andrews*, 931 F. Supp. 2d 667, 671 (D. Md. 2013). Indeed, with respect to the Rule 12(b)(2) Motion, this Court has "considerable procedural leeway in choosing a methodology for deciding the motion" and may "receive and weigh the contents of affidavits and any other relevant matter submitted by the parties to assist it in determining the jurisdictional facts." § 1351 Motions to Dismiss—Lack of Jurisdiction Over the Person, 5B Fed. Prac. & Proc. Civ. § 1351 (3d ed.).[2]

---

[1] Plaintiff may not cure the pleading deficiencies in its Complaint by making new allegations in opposition to a motion to dismiss. *See Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quotation omitted).

[2] Plaintiff argues that Armacell's reliance on matters outside the pleadings is improper. Yet Plaintiff does not contest the authenticity of the asset purchase agreement ("APA") and even relies on the APA in its Response. (*See* ECF 284 at 15.) Moreover, Plaintiff does not contest that

### B. CERCLA Does Not Provide for Nationwide Service of Process.

Plaintiff also asks this Court to circumvent due process and ignore CERCLA's plain language and hold that "CERCLA provides for exclusive original jurisdiction and venue in this Court." (ECF 284 at 6.) In other words, Plaintiff asks this Court to rule that CERCLA defendants like Armacell are subject to nationwide service of process irrespective of their contacts with the forum state. CERCLA does not provide for "private nationwide service of process except in CERCLA cases commenced by the United States." *City of Bangor v. Citizens Communications Co.*, 2003 WL 22019525 at *1 (D. Me. Aug. 26, 2003). *See also* 42 U.S.C. § 9613(e) ("In any action *by the United States* under this chapter, process may be served in any district where the defendant is found, resides, transacts business, or has appointed an agent for the service of process.") (emphasis added). Congress has not approved Plaintiff's argument by extending nationwide service of process to actions other than those initiated by the federal government.

This Court should similarly decline Plaintiff's entreaty to broaden personal jurisdiction in private CERCLA suits. As one Middle District of North Carolina court noted even prior to *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014), subjecting a non-resident to personal jurisdiction in any CERCLA matter would "allow 'minimum contacts' to essentially equal 'no

---

public records such as those attached to Armacell's Motion as Exhibits C and D are judicially noticeable and even relies on other public records that it contends are judicially noticeable by this Court. (*See id.* at 16 n.6.) Curiously, with respect to the sale of Monarch's Baltimore assets, Armacell relies on Maryland state property records that reflect a closing date of March 24, 2005. (ECF 163-5.) Meanwhile, Plaintiff relies on a newspaper announcement of an equipment sale that Plaintiff neglects to attach as an exhibit to its Response. (ECF 284 at 15-16.) Moreover, Plaintiff's invocation of Federal Rule of Evidence 408 with respect to the correspondence attached to Armacell's motion as Exhibit E is a red herring. Rule 408 renders inadmissible settlement communications "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." The Rule does not prohibit the introduction of correspondence between the attorneys for the respective parties for the purpose of establishing that Plaintiff was on notice of the APA and the nature of the transaction between Monarch and Armacell prior to signing a pleading asserting a specious claim against Armacell.

contacts.' As a result, such a broad reading of CERCLA necessarily impedes upon the constitutional limitations of minimum contacts as defined by the Supreme Court." *Crown Cork & Seal Co., Inc. v. Dockery*, 886 F. Supp. 1253, 1259 n.4 (M.D.N.C. 1995). That this matter arises under CERCLA neither begins nor ends the personal jurisdiction analysis, and this Court should disregard Plaintiff's concern that "the proper resolution of these issues will inevitably be complicated and impeded" if the Court does not confer jurisdiction over Armacell. (ECF 284 at 7.)[3] Due process and CERCLA's plain language, rather than self-serving concerns of judicial economy, are controlling.

### C. Plaintiff's Complaint Does Not Allege Facts Sufficient to Establish Any of the Four Common Law Exceptions to the Default Rule of Successor Non-liability.

In order to state a prima facie case for jurisdiction, Plaintiff must plead or demonstrate facts that would, if accepted as true, establish one of the four common law exceptions to the default rule of successor non-liability, i.e. "(1) the successor expressly or impliedly agrees to assume the liabilities of the predecessor; (2) the transaction may be considered a de facto merger; (3) the successor may be considered a mere continuation of the predecessor; or (4) the transaction is fraudulent." *PCS Nitrogen Inc.*, 714 F.3d at 173 (internal quotation omitted). Plaintiff's failure to plead facts plausibly raising an inference of successorship is fatal to its claims against Armacell under both Rule 12(b)(2) and Rule 12(b)(6).

In *Metro Container Grp. v. AC & T Co., Inc.*, in which the plaintiff was represented by the same law firm as Plaintiff here, the court was clear: "A plaintiff asserting successor liability must adequately plead facts that could raise such an inference of successorship. This is true

---

[3] Moreover, there is no scenario under which Armacell's dismissal from this case for jurisdictional reasons would "complicate or impede" the resolution of this case. If Plaintiff cannot demonstrate a prima facie case for successor liability for purposes of personal jurisdiction, then Armacell is likewise not liable as a successor under CERCLA.

under either FRCP 12(b)(2) or Rule 12(B)(6) . . . Consequently, [the plaintiff] *must factually allege one of these theories of liability*." 450 F. Supp. 3d 583, 604 (E.D. Pa. 2020), *order vacated on other grounds on reconsideration sub nom. Metro Container Grp. v. AC&T Co., Inc.*, 2020 WL 3060381 (E.D. Pa. June 8, 2020) (emphasis added) (citations omitted). In *Metro Container Grp.*, as in this case, "the purported successor defendants were left to speculate as to what theory of liability attaches . . . Such a result cannot and does not meet the pleading standards, nor the requirement under Rule 12(b)(2) that [the plaintiff] make a factual *prima facie case* of jurisdiction over a purported successor." *Id.* (emphasis in original).

Neither of the cases that Plaintiff cites actually support its argument. Both cases provide that a Plaintiff must allege a basis for the imposition of successor liability. In *City of Richmond*, the Fourth Circuit affirmed the district court's assertion of personal jurisdiction where "there was evidence supporting the imposition upon [the successor] of successor liability." *City of Richmond*, 918 F.2d at 455.[4] In *Leonard*, an Eastern District of North Carolina court held that, "in order to bring a claim against a corporation based on the conduct of its predecessor, a plaintiff must *allege at least one basis for successor liability*." 2016 WL 158587 at *3 (citation omitted) (emphasis added). The law is clear that a plaintiff must allege more than just successorship to meet its burden. *See ProHome, Inc. v. Johnson*, 2006 WL 8440664 at *2 (D. Kan. Jan. 12, 2006) ("[I]n order for this court to have personal jurisdiction over [the successor],

---

[4] In *City of Richmond*, the Fourth Circuit court also noted that the "great weight of persuasive authority permits imputation of a predecessor's actions upon its successor *whenever forum law would hold the successor liable* for its predecessor's actions." *City of Richmond*, 918 F.2d at 454 (quoting *Simmers v. American Cyanamid Corp.*, 576 A.2d 376, 385 (Pa. Super. 1990)) (emphasis added). Here, neither the Maryland law, West Virginia law, or federal common law would hold Armacell liable as a successor to Monarch under the facts alleged.

plaintiffs must make a prima facie showing that [the successor] somehow

has successor liability…").

Plaintiff's Complaint does not state the theory under which it alleges Armacell is liable as

a successor to Monarch, let alone plead any facts in support of an exception to the default rule of

successor non-liability. Plaintiff freely acknowledges in its Response that its allegations are

"limited." (ECF 284 at 13.) Instead, Plaintiff emphasizes its allegation that "[i]n or about 2005,

Armacell acquired Monarch," and contends that the allegation of an acquisition is somehow

more fulsome than or even distinguishable from a conclusory allegation of successorship alone.

*Id.* (citing ECF 1, Compl. ¶ 113.) Plaintiff's "limited" allegation that Armacell "acquired"

Monarch (which Plaintiff contends "could imply either statutory merger or an asset purchase") is

indistinguishable from the limited allegations that other courts found to be insufficiently pled to

establish successor liability. *See* ECF 163-2 at 15-16.

Describing the alleged successorship as an "acquisition" is not sufficient. The acquisition

of certain assets of the predecessor – even the entirety of the predecessor's assets – does not,

without more, raise an inference that one of the four exceptions applies. *See Ronnoco Coffee,*

*LLC v. Westfeldt Bros., Inc.*, 939 F.3d 914, 920 (8th Cir. 2019) ("The well-settled general rule,

adopted in virtually every State, is that 'where one company sells or otherwise transfers *all* its

assets to another company, the latter is not liable for the debts and liabilities of the transferor.'")

(quoting 15 Fletcher Cyclopedia of Corporations § 7122 at 229-30 (2017 rev. ed.)) (emphasis

added). *See also Inter-Americas Ins. Corp., Inc. v. Xycor Sys., Inc.*, 757 F. Supp. 1213, 1218 (D.

Kan. 1991) (successor acquiring "all assets" of predecessor "does not also become liable for its

debts and liabilities except" where one of the four traditional exceptions applies). While Plaintiff

suggests that successor liability should attach to whichever entity purchases the last of the

predecessor's assets,[5] Plaintiff offers no authority in support of this argument, which is at odds with the general principle that even a complete takeover of a predecessor does not cause the successor to be liable for the obligations of the predecessor. Moreover, Plaintiff does not even allege in the Complaint (or plausibly argue in its Response) that Armacell acquired all of Monarch's assets or even the last of Monarch's assets.[6] Therefore, even if Plaintiff were correct that the party that purchases the last of a company's assets is liable as a successor (which is not the law), Plaintiff has still failed to allege such facts.

A case on which Plaintiff relies is illustrative of the gulf between Plaintiff's "lightest weight blanket allegation[]"[7] of an "acquisition" and the factual allegations that would, if accepted as true, be sufficient to demonstrate successor liability. In *Leonard*, the third-party complaint at issue alleged that the putative successor was "the successor in interest to [the predecessor]," that the sale at issue "was entered into to escape liability" associated with certain litigation, "[the successor's] management is identical to [the predecessor's]; [the successor] engages in the same line of business as [the predecessor], that is, the manufacturing of aerosols and other chemicals; and [the successor] uses [the predecessor's] facility, equipment, employees, name brand (Quality Aerosols) and customers." 2016 WL 158587 at *3. The Eastern District of North Carolina court held that these allegations were either "legal conclusions" or "lack[ed]

---

[5] *See* ECF 284 at 15 ("There was nothing left of Monarch Rubber Co. for Armacell to acquire in Baltimore, and Armacell's acquisition of the West Virginia operations was an acquisition of the company in its entirety.").

[6] Plaintiff also acknowledges in its Response that Monarch "consummated the sale [of its Baltimore facility] on March 24, 2005," *after* the closing date for Armacell's purchase of the West Virginia assets enumerated in the APA and the articles of transfer filed by Monarch and cited by Plaintiff in its Response. (ECF 284 at 15; ECF 163-4 at § 10.1.) Thus, Armacell did *not* purchase the last of Monarch's assets. Moreover, Monarch continued to exist for years after these transactions. (ECF 163-6 at 7.)

[7] *Metro Container Grp.,* 450 F. Supp. 3d at 604.

8

sufficient factual allegations to support successor liability." *Id.* The court observed that the third-party complaint's factual allegations "describe[d] a run-of-the-mill sale of a business's assets-not the type of unusual transaction that would give rise to successor liability under one of the four exceptions" and dismissed the complaint under Rule 12(b)(6). *Id.*

Unlike *Leonard*, in which the third-party plaintiff *attempted* to flesh out conclusory allegations of successor liability, Plaintiff has alleged only that Armacell "acquired" Monarch in 2005. If the allegations in *Leonard* were insufficient to survive a motion to dismiss, so too is Plaintiff's solitary allegation of an "acquisition," which, without some fact to support the imposition of an exception to the general rule of successor non-liability, is insufficient to survive a motion under Rule 12(b)(2) or 12(b)(6).[8]

## II.    **Plaintiff's Response Likewise Fails to Identify any Facts in Support of the Imposition of Successor Liability.**

In recognition of the deficiencies of its Complaint, Plaintiff attempts to articulate a basis for successor liability against Armacell in its Response. But even in its Response, Plaintiff notably fails to specify the exception into which it contends Armacell falls, and Plaintiff only tentatively suggests that Armacell's asset purchase "sounds more akin to a de facto merger." (ECF 284 at 17.) While Plaintiff argues that "facts" outside of the pleadings show that the elements of a de facto merger are present, ECF 284 at 2, Plaintiff offers nothing to suggest that the most critical element of a de facto merger – a continuity of ownership between Monarch and Armacell – exists. Absent that indispensable element, Plaintiff's claims against Armacell fail and the assertion of jurisdiction over Armacell fails.

---

[8] As discussed in Armacell's Motion, the Court need not expand its review outside of the pleadings to conclude that the allegations in Plaintiff's Complaint fail to state a claim or a basis for the exercise of jurisdiction over Armacell.

A de facto merger has the following elements:

(1) a continuity of the selling corporation's enterprise, including continuity of management, personnel, physical location, assets, and general business operations; (2) a continuity of ownership because the purchasing corporation acquires the assets with shares of its own stock, which ultimately are held by the selling corporation's shareholders; (3) prompt liquidation and dissolution of the selling corporation's business operations; and (4) an assumption by the purchasing corporation of the selling corporation's obligations necessary for normal operation of the seller's business.

*Taylor v. Atlas Safety Equip. Co., Inc.*, 808 F. Supp. 1246, 1250–51, (E.D. Va. 1992) (citations omitted). Continuity of ownership is the critical element: "[t]he essential characteristic of a de facto merger is the succession of the selling corporation's stockholders to stockholder status in the purchasing corporation." *Crawford Harbor Associates v. Blake Const. Co., Inc.*, 661 F. Supp. 880, 884 (E.D. Va. 1987) (citation omitted). In CERCLA matters, continuity of ownership is established where "the owners of the predecessor enterprise become a 'constituent part' of the successor by retaining some ongoing interest in their assets." *United States v. Gen. Battery Corp.,* 423 F.3d 294, 307 (3d Cir. 2005) (citation omitted). While the elements of a de facto merger are to be "analyzed in a flexible manner . . . there must be continuity of ownership because it is the essence of a merger." *Time Warner Cable, Inc. v. Networks Grp., LLC*, 2010 WL 3563111 at *6 (S.D.N.Y. Sept. 9, 2010) (quotations omitted). *See also New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 211-12 (2d Cir. 2006) ("[A] de facto merger will not be found in the absence of" a continuity of ownership.). As the Eleventh Circuit has held, "there *must* be some sort of continuation of the stockholders' ownership interests." *Bud Antle, Inc. v. E. Foods, Inc.*, 758 F.2d 1451, 1458 (11th Cir. 1985) (citations omitted, emphasis added). The court explained:

The reason for this requirement is that corporate liability adheres not to the nature of the business enterprise but to the corporate entity itself. The corporate entity and its shareholders ultimately are responsible for the disposition of the corporation's assets and the payment of its debts. Even if the corporation sells to another corporation its entire

business operation and all its assets, in exchange for some consideration other than stock, the two corporate entities remain distinct and intact. The corporate entities have not merged, and each is liable for its own debts, absent fraud or one of the other exceptions…

*Id.* (citations omitted).

Plaintiff does not allege in its Complaint that Armacell paid Monarch for the West Virginia assets by providing to Monarch's owners any equity, whether a membership interest in Armacell or shares in a related entity. Nor does Plaintiff contend in its Response that the continuity of ownership element was or could be satisfied in the asset purchase at issue. Moreover, the APA, the authenticity of which Plaintiff does not contest, is clear that Monarch's West Virginia assets were acquired in exchange for cash and the assumption of certain liabilities. (ECF 163-4 at § 2.1.)[9] There was no transfer of equity in consideration for the asset purchase, and there was no continuity of ownership. *See also* ECF 163-3, Declaration of Ciro Ahumada, at ¶ 11 ("Since 2005, none of Armacell's officers, directors, or members has been an officer, director, or shareholder of Monarch and vice versa."). The APA is also clear that the purchase price for the West Virginia assets was paid in cash *to Monarch*. (ECF 163-4 at § 2.2 (providing that the "Purchase Price shall be payable to Seller"), preamble (defining "Seller" as "Monarch Rubber Company.")) The payment of cash to Monarch demonstrates Monarch's continued existence following the sale of the West Virginia assets.

The only "facts" outside the pleadings that Plaintiff contends supports its theory of successor liability are not remotely probative of the indispensable continuity of ownership element:

---

[9] The liabilities assumed by Armacell are identified in section 1.4(a) of the APA, which was provided to Plaintiff prior to the filing of the Complaint. Section 1.4(b)(i) identifies the liabilities expressly excluded from the APA, including any liability "in respect to the use, storage, transportation, discharge, handling or disposal of any Hazardous Material . . . prior to the effective time."

- The acquisition was of Monarch in its entirety as there was nothing left of Monarch to acquire in Baltimore;[10]

- Monarch "ceased to exist except on paper as of 2005;"

- The "last tax return filed by DJDM Investment Company f/k/a Monarch Rubber Co. was for tax year 2005;

- "Armacell appears to have continued the uninterrupted operations of Monarch Rubber Co. in Spencer West Virginia, retaining all employees, including managers;" and

- A 2017 Armacell press kit describes Armacell as having "take[n] over Monarch."

(ECF 284 at 15-17.) None of these "facts" are suggestive of a continuity of ownership between Armacell and Monarch. In *Leonard,* a complaint alleging that the purported successor engaged in the same line of business, retained management and employees, and manufactured the same products under the same brand name was dismissed because these allegations described "a run-of-the-mill sale of a business's assets." 2016 WL 158587 at *3. Similarly, here, Plaintiff's after-the-fact pleading still fails to meet its burden to demonstrate that any of the four exceptions to successor non-liability applies.

In a de facto merger, it is critical that at least some equity must exchange hands.[11] *See Goguen v. Textron Inc.*, 476 F. Supp. 2d 5, 14 (D. Mass. 2007) (observing that "no case has ever gone so far as to dispense with the 'shareholder continuity' factor altogether"). Allowing Plaintiff's claims to move forward against Armacell on a de facto merger theory without even the inference of a continuity of ownership would be akin to establishing a fifth exception to the

---

[10] Publicly available records refute this assertion. As Plaintiff acknowledges, the articles of transfer with respect to Armacell's asset purchase are dated March 10, 2005. (ECF 284 at 15.) Monarch's sale of its Baltimore facility closed two weeks later on March 24, 2005. (ECF 163-5.) Monarch continued to exist, albeit under a different name, for over ten years after these transactions. (ECF 163-6 at 7.)

[11] As Plaintiff acknowledges in its Response, the mere continuation exception is even stricter and requires an *identity* of stock, stockholders, and directors between the two entities. (ECF 284 at 14) (citing *United States ex rel. Bunk v. Gov. Logistics N.V.*, 842 F.3d 261, 274 (4th Cir. 2016).

default rule of successor non-liability, which courts in CERCLA cases, including in this Circuit, have declined to adopt as outside of the common law. *Dixon Lumber Co., Inc. v. Austinville Limestone Co., Inc.*, 256 F. Supp. 3d 658, 676 (W.D. Va. 2017) (citing *United States v. Bestfoods*, 524 U.S. 51, 62-64 (1998)); *New York v. Nat'l Services Indus., Inc.*, 352 F.3d 682, 687 (2d Cir. 2003); *Mickowski v. Visi–Trak Worldwide, LLC*, 415 F.3d 501, 515 (6th Cir. 2005); *Gen. Battery Corp.*, 423 F.3d at 309.

The "facts" on which Plaintiff relies are not probative of a continuity of ownership, the indispensable factor for a de facto merger. The undisputed absence of a continuity of ownership as between Monarch and Armacell obviates one of the central purposes of the de facto merger exception and the imposition of successor liability more broadly: to deter "situations where the shareholders of a seller corporation retain some ownership interest in their assets after cleansing those assets of liability." *Gen. Battery Corp.*, 423 F.3d at 306 (citation omitted). Without the de facto merger exception, if the owners of a selling entity retain some interest in the purported successor, then they could essentially launder the seller's liabilities. De facto mergers, which inhere some continuity of ownership, enable sellers "to evade their responsibility by dying paper deaths, only to rise phoenix-like from the ashes, transformed but free of their former liabilities." *United States v. Mexico Feed & Seed Co., Inc.*, 980 F.2d 478, 487 (8th Cir. 1992). But this risk is not present where, as here, the sellers have no equity in the purported successor, and absent some wrongful advantage (which has never been asserted and does not exist), imposing successor liability on a standard asset purchase "would unnecessarily discourage good-faith asset purchases of substantially all assets of a corporation." *Lattimore & Associates, LLC v. Steaksauce, Inc.*, 2012 WL 1925729 at *15 (N.C. Super. May 25, 2012).

None of the "facts" on which Plaintiff relies in its Response are suggestive of a continuity of ownership between Monarch and Armacell. The APA is conclusive that no equity in Armacell was exchanged for the West Virginia assets. Absent any factual allegations of a continuity of ownership, Plaintiff cannot state a prima facie case for the exercise of personal jurisdiction over Armacell to overcome dismissal under Rule 12(b)(2), and Plaintiff cannot state a claim to withstand scrutiny under Rule 12(b)(6).

III.   **Plaintiff Should Not Be Granted the Fishing Expedition of Jurisdictional Discovery Where It Fails to State a Prima Facie Case for Jurisdiction.**

Plaintiff has failed to allege anything more than an acquisition of certain assets by Armacell of Monarch. Plaintiff's conclusory and threadbare allegations do not state a prima facie case for jurisdiction, let alone identify the theory of successor liability on which it contends Armacell is subject to the personal jurisdiction of this court. While Plaintiff attempts to allege facts in its Response to satisfy the de facto merger exception, Plaintiff offers nothing to suggest that the indispensable element of a continuity of ownership was satisfied in the asset purchase at issue, and Plaintiff does not dispute the authenticity of the APA, which rebuts any suggestion of a continuity of ownership between Monarch and Armacell. Plaintiff's request for leave to take jurisdictional discovery should be denied because Plaintiff has failed, "as a threshold matter, [to] make assertions regarding [Armacell's] contact with [Maryland] that are more than speculative or conclusory." *Stifel, Nicolaus & Co., Inc. v. Firemoon Energy, LLC*, 2016 WL 8673135 at *2 (D. Md. Oct. 28, 2016).

In order for a request for jurisdictional discovery to be sustained, there must be "some basis for believing additional discovery would be fruitful." *Wearing v. Progressive Direct Ins. Co.*, 2020 WL 5653299 at *5 (D.S.C. Sept. 22, 2020) (citations omitted). "When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is

14

within its discretion in denying jurisdictional discovery." *Carefirst of Maryland, Inc.* 334 F.3d at 402–03 (citation omitted) "Jurisdictional discovery it not warranted when 'the pleadings contain no specific facts that could establish the requisite contacts with Maryland.'" *Haley Paint Co. v. E.I. Dupont De Nemours & Co.*, 775 F. Supp. 2d 790, 801 (D. Md. 2011) (quoting *Mylan Labs., Inc. v. Akzo, N.V..*, 2 F.3d 56, 64 (4th Cir. 1993)).

While a court has discretion to decide whether jurisdictional discovery is appropriate, "jurisdictional discovery cannot simply be a fishing expedition." *Id.* (citation omitted). S*ee also Rich v. KIS Cal., Inc.,* 121 F.R.D. 254, 259 (M.D.N.C.1988) ("[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition.") (citation omitted). As one Eastern District of New York court has noted, "[a]llowing discovery over disputed factual allegations of jurisdiction would be one thing. Allowing discovery to find out if there is a basis for making factual allegations of jurisdiction in the first place would create a new field of satellite litigation in far too many instances." *Lettman v. Bayview Loan Servicing, LLC*, 2019 WL 2504015 at *2 (E.D.N.Y. June 17, 2019). Similarly here, Plaintiff, having failed to state a prima facie case for jurisdiction in its Complaint or its Response to Armacell's Motion, asks this Court for jurisdictional discovery to determine if there is a basis to make actual allegations of jurisdiction.[12] Plaintiff has not even alleged a foundation

---

[12] Plaintiff suggests that jurisdictional discovery is appropriate where a defendant is a corporation to which the plaintiff is a "total stranger." (ECF 284 at 19.)  This concern is mitigated where, as here, Plaintiff was provided with the material provisions of the APA prior to the filing of this lawsuit, and now has the full APA. Neither the APA nor any of the "facts" asserted in Plaintiff's Response raise an inference of a continuity of ownership, the indispensable element of a de facto merger.

for jurisdiction upon information and belief that would make an inference of culpability plausible. Plaintiff is asking for the Court to take it on a fishing expedition, and this Court should decline the invitation.[13]

IV.    **Leave to Amend Plaintiff's Claims Against Armacell Should Be Denied Because Amendment Would Be Futile.**

Plaintiff's claims and its assertion of personal jurisdiction hinge on Armacell being liable as a successor to Monarch. Together, the Complaint, Armacell's Motion, and Plaintiff's Response make it clear that a factual basis for the imposition of successor liability does not exist. Accordingly, Plaintiff can state neither a prima facie case for personal jurisdiction nor a claim upon which relief can be granted. While Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that leave to amend should be freely granted, leave need not be granted where an amendment would be futile. *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (citation omitted).

Leave to amend may be denied where, as here, "there is no indication that successor liability exists." *Hamill v. Twin Cedars Senior Living Ctr.*, 2020 WL 7329228 at *7 (M.D. Pa. Nov. 23, 2020), *report and recommendation adopted sub nom. Hamill v. Twin Cedars Senior Living, LLC*, 2020 WL 7323870 (M.D. Pa. Dec. 11, 2020). Plaintiff has not alleged facts that would, if established as true, render Armacell liable as a successor to Monarch let alone subject Armacell to the jurisdiction of this Court. Nor has Plaintiff articulated in its Response any facts

---

[13] While Plaintiff has failed to demonstrate that it is entitled to jurisdictional discovery, the threshold jurisdictional issue of Armacell's successor liability should be resolved before Armacell is forced to defend itself in a foreign state's court in a complicated 160-defendant CERCLA matter.  To the extent that the Court is so inclined, the Court should grant limited written discovery and the opportunity for the parties' to supplement their submissions in lieu of a denial of Armacell's motion.

that would raise the inference of successor liability under the de facto merger exception. Leave to amend under these circumstances would be futile.

## **CONCLUSION**

For the reasons stated herein, Armacell respectfully requests that it be dismissed from this action with prejudice, and that the Court award all such further relief as it deems just and equitable.

Dated: March 9, 2021                              Respectfully submitted,

*/s/ David B. Hamilton*
David B. Hamilton (Bar No. 04308)
Womble Bond Dickinson (US) LLP
100 Light Street, 26th Floor
Baltimore, MD 21202
(410) 545-5850 (telephone)
(410) 545-5801 (facsimile)
David.Hamilton@wbd-us.com

Jason C. Hicks (*admitted pro hac vice*)
Womble Bond Dickinson (US) LLP
201 E. Main Street, Suite P
Charlottesville, VA 22902
(202) 857-4536 (telephone)
(202) 261-0013 (facsimile)
Jason.Hicks@wbd-us.com

Lisa K. Rushton (*admitted pro hac vice*)
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
(919) 755-2164 (telephone)
(919) 755-2150 (facsimile)
Lisa.Rushton@wbd-us.com

*Attorneys for Defendant Armacell, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on March 9, 2021, the foregoing DEFENDANT ARMACELL, LLC'S

REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS BASED ON

PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM was electronically filed

with the Clerk of Court using the CM/ECF system which will send notification of such filing to

all counsel of record in this matter.

<div align="center" style="margin-left:40%">

*/s/ David B. Hamilton*
David B. Hamilton

</div>