IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| 68TH STREET SITE WORK GROUP | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-03385-SAG |
| | ) | |
| 7-ELEVEN, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
C&I LEASING, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Plaintiff 68th Street Site Work Group ("Plaintiff" or the "Group"), by and through

counsel, respectfully submits the following Response in Opposition to the Motion to Dismiss

Plaintiff's Complaint (Dkt. No. 384) filed by Defendant C&I Leasing, Inc. ("C&I Leasing").

Dated:    April 8, 2021                    Respectfully submitted,

                                          THE JUSTIS LAW FIRM LLC

                                          */s/ Ambereen K. Shaffie*
                                          Ambereen K. Shaffie    admitted *pro hac vice*
                                          Rachel D. Guthrie    admitted *pro hac vic*
                                          Matthew T. Merryman    admitted *pro hac vice*
                                          10955 Lowell Ave.
                                          Suite 520
                                          Overland Park, KS  66210-2336
                                          Telephone: (913) 955-3716
                                          Facsimile:  (913) 955-3711
                                          Email: ashaffie@justislawfirm.com
                                                 rguthrie@justislawfirm.com
                                                 mmerryman@justislawfirm.com

                                          ATTORNEYS FOR PLAINTIFF 68TH STREET
                                          SITE WORK GROUP

## TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ............................................................. 1

SUMMARY OF ISSUES AND ARGUMENT ........................................................... 2

LEGAL STANDARD ................................................................................................. 3

ARGUMENT .............................................................................................................. 5

I.      Plaintiff is the Only Real Party in Interest ..................................................... 5

II.     Plaintiff's Complaint Adequately Alleges C&I Leasing's Liability under CERCLA as an Arranger ............................................................................................. 13

      A.     Plaintiff Adequately Alleges the 68th Street Site is a "Facility" as Defined under CERCLA ........................................................................................ 14

      B.     Plaintiff Adequately Alleges a Release or Threatened Release of Hazardous Substances at the 68th Street Site ...................................................... 15

      C.     Plaintiff Adequately Alleges that the Release or Threatened Release of Hazardous Substances at the Site Caused the Incurrence of Response Costs ........................ 17

      D.     Plaintiff Adequately Alleges C&I Leasing is an Arranger under CERCLA ........ 18

      E.     Plaintiff's Complaint Adequately Alleges C&I Leasing is Liable for its Predecessor Nexus Parties ................................................................................. 21

III.    The RD/RA Consent Decree does not Bar Plaintiff's Claims ....................... 24

      A.     The RD/RA Consent Decree is a Contract which C&I Leasing does not have Standing to Enforce ........................................................................................... 25

      B.     The Statutory MSW Exemption Does Not Apply ................................................ 25

      C.     The MSW and *De Micromis* Covenants Do Not Apply to NRD ......................... 27

      D.     The *De Micromis* Covenant Does Not Apply ...................................................... 28

      E.     The MSW Covenant Does Not Apply ................................................................. 28

IV.     Plaintiff is Entitled to a Declaratory Judgment ............................................ 30

V.      This Matter Should Proceed to Discovery ...................................................... 31

VI.     Plaintiff Should be Allowed Leave to Amend if any Allegations are Insufficient, and that Amendment Should Relate Back to the Original Filing Date ............................ 34

**VII.**   **Plaintiff's Claims Should not be Dismissed With Prejudice** ........................................ **36**

**CONCLUSION** ............................................................................................................... **38**

## TABLE OF AUTHORITIES

### CASES

*Aaron Carlson Corp. v. Cohen*, No. 17-cv-0268 (WMW/DTS), 2017 WL 7370053 (D. Minn. May 19, 2017) .......................................................................................................... 32

*Asarco LLC v. NL Indus., Inc.*, No. 4:11-CV-00864-JAR, 2012 WL 4480738 (W.D. Mo. Sept. 28, 2012)................................................................................................................... 4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................... 3, 24

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................. 2, 3, 24, 33

*Boarhead Farm Agreement v. Advanced Envt'l Tech. Corp.* 381 F. Supp. 2d 427 (E.D. Pa. 2005) .................................................................................................... 9, 10, 11, 36

*Booth Oil Site Admin. Group v. Safety-Kleen Corp.*, 137 F. Supp. 2d 228 (W.D. N.Y. 2000)...... 8

*Carolina Power & Light Co. v. 3M Co.*, Nos. 5:08-CV-460-FL, 5:08-CV-463-FL, 2010 WL 11420854 (E.D. N.C. Mar. 24, 2010)................................................................... 35

*Chemetco Site PRP Grp., v. A Square Systems, Inc.*, No. 3:18-cv-00179 (S.D. Ill. filed Feb. 5, 2018)........................................................................................................................ 8

*Chong v. District Director, Immigration & Naturalization Serv.*, 264 F.3d 378, 383 (3d Cir. 2001)........................................................................................................................ 9

*City of Gary, Indiana v. Shafer*, 683 F. Supp. 2d 836 (N.D. Ind. 2010)......................................... 4

*City of Kalamazoo v. Mich. Disposal Serv. Corp.*, 125 F. Supp. 2d 219 (W.D. Mich. 2000) ( ..... 8

*City of Waukegan, Ill. v. Nat'l Gypsum Co.*, 587 F. Supp. 2d 997 (N.D. Ill. 2008) ...................... 4

*Cmty. Ass'n for Restoration of the Env't, Inc. v. Cow Palace, LLC*, 2012 WL 3067379 (E.D. Wash. July 27, 2012) ............................................................................................. 8

*Cooper Ind., Inc. v. Aviall Services, Inc.*, 125 S.Ct. 577 (2004)................................................... 11

*Davidson v. Sarnova, Inc.*, No. JKB-17-1067, 2017 WL 5564654 (D. Md. Nov. 20, 2017) ....... 33

*Durabla Mfg. Co. v. Goodyear Tire & Rubber Co.*, 124 Fed. Appx. 732 (3d Cir, 2005) ............. 7

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435 (4th Cir. 2011)..................... 4

*Ferguson v. Arcata Redwood Co., LLC*, No. C03-05632 SI, 2004 WL 2600471 (N.D. Cal. Nov. 12, 2004).................................................................................................................. 35

*Flagg v. Stryker Corp.*, 647 Fed. App'x 314 (5th Cir. 2016) ...................................................... 34

*Foman v. Davis*, 371 U.S. 178 (1962) ...................................................................................... 34

*Franklin v. Tri-County Council for Lower E. Shore of Md.*, No. ELH-15-00786, 2015 WL 3610307 (D. Md. June 5, 2015)............................................................................. 26

*Goodman v. Praxair, Inc.*, 494 F.3d 458 (4th Cir. 2007) .......................................................... 36

*Haley Paint Co. v. E.I. DuPont De Nemours and Co.*, 804 F. Supp. 2d 419, 425 n.3 (D. Md. 2011)....................................................................................................................... 22

*Hobart Corp. v. Dayton Power & Light Co.*, No. 3:13-cv-115, 2014 WL 631518 (S.D. Ohio Feb. 18, 2014)................................................................................................................ 35

*Holmes v. Godinez*, ---F.3d ----, 2021 WL 968837 (7th Cir. 2021)............................................ 25

*Hunt's Generator Comm. v. Babcock & Wilcox Co.*, 863 F. Supp. 879 (E.D. Wis. 1994) ........... 8

*In re Grant-Covert*, 658 Fed.Appx. 175, 177 (3d Cir. 2016) .......................................... 9

*In re Palmer*, 615 B.R. 86 (D. Md. 2020).......................................................................... 34

*In re QR Properties, LLC*, 485 B.R. 20 (D. Mass. 2013) ................................................. 32

*Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)................................. 34

*Jostens, Inc. v. Vopak, Inc.*, No. CIV. 02-3761-DWF/JSM, 2003 WL 20273567 (D. Minn. May 29, 2003)................................................................................................................. 8

*Kalamazoo River Grp. v. Rockwell Int'l*, 107 F. Supp. 2d 817 (W.D. Mich. 2000), *aff'd* 274 F.3d 1043 (6th Cir. 2001) ......................................................................................... 8

*Karras v. Teledyne Indus., Inc.*, 191 F. Supp. 2d 1162 (S.D. Cal. 2002) .......................... 5, 7, 8, 9

*Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010) ............................................... 36

*LCCS Group v. A.N. Webber Logistics, Inc.*, 341 F. Supp. 3d 847 (N.D. Ill. 2018) ..................... 8

*Litgo New Jersey Inc. v. Comm'r New Jersey Dep't of Envtl. Prot.*, 725 F.3d 369 (3d Cir. 2013) ......................................................................................................................... 14

*LWD PRP Group v. ACF Indus., LLC*, No. 5:12-CV-00127-HJM, 2014 WL 901648 (W.D. Ky. Feb. 7, 2014), *rev'd on other grounds by LWD PRP Group v. Alcan Corp.*, 600 Fed. Appx. 357 (6th Cir. 2015) ...................................................................................................... 8, 9

*Martin Hilti Family Trust v. Knoedler Gallery, LLC*, 386, F. Supp. 3d 319 (S.D.N.Y. 2019) ... 32

*Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324 (3d Cir. 2009)................................. 33

*Metro Container Grp. v. AC&T Co., Inc.*, 450 F. Supp. 3d 583 (E.D. Pa. 2020), *vacated in part on reconsideration* No. 18-2623, 2020 WL 3060381 (E.D. Pa. June 8, 2020)................. passim

*Midshore Riverkeeper Conservancy, Inc. v. Franzoni*, 429 F. Supp. 3d 67 (D. Md. 2019). 3, 4, 22

*Miller v. Mandrin Homes, Ltd.*, 305 F. App'x 976 (4th Cir. 2009).................................... 14

*Morrison Enters. v. McShares, Inc.*, 13 F. Supp. 2d 1095 (D. Kan. 1998) ...................... 31

*Neighborhood Toxic Cleanup Emergency v. Reilly*, 716 F. Supp. 828 (D.N.J. 1989) .................. 8

*New York v. Town of Clarkstown*, 95 F. Supp. 3d 660 (S.D.N.Y. 2015)............................. 35

*Nurad, Inc. v. William E. Hooper & Sons Co.*, 966 F.2d 837 (4th Cir. 1992)........................ 21

*Orca Yachts, L.L.C. v. Mollicam, Inc.*, 287 F.3d 316 (4th Cir. 2002) ............................. 37

*Ortiz v. Green Bull, Inc.*, No. 10-CV03747, 2011 WL 5554522 (E.D. N.Y. Nov. 14, 2011) ...... 33

*Palin v. N.Y. Times Co.*, 940 F.3d 804 (2d Cir. 2019)........................................................ 26

*Papera v. Pa. Quarried Bluestone Co.*, 948 F.3d 607 (3d Cir. 2020) ................................ 37

*Pasco Sanitary Landfill NPL Site Industrial Waste Area Generator Group III v. Basin Disposal, Inc.*, 2015 WL 12516735, No. 4:15-CV-05022-SMJ (E.D. Wash. Nov. 16, 2015), *reconsideration denied* 2016 WL 11498029 (E.D. Wash. Feb. 8, 2016)............................ 9, 12

*PCS Nitrogen Inc. v. Ashley II of Charleston LLC*, 714 F.3d 161 (4th Cir. 2013)................ 14, 31

*Pennsylvania v. Lockheed Martin Corp.*, 684 F. Supp. 2d 564 (M.D. Pa. 2010) ........................ 5

*Pisani v. Baltimore City Police Dept.*, No. WDQ-12-1654, 2014 WL 1401934 (D. Md. April 8, 2014).................................................................................................................................. 36

*Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863 (3d Cir. 1984)................................. 37

*Pruitt v. Bank of Am., N.A.*, No. CV TDC-15-1310, 2016 WL 337531 (D. Md. Jan. 28, 2016).. 25

*Rocke v. Pebble Beach Co.*, 541 Fed. App'x. 208 (3d Cir. 2013) ....................................... 33

*Sanders v. Republic Servs. of Ky., LLC*, 113 Fed.Appx. 648 (6th Cir. 2004).............................. 25
*Sherwin-Williams Co. v. ARTRA Grp., Inc.*, 125 F. Supp. 739 (D. Md. 2001) ........................... 30
*Steele v. Blackman*, 236 F.3d 130, 134 n. 4 (3d Cir. 2001) ......................................................... 9
*Stephenson v. Warden, Doe*, 554 Fed.Appx. 835 (11th Cir. 2014) ........................................... 37
*T-Mobile Northeast LLC v. City of Wilmington*, 913 F.3d 311 (3d Cir. 2019)........................... 36
*United States ex rel. Bunk v. Gov. Logistics N.V.*, 842 F.3d 261 (4th Cir. 2016)....................... 22
*United States v. AAI Corp.*, No. 17-cv-2909-RDB (D. Md. Oct. 2, 2017) ................................. 29
*United States v. Alcan Aluminum Corp.*, 964 F.2d 252 (3d Cir. 1992) ....................................... 21
*United States v. Halliburton Energy Servs., Inc.*, No. CIV.A.H-07-3795, 2008 WL 656475 (S.D. Tex. Mar. 6, 2008) ............................................................................................................. 4
*USOR Site PRP Group v. A&M Contractors, Inc.*, 275 F. Supp. 3d 808 (S.D. Tex. 2017) .......... 8
*Warwick v. Admin. Grp. v. Avon Products, Inc.*, 820 F. Supp. 116 (S.D.N.Y. 1993) .................. 5
*Waste, Inc. Remedial Design/Remedial Action Group v. Cohn*, 60 F. Supp. 2d 833 (N.D. Ind. 1997)................................................................................................................................. 8

## STATUTES

42 U.S.C. § 9601(21) ................................................................................................................. 7
42 U.S.C. § 9607(a)(3)........................................................................................................ 13, 20
42 U.S.C. § 9607(a)(4) .............................................................................................................. 14
42 U.S.C. § 9607(p)(4) .............................................................................................................. 26
42 U.S.C. § 9607(p)(4)(A) ......................................................................................................... 26
42 U.S.C. § 9607(p)(4)(C) ......................................................................................................... 26
42 U.S.C. § 9607(p)(B) .............................................................................................................. 25
42 U.S.C. §§ 9601 ...................................................................................................................... 1
Declaratory Judgments Act, 28 U.S.C. §§ 2201 ........................................................................ 30

## RULES

FED. R. CIV. P. 15 ...................................................................................................................... 34
FED. R. CIV. P. 15(c)(1)(B) ........................................................................................................ 36
FED. R. CIV. P. 17(a)(1)............................................................................................................... 5
FED. R. CIV. P. 8 ......................................................................................................................... 3

## OTHER AUTHORITIES

ENVTL. PROTECTION AGENCY, INTERIM GUIDANCE ON THE MUNICIPAL SOLID WASTE EXEMPTION UNDER CERCLA § 107(p) (August 20, 2003) ................................................................. 27, 28
EPA, Presumptive Remedy for CERCLA Municipal Landfill Sites (Sept. 1993) ...................... 29
FED. R. CIV. P. 17 1966 Advisory Comm. N ................................................................................ 5

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff filed its Complaint on November 20, 2020 (Dkt. No. 1), asserting contribution and declaratory relief under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601 *et seq.* ("CERCLA") for response costs incurred and to be incurred by Plaintiff for activities conducted in response to the release or threatened release of hazardous substances at the 68th Street Dump Superfund Alternative Site ("68th Street Site" or "Site"), against 158 defendants, including C&I Leasing. Since filing the Complaint, Plaintiff has settled with and/or dismissed 79 defendants (Dkt Nos. 7, 11–13, 17, 18, 41, 44, 50, 51, 62–64, 66, 69–72, 75, 77, 80–84, 86, 87, 92–96, 102–05, 107, 108, 113–15, 118, 119, 121, 125–28, 139–42, 159–61, 167, 170, 173, 200, 207, 208, 230–32, 241–43, 259, 262, 282–83, 296–97, 306–09, 312–14, 318–19, 326–27, 329–30, 332, 334, 346, 348, 355, 361, 365–66, 369–70, 376–77, 391, 395, 406–07, 431–32, 434, 437–39, 450, 454–56, 459, 462–63, 466, 468, 487, 489–91, 494–96, 498, 503, 504, 507, 508, 511, 518, 519, 524–25, 527, 528).

On January 11, 2021, C&I Leasing waived formal service of the Complaint (Dkt. No. 55). On March 11, 2021, C&I Leasing filed its Motion to Dismiss (Dkt. No. 384). On March 15, 2021, the parties filed a Joint Stipulation for Extensions of Time to File, requesting an extension of the deadline for Plaintiff to respond to the Motion to Dismiss up to and including April 8, 2021, and for C&I Leasing to Reply to the Motion to Dismiss up to and including April 22, 2021. The Court approved the Stipulation the same day (Dkt. No. 414). To date, the parties have not exchanged Rule 26(a)(1)(A) Initial Disclosures or engaged in discovery in this case. Plaintiff respectfully submits its Response in Opposition.

## SUMMARY OF ISSUES AND ARGUMENT

C&I Leasing argues that Plaintiff's Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. C&I Leasing argues that Plaintiff cannot bring its action because it is not the real party in interest. Def. Mot., 4-5 (Dkt. No. 384-2). C&I Leasing further argues that Plaintiff's Complaint fails to adequately allege that C&I Leasing is liable under CERCLA for the waste streams of its predecessors, and that moreover, the allegations do not prove that C&I Leasing is the legal successor to its predecessors. Def. Mot., 6 (Dkt. No. 384-2). C&I Leasing also argues that Plaintiff has failed to properly allege that the Defendant is an arranger under CERCLA. Def. Mot., 7-11 (Dkt. No. 384-2). C&I Leasing also argues that Plaintiff agreed to waive claims against a category of defendants that produce municipal solid waste (which category C&I Leasing claims that it is a part of) under the Consent Decree for Remedial Design/Remedial Action ("RD/RA Consent Decree") that Plaintiff entered into on November 28, 2017. Def. Mot., 11-12; Complaint (Dkt No. 1, ¶ 22).[1] Last, C&I Leasing argues that because Plaintiff's contribution action fails, Plaintiff is precluded from pursuing declaratory judgment. *Id.* at 13. For its remedy, C&I Leasing requests dismissal with prejudice. *Id*. at 14.

C&I Leasing is not entitled to a dismissal from this case based on its Motion. First, Plaintiff is the real party in interest because each individual group member assigned its CERCLA claims to the PRP Group in question. Second, Plaintiff's allegations are more than adequate to withstand the pleading standards set forth under *Twombly and Iqbal. Bell Atl. Corp. v. Twombly*,

---

[1] On November 29, 2017, the U.S. District Court for the District of Maryland entered the Consent Decree for Remedial Design/Remedial Action ("RD/RA Consent Decree") between the EPA and the State of Maryland on the one hand, and Settling Performing Defendants comprising the members of the 68th Street Site Work Group and Non-Performing Settling Defendants, on the other hand.

550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The allegations sufficiently place C&I Leasing on notice of both the claim against it and the grounds upon which it rests. When such allegations are accepted as true and properly viewed in the light most favorable to Plaintiff, Plaintiff's Complaint pleads adequate facts to support the allegation that C&I Leasing is an arranger under CERCLA and the legal successor to its five predecessors (hereinafter "Pepsi Entities"). (Dkt. No 1, ¶¶ 210-218). Third, C&I Leasing does not fall within the category of parties entitled to the municipal waste exemption set forth in the RD/RA Consent Decree provisions, nor does it have standing to assert such an argument. Fourth, because Plaintiff's CERCLA claim does not fail, it is entitled to pursue declaratory relief under either CERCLA or the Declaratory Judgments Act. In addition, any ruling on this Motion to Dismiss before discovery into the indirect corporate liability and waste stream issues would be premature. Therefore, Plaintiff respectfully requests that the Court deny the Motion to Dismiss and allow discovery to proceed, and further, if the Court deems necessary, allow Plaintiff leave to amend its Complaint and for that amendment to relate back to the date of the original Complaint. Nevertheless, under any circumstances, dismissal with prejudice is wholly inappropriate.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that the plaintiff put forth only a "short and plain statement of the claim showing that the pleader is entitled to relief," to "give the defendant fair notice" of both the claim and the grounds upon which it rests. FED. R. CIV. P. 8(a)(2), *see also Twombly*, 550 U.S. 544, 545 (2007). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is probable on its face." *Midshore Riverkeeper Conservancy, Inc. v. Franzoni*, 429 F. Supp. 3d 67, 72 (D. Md. 2019) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, a plaintiff need

not include "detailed factual allegations" to satisfy Rule 8(a)(2). *Id.* (citing *Twombly*, 550 U.S. at 555). A complaint must set forth "enough factual matter (taken as true) to suggest a cognizable cause of action, even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 73 (citing *Twombly*, 550 U.S. at 556 (internal citation and quotation omitted)). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *Id.* (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citation omitted). Courts generally do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Id.* (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999)).

CERCLA court decisions both before and after *Twombly* and *Iqbal* consistently state that CERCLA does not impose any heightened pleadings requirements. *See, e.g., Asarco LLC v. NL Indus., Inc.*, No. 4:11-CV-00864-JAR, 2012 WL 4480738, *2, *4 (W.D. Mo. Sept. 28, 2012) (citing circuit court cases applying general pleading standard to CERCLA, including *Del-Ray Battery Co. v. Douglas Battery Co.*, 635 F.3d 725, 729 (5th Cir. 2011), *Lone Star Indus., Inc. v. Horman Family Trust*, 960 F.2d 917 (10th Cir. 1992), *United States v. Aceto Agric. Chems. Corp.*, 872 F.2d 1373 (8th Cir. 1989), and *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149 (9th Cir. 1989)); *City of Gary, Indiana v. Shafer*, 683 F. Supp. 2d 836, 862 (N.D. Ind. 2010); *City of Waukegan, Ill. v. Nat'l Gypsum Co.*, 587 F. Supp. 2d 997, 1004 (N.D. Ill. 2008); *United States v. Halliburton Energy Servs., Inc.*, No. CIV.A.H-07-3795, 2008 WL 656475 (S.D. Tex. Mar. 6, 2008); *Warwick v. Admin. Grp. v. Avon Products, Inc.*, 820 F. Supp. 116, 120–21

(S.D.N.Y. 1993); *see generally Pennsylvania v. Lockheed Martin Corp.*, 684 F. Supp. 2d 564, 569 (M.D. Pa. 2010).

## ARGUMENT

### I.     Plaintiff is the Only Real Party in Interest

C&I Leasing argues that Plaintiff is not a "real party in interest" within the meaning of Federal Rule of Civil Procedure 17(a).[2] Rule 17(a) states that "[a]n action must be prosecuted in the name of the real party in interest." FED. R. CIV. P. 17(a)(1). The Advisory Committee Notes clarify that Rule 17(a) is "intended to insure against forfeiture and injustice" is "permissive in purpose" and "should not be misunderstood or distorted." *Id.*, FED. R. CIV. P. 17 1966 Advisory Comm. N. "Real parties in interest are the persons or entities possessing the right or interest sought to be enforced through the litigation. The 'real party in interest' provision is intended to protect defendants from multiple liability in actions by subsequent claimants and to ensure that the judgment will have preclusive *res judicata* effect." *Karras v. Teledyne Indus., Inc.*, 191 F. Supp. 2d 1162, 1171–72 (S.D. Cal. 2002) (citing *Pac. Coast Agric. Export Ass'n v. Sunkist Growers*, 526 F.2d 1196, 1208 (9th Cir. 1975 (collecting cases across federal circuits)).

Here, Plaintiff is the only real party in interest because each individual member assigned its claims to the Group as a whole. As quoted below, Plaintiff adequately alleges this in the Complaint:

> The United States Environmental Protection Agency ("EPA") issued multiple rounds of General Notice Letters to various PRPs from 1999 through 2013. Compl., ¶ 13.

---

[2] Plaintiff notes that C&I Leasing moves to dismiss under Rule 12(b)(6). However, real party in interest status is more properly reviewed as a jurisdictional question. C&I Leasing did not properly assert a jurisdictional challenge in their motion.

On April 26, 2006, members of the 68th Street Site Work Group and EPA entered into an Administrative Settlement Agreement and Order for Remedial Investigation and Feasibility Study ("RI/FS AOC"). Compl., ¶ 16.

Plaintiff commenced the RI/FS work in June 2006. Compl., ¶ 17.

Members of the 68th Street Site Work Group completed a Remedial Investigation Report on or about May 14, 2012, and completed a Feasibility Study Report on or about March 18, 2013. Compl., ¶ 20.

On November 28, 2017, the United States District Court for the District of Maryland entered a Consent Decree for Remedial Design/Remedial Action ("RD/RA Consent Decree") between EPA and the State of Maryland, on the one hand, and Settling Performing Defendants comprising the members of the 68th Street Site Work Group and Non-Performing Settling Defendants, on the other hand. Compl., ¶ 22.

As of the filing of this Complaint, Plaintiff has incurred over $4.8 million in response costs in connection with the activities and payments required by the RD/RA Consent Decree at the 68th Street Site. Compl., ¶ 24

Plaintiff will continue to incur response costs to conduct response actions at the 68th Street Site as required by the EPA, the State of Maryland, and/or other federal or state agencies. Compl., ¶ 26.

The 68th Street Site Work Group is an unincorporated association currently comprised of the following members, in their own right, and as assignees of all CERCLA claims at the 68th Street Site of those entities who have settled or will settle with the 68th Street Site Work Group: AAI Corporation; Acme Markets Inc.; AK Steel Corporation; Browning-Ferris, Inc.; Black & Decker (U.S.) Inc.; Brunswick Corporation; ConAgra Grocery Products Company, LLC; Crown Cork & Seal Company, Inc.; CSX Realty Development, LLC; CSX Transportation, Inc.; Exxon Mobil Corporation; and Illinois Tool Works, Inc., on behalf of Signode and Vulcan-Hart. Compl., ¶ 27.

**Each of the members of the 68th Street Site Work Group has assigned its claims in this case to the 68th Street Site Work Group as a whole. Compl., ¶ 28.**

All of the members of 68th Street Site Work Group are signatories to the RD/RA Consent Decree. Compl., ¶ 29.

Plaintiff has resolved its liability to EPA for matters covered in the RI/FS AOC and RD/RA Consent Decree. Compl., ¶ 1207.

To date, Plaintiff has incurred over $4.8 million in response costs and natural resource damages, including reimbursement of response costs incurred by the

United States and the State of Maryland, at the 68th Street Site under the RD/RA
Consent Decree. Compl., ¶ 1210.

Compl., 7-9, 154 (Dkt. No. 1) (emphasis added). As emphasized in the selected allegations

above, Plaintiff alleges the individual group members have assigned their rights to the Group,

and likewise alleges that the Group is the assignee of CERCLA claims by any entities that have

or will settle such claims with the Group. Compl., 9, ¶¶ 27–28 (Dkt. No. 1).  Further, the

allegations show that the Group was formed in 2006 in response to EPA's notices to certain

PRPs; that the Group has been cooperating with EPA to conduct response cost activities; and that

the Group has incurred and will continue to incur response costs such that Plaintiff—as a

group—is the real party in interest. In fact, because of the executed Assignments by each Group

member to the Group itself in this case, the Group is arguably the only party with standing to file

this case and assert the Group member's assigned claims against each defendant.[3]

Moreover, CERCLA expressly defines "person" to include an "association." 42 U.S.C. §

9601(21). Unincorporated associations such as Plaintiff "are permitted under CERCLA to sue for

contribution despite the fact that they are creatures of contract, created to facilitate cleanup and

cost recovery efforts of the PRPs. Indeed, the purposes of CERCLA include facilitating efficient

responses to environmental harm, holding responsible parties liable for the costs of the cleanup,

---

[3] By analogy, an assignment of rights is comparable to a subrogation agreement
transferring rights to an insurer, and the insurer-subrogee is the real party in interest as to
subrogated claims. *See Durabla Mfg. Co. v. Goodyear Tire & Rubber Co.*, 124 Fed. Appx. 732,
733–34 (3d Cir, 2005). This contractual agreement reduces any risk of prejudice to Moving
Defendants. *See, e.g., Karras,* 191 F. Supp. 2d at 1170–71 (noting that a judgment can bind
persons not parties to the litigation in question and not subject *in personam* to the jurisdiction of
the court if the persons are in privity with" the plaintiff, and likewise, where a plaintiff is "suing
for the benefit of another, the preclusive effect of the representative's suit protects the defendant
from subsequent suits by the one who ultimately benefits from the litigation") (citing *United
States v. Truckee–Carson Irrigation Dist.*, 649 F.2d 1286, 1303 (9th Cir. 1981), *modified on
other grounds*, 666 F.2d 351 (9th Cir. 1982), *aff'd in part & rev'd in part on other grounds sub
nom., Nevada v. United States*, 463 U.S. 110 (1983)).

and encouraging settlements that reduce the inefficient expenditure of public funds on lengthy litigation.'" *Karras v. Teledyne Indus., Inc.*, 191 F. Supp. 2d 1162, 1168 (S.D. Cal. 2002) (quoting *B.F. Goodrich v. Betkoski*, 99 F.3d 505, 514 (2d Cir. 1996)). C&I Leasing's inaccurate statement that "Site groups that are comprised of PRPs do not have a right to sue for contribution" runs contrary to established law. Def. Mot., 4 (Dkt. No. 384-2).

It is common practice for unincorporated associations to be named plaintiffs in CERCLA cases.[4] In fact, it is so commonplace for CERCLA plaintiffs to be unincorporated associations

---

[4] *See generally, e.g.*, *Metro Container Grp. v. AC&T Co., Inc.*, 450 F. Supp. 3d 583 (E.D. Pa. 2020), *vacated in part on reconsideration* No. 18-2623, 2020 WL 3060381 (E.D. Pa. June 8, 2020) (unincorporated association plaintiff sought contribution and cost recovery under CERCLA); *Chemetco Site PRP Grp., v. A Square Systems, Inc.*, No. 3:18-cv-00179 (S.D. Ill. filed Feb. 5, 2018) (unincorporated association plaintiff sought contribution under CERCLA); *USOR Site PRP Group v. A&M Contractors, Inc.*, 275 F. Supp. 3d 808 (S.D. Tex. 2017) (unincorporated association plaintiff sought contribution and cost recovery under CERCLA and state law); *LCCS Group v. A.N. Webber Logistics, Inc.*, 341 F. Supp. 3d 847 (N.D. Ill. 2018) (unincorporated association plaintiff sought CERCLA contribution); *LWD PRP Group v. ACF Indus., LLC*, No. 5:12-CV-00127-HJM, 2014 WL 901648, *15 (W.D. Ky. Feb. 7, 2014), *rev'd on other grounds by LWD PRP Group v. Alcan Corp.*, 600 Fed. Appx. 357 (6th Cir. 2015) (unincorporated association plaintiff sought CERCLA contribution); *Cmty. Ass'n for Restoration of the Env't, Inc. v. Cow Palace, LLC*, 2012 WL 3067379, at **2 (E.D. Wash. July 27, 2012), (holding unincorporated association had both standing and capacity to sue to enforce a CERCLA consent decree); *Jostens, Inc. v. Vopak, Inc.*, No. CIV. 02-3761-DWF/JSM, 2003 WL 20273567 (D. Minn. May 29, 2003) ("statutorily created" unincorporated association plaintiff sought CERCLA contribution); *Kalamazoo River Grp. v. Rockwell Int'l*, 107 F. Supp. 2d 817 (W.D. Mich. 2000), *aff'd* 274 F.3d 1043 (6th Cir. 2001) (unincorporated association plaintiff sought CERCLA contribution); *Booth Oil Site Admin. Group v. Safety-Kleen Corp.*, 137 F. Supp. 2d 228 (W.D. N.Y. 2000) (unincorporated association plaintiff sought CERCLA contribution); *City of Kalamazoo v. Mich. Disposal Serv. Corp.*, 125 F. Supp. 2d 219 (W.D. Mich. 2000) (unincorporated association plaintiff sought CERCLA contribution); *Waste, Inc. Remedial Design/Remedial Action Group v. Cohn*, 60 F. Supp. 2d 833 (N.D. Ind. 1997) (unincorporated association plaintiff sought to enforce CERCLA cleanup order); *Hunt's Generator Comm. v. Babcock & Wilcox Co.*, 863 F. Supp. 879 (E.D. Wis. 1994) (unincorporated association plaintiff sought CERCLA contribution); and *Neighborhood Toxic Cleanup Emergency v. Reilly*, 716 F. Supp. 828 (D.N.J. 1989) (unincorporated association plaintiff sought to enjoin CERCLA cleanup plan).

that their status as "real parties in interest" is rarely analyzed.[5] Plaintiff has identified only five

district court opinions analyzing whether an unincorporated association is a "real party in

interest" within a CERCLA context.[6] When taken as true and viewed in the light most favorable

to Plaintiff, Plaintiff's allegations demonstrate that the individual members of the 68th Street Site

Work Group assigned their individual CERCLA claims to the Group as a whole. Compl., 9 ¶ 27.

Of these cases, C&I Leasing relies on *Boarhead* and *IWAG III* (the first-filed name of the

*Pasco* case), both of which are distinguishable from this case.[7] Simply put, in this case, unlike

---

[5] Although courts rarely analyze this question, it is a jurisdictional issue similar to standing, which reviewing courts must review *sua sponte*, even if not raised by the parties. *See, e.g.*, *Chong v. District Director, Immigration & Naturalization Serv.*, 264 F.3d 378, 383 (3d Cir. 2001) (addressing standing); *Steele v. Blackman*, 236 F.3d 130, 134 n. 4 (3d Cir. 2001) (addressing standing); *see also In re Grant-Covert*, 658 Fed.Appx. 175, 177 (3d Cir. 2016) (noting "real parties in interest always have standing, but the converse is not always true"). Therefore, in order for so many CERCLA cases to proceed with a PRP group as the named plaintiff, the reviewing courts must have determined that such PRP groups are the real parties in interest with standing to sue.

[6] *Compare Metro Container Grp.*, 450 F. Supp. 3d at 605–06 (holding unincorporated association of PRPs were real parties in interest for CERCLA contribution claims), *Karras v. Teledyne Indus., Inc.*, 191 F. Supp. 2d 1162, 1164 (S.D. Cal. 2002) (holding unincorporated association trustees of PRP group trust accounts were real parties in interest for CERCLA contribution claims) *and LWD PRP Group*, 2014 WL 901648, *15 (allowing plaintiff PRP group to proceed as an unincorporated association not itself a PRP) *with Boarhead Farm Agreement v. Advanced Envt'l Tech. Corp*. 381 F. Supp. 2d 427 (E.D. Pa. 2005) ("*Boarhead*") (allowing plaintiff PRP group to amend complaint to proceed in name of individual group members) *and Pasco Sanitary Landfill NPL Site Industrial Waste Area Generator Group III v. Basin Disposal, Inc.*, 2015 WL 12516735, No. 4:15-CV-05022-SMJ (E.D. Wash. Nov. 16, 2015), *reconsideration denied* 2016 WL 11498029 (E.D. Wash. Feb. 8, 2016) ("*IWAG III*") (holding plaintiff PRP group was not real party in interest, citing *Boarhead*).

[7] C&I Leasing emphasizes that the *IWAG III* case was filed by The Justis Law Firm LLC, the undersigned counsel in this case. Def. Mot. At 5. Plaintiff's lead counsel operates a niche CERCLA practice that almost exclusively represents PRP groups (sometimes representing individual PRPs) in cases across the country. The Justis Law Firm LLC is also the firm that represents the Metro Container Group in the most recent case to rule favorably for the Plaintiff on the real party in interest issue.

*Boarhead* and *IWAG III*, each of the Group members executed Assignments which unequivocally assign their CERCLA rights at this Site to the Group. In *Boarhead*, there was no allegation of an assignment in the relevant complaint or in the arguments before the district court. Likewise, in *IWAG III*, there were no assignments of claims from the PRP group members to the PRP group. This distinction is critical. In *City of Kalamazoo*, the district court analyzed the real party in interest doctrine in the context of a PRP group and emphasized that the failure to allege assignment by the individual parties to the PRP group was a critical factor in its decision. 125 F. Supp. at 237–38 ("Nor does the complaint allege an assignment by these parties to the Group. In such circumstances, the individual members of the association are necessary parties to the lawsuit." (citing *Warth v. Seldin*, 422 U.S. 490, 516 (1975)).[8] Although not precedential, the reasoning is persuasive

  In *Boarhead*, the plaintiff, Boarhead Farm Agreement Group ("Boarhead Group"), responded to a motion to dismiss its amended complaint based in part on a Rule 17(a) challenge in 2003. Pl.'s Mem. in Opp'n to Joint Motion of Certain Def.'s to Dismiss the Am. Compl. for Failure to State a Claim at 5, No. 2:02-cv-03830-LDD, Doc. 60, *Boarhead,* 381 F. Supp. 2d 427 (E.D. Pa. 2005). However, there was no ruling on the motion, and the case proceeded with

---

[8] The court in *City of Kalamazoo* also emphasized that the doctrine of standing would typically preclude an unincorporated association from asserting a claim for monetary damages, as opposed to prospective or injunctive relief, but this would be overcome by an assignment. *Id.* (citing and quoting *United Food & Comm. Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 546 (1996); *Hunt v. Wash. State Apple Adv. Comm'n*, 432 U.S. 333, 343 (1977)). The district court acknowledged that treating the PRP group as a separate entity could undermine the rights of the individual members, but underscored that "[s]uch a view however, is not the one adopted by the federal courts in dealing with litigation groups in environmental cases. The courts treat these groups for what they are—convenient devices for the assertion of claims or defenses of similarly situated litigants—and 'look through' the group structure to the constituent members." *Id.* at 238 (citing *Kalamazoo R. Study Grp. v. Menasha Corp.*, 228 F.3d 648 (6th Cir. 2000) (describing the plaintiff group as an 'unincorporated association' but analyzing the claims of its constituent members)).

Boarhead Group as the named plaintiff an additional two years until 2005. *See generally Boarhead* Docket. At that time, Boarhead Group moved to further amend its complaint due to the Supreme Court's intervening decision in *Cooper Ind., Inc. v. Aviall Services, Inc.,* 125 S.Ct. 577 (2004), which addressed when a party could pursue contribution under CERCLA Section 113(f)). Pl.'s Mot. for Leave to Amend Third Am. Compl., *Boarhead*, No. 2:02-cv-03830-LDD, Doc. 137. The decision in *Cooper Industries* undermined a 2003 stipulation in which defendants had agreed that Boarhead Group had stated a claim for relief under Section 113(f) in exchange for Boarhead Group's agreement that its members would act as parties to the case for purposes of discovery. *Id.* As a result, Boarhead Group moved to amend its complaint to proceed in the name of the individual group members. The defendants challenged this on statute of limitations grounds, arguing that the proposed amendment could not relate back to the original pleading. *Boarhead,* 381 F. Supp. at 431. The district court held that the individual group members were the real parties in interest, noting that real parties can be substituted at any time under Rule 17(a)(3). *Id.* at 432–33. The district court conducted little analysis of Rule 17(a) except to state that because CERCLA provides PRPs a right to contribution, the PRPs are the real parties in interest. *Id.* at 432. Boarhead Group was therefore allowed to amend its complaint to proceed in the names of the individual members. *Id.* at 433. Importantly, by ruling on the Rule17(a) issue, the district court was able to avoid the statute of limitations issue, and the attendant prejudice to the Boarhead Group that a dismissal of the case would have caused. *See id.* at 433 (stating "courts [have] applied Rule 15(c) and Rule 17(a) in tandem to prevent the dismissal of the action and to allow an amendment substituting the real party in interest to relate back," noting there was no risk of prejudice to defendants at issue in the case).

The *Boarhead* case is distinguishable from the present case, procedurally and factually. In *Boarhead*, the plaintiff argued its members were the real parties in interest in its motion to amend its complaint, and the district court's ruling avoided any prejudice to the plaintiff that a ruling on relation back may have caused. The court's ruling also effectively preserved the parties' prior stipulation regarding discovery. Both aspects served the goals of fundamental fairness and judicial economy in advancing litigation that had already been ongoing for several years. Those goals are not served here, where it is defendants arguing that the individual Group members are the real parties in interest for purposes of a 12(b)(6) motion to dismiss for failure to state a claim.

Likewise, *IWAG III* is distinguishable. First, the procedural posture of the case was exceptional. The PRP group plaintiff filed the original complaint against numerous defendants. *See generally IWAG III*, No. 4:15-CV-05022-SMJ (filed Mar. 5, 2015). Contemporaneously with their motion to dismiss certain of those defendants filed their own complaint, naming the PRP Group as defendants, instead of filing counter claims or cross-claims. *See generally Basin Disposal Inc. v. 3M Company, et al.*, No. 4:15-cv-05078 (E.D. Wash. filed Aug. 5, 2015). The defendants disputed IWAG III's status as a real party in interest and argued that the new complaint was better than the IWAG III's. Defs.' Br., *IWAG III*, No. 4:15-CV-05022-SMJ (E.D. Wash. Aug. 5, 2015), Dkt. No. 99. The judge decided to dismiss the IWAG III's complaint, denied the IWAG III leave to amend, and proceeded with the defendants' complaint. *See IWAG III*, 2015 WL 12516735, *3; *Basin Disposal Inc.*, No. 4:15-cv-05078. Importantly, in *IWAG III*, the district court's opinion appears to have been influenced by the belief that the IWAG III PRP group was formed solely for the purpose of litigation. *IWAG III*, 2015 WL 12516735, *2 ("Plaintiff is a group of PRPs that was formed for the purpose of bringing this action.") This is

not the case here. As alleged in the Complaint, the Group was formed in 2006 to cooperate with EPA and perform response cost activities in response to EPA's notifications to PRPs. But again, most importantly, unlike this case, the PRP group members in the *IWAG III* case did not execute Assignments specifically assigning their CERCLA claims to the PRP group.

It is better for the Court to follow *Karras* and the more recent *Metro Container* case to join the growing majority of courts that have held that unincoporrated associations are the real parties in interest for CERCLA actions. In the *Metro Container* case, the district court rejected arguments almost identical to those raised C&I Leasing, accepted the arguments by the plaintiff identical to those here, and ruled that the plaintiff group was the real party in interest. *Metro Container Grp.*, 450 F. Supp. 3d at 605–06. The court reasoned that "'[p]laintiff associations are permitted under CERCLA to sue for contribution despite the fact that they are creatures of contract, created to facilitate cleanup and cost recovery efforts of the PRPs[,]' so long as they bind the members of the association to the ruling of the suit." *Id*. at 605 (quoting *Karras*, 191 F. Supp. 2d at 1167–68). Since the plaintiff had alleged an assignment of claims from the individual members to the group, the group was the real party in interest. *Id*.

## II.     Plaintiff's Complaint Adequately Alleges C&I Leasing's Liability under CERCLA as an Arranger

CERCLA Section 107(a)(3) imposes strict liability on "any person who by contract, agreement, or otherwise arranged for disposal or treatment" of hazardous substances at any facility "from which there is a release, or a threatened release which causes the incurrence of response costs . . . ." 42 U.S.C. § 9607(a)(3). CERCLA Section 107(a)(4) imposes strict liability on "any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or threatened release which causes the incurrence of response costs, of a hazardous

substance..." 42 U.S.C. § 9607(a)(4). Parties that are liable under Section 107(a)(3) of CERCLA are commonly known as "generators" or "arrangers." The plain meaning of Section 107(a) means that Plaintiff's Complaint need only allege that (1) the 68th Street Site is a facility, at which (2) there was a release or threatened release of hazardous substances at the "facility", which (3) caused Plaintiff to incur response costs, and (4) that C&I Leasing arranged for disposal or treatment of hazardous substances at the Site. *PCS Nitrogen Inc. v. Ashley II of Charleston LLC,* 714 F.3d 161, 167–68 (4th Cir. 2013); *see e.g. Miller v. Mandrin Homes, Ltd.*, 305 F. App'x 976, 978 (4th Cir. 2009); *Litgo New Jersey Inc. v. Comm'r New Jersey Dep't of Envtl. Prot.*, 725 F.3d 369, 379 (3d Cir. 2013).

### A. Plaintiff Adequately Alleges the 68th Street Site is a "Facility" as Defined under CERCLA

Plaintiff's Complaint alleges in detail that the 68th Street Site is a "facility" as defined under CERCLA. Examples of such allegations from Plaintiff's Complaint are as follows:

> The 68th Street Site is an aggregate of seven landfills and encompasses approximately 239 acres, nearly 118 acres of which are streams and wetlands. The 68th Street Site is in a mixed industrial, commercial and residential area of Baltimore County, crossing the border with Baltimore City in Rosedale, Maryland. The 68th Street Site is transected near the western boundary in a north-south direction by Interstate Route 95, and is transected in an east- west direction by Moores Run. Additional waterways include Herring Run and Redhouse Run. Herring Run discharges into the Back River about 1,500 feet downstream of the 68th Street Site, which ultimately flows into the Chesapeake Bay. (Compl., ¶ 4);

> The 68th Street Site has been organized into five Management Areas ("MAs") identified as MA-A, MA-B, MA-D, MA-E and MA-F, with MA-C having been combined into MA-F. (Compl., ¶ 5);

> With the exception of MA-A, waste disposal activities occurred between the 1950s and early 1970s under various landfill operating permits. The landfill activities involved filling of low-lying and wetland areas and disposal of solid and liquid municipal, industrial and commercial wastes. Industrial wastes have been documented to include construction debris, paints, ash, sludges, and other materials from east Baltimore industry and municipal operations. There is surface debris across much of the 68th Street Site, including metal, concrete, brick and masonry, rubber products and construction/demolition debris. (Compl., ¶ 6);

EPA re-proposed the 68th Street Site to the NPL in 2003. (Compl., ¶ 15);

"Facility" is defined in CERCLA Section 101(9) as "any building, structure, installation, equipment, pipe or pipeline" or "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed . . . ." 42 U.S.C. § 9601(9). (Compl., ¶ 1195);

The 68th Street Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9). (Compl., ¶ 1201).

*Id*. at 5-7, 152-153, ¶¶ 4-5, 6, 15, 1195, 1201 (Dkt. No. 1). C&I Leasing cannot reasonably argue that Plaintiff's Complaint does not adequately allege the 68th Street Site is a "facility" as defined under CERCLA, or that the Site is not a "facility" as defined under CERCLA. When taken as true and cast in the light most favorable to Plaintiff, the above allegations are sufficient to establish that the Site is a "facility."

### B.     Plaintiff Adequately Alleges a Release or Threatened Release of Hazardous Substances at the 68th Street Site

Plaintiff's Complaint alleges in detail that there has been a release or threatened release of hazardous substances at the Site as defined under CERCLA, contrary to C&I Leasing's claim (*See* Def. Mot. at 9 (Dkt. No. 284-2)). Examples of such allegations from Plaintiff's Complaint are as follows:

MA-F is known as the Lowland Management Area and contains 118 acres of environmentally sensitive ecosystem, including the three main streams (Herring Run, Moores Run and Redhouse Run) and the six-acre Island Landfill and the nine-acre Redhouse Run Landfill. Dumping of debris along Redhouse Run began as early as 1942. In 1956, a refuse disposal permit was issued to Robb Tyler, and disposal of waste material continued until at least 1969, with evidence that some other entity placed fill material along the stream in 1973. Numerous vehicles, trailers and equipment still remained along the stream by 1984. The Island Landfill was operated by Robb Tyler as a permitted landfill from 1960 to 1969. (Compl., ¶ 11);

The emergency removal actions were performed at the 68th Street Site in the 1980s. In 1981, there was a drum removal action in MA-B. In 1984, ten (10) 55-gallon drums protruding from the hillside of the Redhouse Run Landfill were removed from the 68th Street Site. A 1985 emergency response removed at least

forty (40) 55-gallon drums from the Island Landfill following a fire. (Compl., ¶ 12);

The United States Environmental Protection Agency ("EPA") issued multiple rounds of General Notice Letters to various PRPs from 1999 through 2013. (Compl., ¶ 13);

On April 26, 2006, members of the 68th Street Site Work Group and EPA entered into an Administrative Settlement Agreement and Order for Remedial Investigation and Feasibility Study ("RI/FS AOC"). (Compl., ¶ 16);

Between June 26, 2008 and December 2, 2008, a Non-Time Critical Removal Action was conducted to remove surface materials and containers that had exhibited elevated chemical concentrations to reduce the risk to trespassers and on-Site workers. (Compl., ¶ 19);

Members of the 68th Street Site Work Group completed a Remedial Investigation Report on or about May 14, 2012, and completed a Feasibility Study Report on or about March 18, 2013. (Compl., ¶ 20);

On September 30, 2013, EPA issued its final Record of Decision ("ROD") for remedial actions at the 68th Street Site. (Compl., ¶ 21);

On November 28, 2017, the United States District Court for the District of Maryland entered a Consent Decree for Remedial Design/Remedial Action ("RD/RA Consent Decree") between EPA and the State of Maryland, on the one hand, and Settling Performing Defendants comprising the members of the 68th Street Site Work Group and Non-Performing Settling Defendants, on the other hand. (Compl., ¶ 22);

Hazardous substances identified at the 68th Street Site include, but are not limited to: metals, including arsenic, barium, lead, and selenium; polychlorinated biphenyls ("PCBs"); polycyclic aromatic hydrocarbons ("PAHs") including benzo(a)pyrene, benzo(a)anthracene, benzo(b)fluoranthene, dibenz(a,h)anthracene; pesticides including dieldrin and DDx, comprising isomers of dichlorodiphenyltrichloroethane ("DDT"), dichlorodiphenyldichloroethylene ("DDE") and dichlorodiphenyldichloroethane ("DDD"); dieldrin; endrin; heptachlor epoxide; thallium; and zinc. (Compl., ¶ 23);

"Release" is defined in CERCLA Section 101(22) as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant) . . . ." 42 U.S.C. § 9601(22). (Compl., ¶ 1199);

There has been a "release" and/or a threatened "release" of "hazardous substances" at the 68th Street Site which has caused the incurrence of "response

costs" by the 68th Street Site Work Group, within the meaning of Sections
101(22), 101(14) and 107 of CERCLA, 42 U.S.C. §§ 9601(22), 9601(14) and
9607. (Compl., ¶ 1202).

*Id.* at 6-8, 153, ¶¶ 11-13, 16, 19-23, 1199, 1202 (Dkt. No. 1).[9] Any of these allegations,

when properly viewed in the light most favorable to Plaintiff, are sufficient to establish that there

has been a release or threatened release of hazardous substances at or from the Site.

### C.      Plaintiff Adequately Alleges that the Release or Threatened Release of Hazardous Substances at the Site Caused the Incurrence of Response Costs

Plaintiff's Complaint contains detailed facts that the well-documented release or

threatened release of hazardous substances at the Site caused and continues to cause Plaintiff to

incur response costs. Examples of such allegations in the Plaintiff's Complaint are as follows:

> The United States Environmental Protection Agency ("EPA") issued multiple
> rounds of General Notice Letters to various PRPs from 1999 through 2013.
> (Compl., ¶ 13);
>
> On April 26, 2006, members of the 68th Street Site Work Group and EPA entered
> into an Administrative Settlement Agreement and Order for Remedial
> Investigation and Feasibility Study ("RI/FS AOC"). (Compl., ¶ 16);
>
> Members of the 68th Street Site Work Group completed a Remedial Investigation
> Report on or aoubt May 14, 2012, and completed a Feasibility Study Report on or
> about March 18, 2013. (Compl., ¶ 20);
>
> On September 30, 2013, EPA issued its final Record of Decision ("ROD") for
> remedial actions at the 68th Street Site. (Compl., ¶ 21);
>
> On November 28, 2017, the United States District Court for the District of
> Maryland entered a Consent Decree for Remedial Design/Remedial Action
> ("RD/RA Consent Decree") between EPA and the State of Maryland, on the one
> hand, and Settling Performing Defendants comprising the members of the 68th
> Street Site Work Group and Non-Performing Settling Defendants, on the other
> hand. (Compl., ¶ 22);

---

[9] These are only a few of the most relevant paragraphs by which the Court can draw the
reasonable inference that there has been a "release" or "threatened release" at the Site.

As of the filing of this Complaint, Plaintiff has incurred over $4.8 million in response costs in connection with the activities and payments required by the RD/RA Consent Decree at the 68th Street Site. (Compl., ¶ 24);

The response costs incurred to date by Plaintiff in connection with the RD/RA Consent Decree are necessary to address the release and/or threatened release at the 68th Street Site, and are required by EPA and the State of Maryland, and as such are consistent with the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and amendments thereto ("National Contingency Plan" or "NCP"). (Compl., ¶ 25);

Plaintiff will continue to incur response costs to conduct response actions at the 68th Street Site as required by the EPA, the State of Maryland, and/or other federal or state agencies. (Compl., ¶ 26).

*Id*. at 7-9, ¶ 13, 16, ¶¶ 20-22, ¶¶ 24-26. (Dkt. No. 1). These allegations when taken as true and viewed in the light favorable to Plaintiff are more than sufficient to establish that the release of hazardous substances at or from the Site directly caused Plaintiff's ongoing incurrence of response costs.

### D.   Plaintiff Adequately Alleges C&I Leasing is an Arranger under CERCLA

Plaintiff's Complaint provides detailed facts supporting its allegations that C&I Leasing's predecessors generated specific hazardous substances that were disposed at or from the Site, and that C&I Leasing is the legal successor to each such alleged predecessors. Examples of these allegations are as follows:

210. According to 68th Street Site records, Allegheny Beverage Company, Allegheny Pepsi-Cola Bottling Company, American Brewery, Inc., Pepsi Cola Bottling Co. and Suburban Club Beverage by contract, agreement or otherwise, arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment of waste containing hazardous substances at the 68th Street Site.

211. Defendant C&I Leasing, Inc. ("C&I Leasing") is the successor to and/or formerly known as and/or also known as Allegheny Beverage Company, Allegheny Pepsi-Cola Bottling Company, American Brewery, Inc., Pepsi Cola Bottling Co. and Suburban Club Beverage.

212. Allegheny Pepsi-Cola Bottling Co. owned American Brewery, Inc. and Suburban Club Beverage.

213. Allegheny Pepsi-Cola Bottling Co. is and/or was a subsidiary of PepsiCo Inc.

214. C&I Leasing is formerly known as Pepsi-Cola Bottling Co.

215. C&I Leasing is a member of the PepsiCo Inc./PBG Organization.

216. Allegheny Beverage Company, Allegheny Pepsi-Cola Bottling Company, American Brewery, Inc., Pepsi Cola Bottling Co. and Suburban Club Beverage are and/or were engaged in the business of beverage manufacturing and distribution.

217. In addition to the hazardous substances associated with beverage manufacturing and distribution, the waste streams attributable to Allegheny Beverage Company, Allegheny Pepsi-Cola Bottling Company, American Brewery, Inc., Pepsi Cola Bottling Co. and Suburban Club Beverage also consisted of food processing waste, printing waste, transportation waste and general office waste, which contained the following hazardous substances: acetone, barium, benzene, cadmium, chromium, copper, dichlorobenzene, dichloroethylene, ethyl benzene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylene, and zinc.

218. Additionally, 68th Street Site records describe the waste streams attributable to Allegheny Beverage Company, Allegheny Pepsi-Cola Bottling Company, American Brewery, Inc., Pepsi Cola Bottling Co. and Suburban Club Beverage as containing at least the following: empty drums and empty soda cans.

219. By letter dated August 28, 2020, Plaintiff demanded that C&I Leasing reimburse Plaintiff for a specified amount of response costs incurred and to be incurred by Plaintiff at the 68th Street Site.

220. To date, C&I Leasing has refused to cooperate and has not paid any response costs incurred by Plaintiff at the 68th Street Site.

*Id.* at 31-32, ¶¶ 211-220. Contrary to C&I Leasing's contention, the above allegations detail facts

as to each of the elements of a CERCLA cause of action. Moreover, these are factual allegations

based on the EPA's documentation and Site records that Plaintiff reviewed prior to filing its

Complaint. Taken together, these allegations demonstrate that C&I Leasing is in one of the four

classes of persons in Section 107(a)(1)–(4) of CERCLA. 42 U.S.C. § 9607(a). Specifically, it is liable as an arranger (a.k.a "generator") under Section 107(a)(3). *Id.* § 9607(a)(3).

C&I Leasing makes two inaccurate claims: (1) that Plaintiff did not identify specific hazardous substances that C&I Leasing purportedly owned or possessed, and (2) that Plaintiff only refers to "empty drums and soda cans." Def. Mot., 10, 12. As quoted above, Plaintiff alleges in detail no less than four different types of waste streams and twenty-one separate hazardous substances that the Pepsi Entities arranged for the disposal and/or treatment of at the 68th Street Site. Compl., 32 ¶ 217.

The crux of Rule 8 is to put the defendant on "fair notice" of both the claim against the defendant, and the grounds upon which that claim rests. C&I Leasing cannot reasonably argue that it lacks notice that it is legally responsible, as a successor, for the waste at the Site generated by its predecessors, which contained at least twenty-one separate hazardous substances outlined in specific detail in the Complaint. *Id.* Each of the hazardous substances Plaintiff alleges that are contained in The Pepsi Entities' waste streams is sufficient to trigger CERCLA liability. Further, it cannot reasonably be argued that the alleged waste is waste that is normally generated by a household or qualifies for the MSW Exemption, as explained in Section III below.

C&I Leasing further argues that the Complaint does not identify specific locations or amounts of hazardous waste. Def. Mot., at 10 (Dkt. No. 384-2). C&I's argument that Plaintiff must somehow pinpoint locations or origins of waste disposal are misplaced and contradict a primary purpose behind CERCLA's broad remedial aim. This Circuit has stated that, "[w]e do not think in such circumstances that Congress intended to impose upon a CERCLA plaintiff the onerous burden of pinpointing at what precise point a leakage may have begun. This circuit has been careful not to vitiate what was intended as remedial legislation by erecting barrier upon

barrier on the road to reimbursement of response costs. As this court emphasized in rejecting a

requirement that a CERCLA plaintiff prove a nexus between waste sent by a particular defendant

to a particular site and the resulting environmental harm:

> Congress knew of the synergistic and migratory capacities of leaking chemical
> waste, and the technological infeasibility of tracing improperly disposed waste to
> its source.... "To require a plaintiff under CERCLA to 'fingerprint' wastes is to
> eviscerate the statute."

*Nurad, Inc. v. William E. Hooper & Sons Co.,* 966 F.2d 837, 846 (4th Cir. 1992) (citation

omitted); *see also United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 259, 264 (3d Cir. 1992)

(stating that there is no quantitative requirement in the definition of "hazardous substance," and

that the statute does not require plaintiff to prove that the generator's hazardous substances

themselves caused the release or threatened release). There is no requirement to "fingerprint" a

defendant's waste in a CERCLA cause of action.

### E.   Plaintiff's Complaint Adequately Alleges C&I Leasing is Liable for its Predecessor Nexus Parties

In support of its claims that Plaintiff failed to allege C&I Leasing's liability under

CERCLA, C&I Leasing claims that Plaintiff fails to provide facts describing a purported

relationship between C&I Leasing and the five nexus parties: Allegheny Beverage Company,

Allegheny Pepsi-Cola Bottling Company, American Brewery, Inc., Pepsi Cola Bottling Co., and

Suburban Club Beverage (the "Pepsi Entities"). Def. Mot. at 6 (Dkt. No. 384-2). Plaintiff's

Complaint pleads sufficient facts to draw the reasonable inference that Plaintiff is alleging that

C&I Leasing is the legal successor to the Pepsi Entities, and therefore is responsible for the

waste streams generated by the Pepsi Entities. Compl., 31-32 ¶¶210-215. Plaintiff conducted a

diligent pre-litigation investigation and determined that the applicable 68th Street Site Records,

which Plaintiff explicitly relied upon in the Complaint, named each of the five predecessor

entities specifically, and alleged that C&I Leasing ultimately acquired those five entities through a series of mergers and acquisitions. *Id.*

It is well-settled law in every federal circuit including this one that "[u]nder CERCLA, successor corporations may be liable for the actions of their predecessors." *United States ex rel. Bunk v. Gov. Logistics N.V.,* 842 F.3d 261, 273 (4th Cir. 2016) *(citing United States v. Carolina Transformer Co.,* 978 F.2d 832, 838 (4th Cir. 1992)). A successor corporation takes on the liabilities of its predecessor if it meets one of four exceptions to the traditional rule: (1) there was an express or implied assumption of liabilities; (2) the transaction is a *de facto* merger; (3) the successor is a "mere continuation" of the predecessor; or (4) the transaction is fraudulent. *Id.* (citing same).

The Court should limit itself to considering Plaintiff's allegations, taken as true, and drawing all reasonable inferences in Plaintiff's favor. *Midshore Riverkeeper Conservancy*, 429 F. Supp. 3d at 73. "[P]leadings of successor liability are subject to the lenient pleading requirements of Rule 8(a) . . ." *Bunk*, 842 F.3d at 275 (quoting *Old World Republic Ins. Co. v. Hansas World Cargo Serv., Inc.*, 170 F.R.D. 361, 376 (S.D. N.Y. 1997)). "If private plaintiffs, who do not have access to inside information, are to pursue violations of the law, the pleading standard must take into account the fact that a complaint will ordinarily be limited to allegations pieced together from publicly available data." *Haley Paint Co. v. E.I. DuPont De Nemours and Co.*, 804 F. Supp. 2d 419, 425 n.3 (D. Md. 2011) (citation omitted).

C&I Leasing merely states that there is no proof of successorship, but attaches no evidence to prove this point. Plaintiff's due diligence highlighted the following information from publicly available records and historical research, including court filings and secretary of state

records.[10] As a preliminary matter, these records show that the Allegheny beverage entities acquired several companies and operated at least one Pepsi bottling franchise. These entities, through a series of mergers and acquisitions became C&I Leasing. In or about 1965, Allegheny Beverage Corporation acquired Suburban Club Carbonated Beverage Company ("Suburban Club"). The late owner Joseph LaPides joined his family's beverage businesses while operating Suburban Club, which later became the local bottler of Pepsi-Cola beverages. In or about 1967, Allegheny Beverage Corporation then acquired American Brewery, Inc. according to West Virginia Secretary of State records. In or about 1970 state records show that Pepsi-Cola Bottling Company merged into Allegheny Pepsi-Cola Bottling Company, and that these names were used interchangeably. Upon information and belief, Allegheny Pepsi-Cola Bottling Company was a subsidiary of Allegheny Beverage Corporation. In or about 1985, Allegheny Pepsi-Cola Bottling Company was sold to Pepsi Co. In or about 1992 Allegheny Pepsi-Bottling Company changed its name to C&I Leasing, Inc. Upon information and belief Allegheny Beverage Corp. and other Allegheny entities owned or operated the nexus parties, the latter which were then sold and/or merged into Pepsi Co. and renamed to C&I Leasing. According to at least one court case C&I Leasing is formerly known as Pepsi-Cola. The Maryland Secretary of State lists C&I Leasing as an active corporation in good standing. Public records confirm that C&I Leasing is a subsidiary of Pepsi Co. and/or a member of Pepsi Co.'s family of companies. In sum, Plaintiff's due diligence led to a good faith belief that C&I Leasing is the legal successor to the five predecessor entities that appear on the Site records. Plaintiff's allegations sufficiently allege a basis for C&I Leasing's successor liability without having to conduct a full analysis or determine the exact

---

[10] All of this information can be confirmed through discovery at a later stage.

theory of successor liability. As all reasonable inferences should be drawn in Plaintiff's favor, these allegations should be sufficient to meet the lenient standards of Rule 8.

Furthermore, to the extent C&I Leasing seeks detailed allegations about its liability as a successor to its five alleged predecessors, that information is peculiarly within the possession and control of C&I Leasing in its own corporate records, and is appropriately acquired in the discovery phase of this litigation, not demanded at the pleading phase. Until then, there is no obligation upon Plaintiff to plead the entirety of the evidence in the case under *Iqbal*, 556 U.S. at 663 and *Twombly*, 550 U.S. at 555. Accordingly, a full successor liability analysis is inappropriate and not required to argue or to determine a Motion to Dismiss at this phase of the litigation. Indeed, C&I Leasing attaches no affidavits or evidence undermining successorship, and to do so would be incorrect at this stage of pleadings. Because successor liability is a fact-intensive issue resolvable only after thorough discovery, the Court should deny C&I Leasing's premature motion or hold it in abeyance until Plaintiff has had a reasonable opportunity to conduct discovery on the exact theory of C&I Leasing's successor liability.

## III.    The RD/RA Consent Decree does not Bar Plaintiff's Claims

C&I Leasing argues Plaintiff's claims are barred by the covenants in Paragraphs 106 and 108 of the RD/RA Consent Decree. The RD/RA Consent Decree C&I Leasing refers to and attaches to its Motion to Dismiss is a written agreement between the United States and Plaintiff (among other parties). Def. Mot. at 11-12 (Dkt. No. 384-2); (Dkt. No. 384-3). Paragraph 106 contains a covenant not to sue MSW generators whose total waste did not exceed 0.2% of the total volume of waste at the Site (the "MSW Covenant"). RD/RA Consent Decree, at 54, ¶ 106 (Dkt. No. 174-2). Paragraph 108 contains a covenant not to sue generators whose total material

containing hazardous substances was less than 110 gallons of liquid materials or 200 pounds of solid materials (the "*De Micromis* Covenant"). *Id*. ¶ 108.

A.     **The RD/RA Consent Decree is a Contract which C&I Leasing does not have Standing to Enforce**

Foremost, no defendant is a party to, or a third-party beneficiary of, the RD/RA Consent Decree, and no defendant and has any right to enforce its terms. "For purposes of construction, a judicially approved consent decree is essentially a contract." *Holmes v. Godinez*, ---F.3d ----, 2021 WL 968837, \*2 (7th Cir. 2021) (quoting *United States v. Alshabkhoun*, 277 F.3d 930, 934 (7th Cir. 2002). "It is thus interpreted according to principles of state contract law." *Id*. (citing *United States v. City of Northlake*, 942 F.2d 1164, 1167 (7th Cir. 1991). Under Maryland law, a person cannot sue under a contract when that person is neither a party nor a third-party beneficiary of the contract." *Pruitt v. Bank of Am., N.A.*, No. CV TDC-15-1310, 2016 WL 337531, \*2 (D. Md. Jan. 28, 2016); *see also Sanders v. Republic Servs. of Ky., LLC*, 113 Fed.Appx. 648, 650 (6th Cir. 2004) (plaintiffs that were not parties to an agreed judgment lacked standing to enforce the judgment, even if they were intended third-party beneficiaries thereof). Thus, no defendant has standing to enforce the terms of the RD/RA Consent Decree, regardless of whether it falls within one of the exemptions referenced therein.

B.     **The Statutory MSW Exemption Does Not Apply**

Even if C&I Leasing could enforce the RD/RA Consent Decree, it is not protected by the MSW or *De Micromis* Covenants. As a preliminary matter, the qualified MSW exemption under Section 107(p) of CERCLA, as relates to small businesses, only applies to companies with 100 employees or fewer which generate "municipal solid waste." 42 U.S.C. § 9607(p)(B).[11] C&I

---

[11] "Municipal solid waste" is defined as waste material "generated by a *household*" or generated by a business if such business waste is "essentially the same as waste normally

Leasing does not qualify for the MSW exemption since it is not a "small business" as defined by Section 107(p) of CERCLA. Here, Plaintiff's research of public records reveals that C&I Leasing has over 267,000 employees and an annual revenue of $64.6 billion.[12] C&I Leasing is ineligible for the statutory MSW exemption for this reason alone, regardless of what its waste contained. Moreover, as alleged in the Complaint, C&I Leasing's waste was outside the definition of "municipal solid waste" in Section 107(p)(4) of CERCLA, 42 U.S.C. § 9607(p)(4). This is demonstrated by the limited historic records—which Plaintiff provided C&I Leasing with a pre-litigation settlement offer—as follows:[13]

1. **Allegheny Beverage Company**- Available records from the 1970 Accounts Receivable Ledger show charges of $35.00 for Allegheny Beverage Co. owing as of March 31, 1970.

2. **Allegheny Pepsi-Cola Bottling Company** - Available records from the 1970 Accounts Receivable Ledger show two charges of $1,533.00 for Allegheny Pepsi Cola owing as of March 31, 1970, and $852.91 for Allegheny Pepsi Cola owing as of January 31, 1970.

---

generated by a household," regularly collected and disposed with other MSW, and "contains a relative quantity of hazardous substances *no greater than the relative quantity* . . . generated by a typical *single-family household*." *Id*. § 9607(p)(4)(A)(i) and (ii) (emphases added). The term expressly excludes "waste material from manufacturing or processing operations . . . that is not essentially the same as waste normally generated by households." *Id*. § 9607(p)(4)(C).

[12] This information can be confirmed through discovery.

[13] These records are referenced in the Complaint and form the basis upon which Plaintiff identified C&I Leasing as an arranger. As such, they are integral to the complaint and can be considered without converting the motion to one for summary judgment. *E.g.*, *Franklin v. Tri-County Council for Lower E. Shore of Md.*, No. ELH-15-00786, 2015 WL 3610307, *2 (D. Md. June 5, 2015) (citing Fed. R. Civ. P. 12(d), 56). "To be 'integral,' a document must be one that by its very existence, *and not the mere information it contains*, gives rise to the legal rights asserted." *Id*. (citing *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point*, LLC, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (internal quotation omitted) (emphasis in original); *see also Palin v. N.Y. Times Co.*, 940 F.3d 804, 811 (2d Cir. 2019) ("A matter is deemed 'integral' to the complaint when the complaint 'relies heavily upon its terms and effect.' Typically, an integral matter is a contract, agreement, or other document essential to the litigation") (citation omitted).

3. **Pepsi Cola Bottling Co.** - Available records from the 1963 waste disposal tickets show at least 4 containers of refuse charged at $150.00 each for Pepsi Cola, and $852.91 for Allegheny Pepsi Cola. Available records from the 1970 Accounts Receivable Ledger show charges of $975.00 for Pepsi Cola Bottling Co. owing as of March 31, 1970.

4. **American Brewery, Inc.** - Based on Plaintiff's review of the Site records driver tickets from November 1963 alone show that American Brewery nexus parties generated what appear to be at least 21 six-cubic yard dumpsters for American Brewery.[14]

5. **Suburban Club Beverage** - Available records from the 1970 Accounts Receivable Ledger show charges of $100.00, $15.00, and $19.03 for Suburban Club Beverage owing as of February 28, 1970, March 11, 1970, and March 31, 1970.

*See* Historic Records for C&I Leasing Entities (Exhibit A hereto). Again, these records are only a snapshot in time, but demonstrate each nexus party generated waste in significant quantities atypical of a single-family household, and at least some historic records show the waste was non-MSW waste. C&I Leasing cannot meet the statutory MSW exemption.

**C.     The MSW and *De Micromis* Covenants Do Not Apply to NRD**

Notwithstanding the statutory MSW exemption, EPA policy is to include the type of covenant contained in Paragraphs 106 and 108 of the RD/RA Consent Decree for parties generating *de micromis* quantities of MSW type materials or material containing hazardous substances.[15] *See* ENVTL. PROTECTION AGENCY, INTERIM GUIDANCE ON THE MUNICIPAL SOLID WASTE EXEMPTION UNDER CERCLA § 107(p) (August 20, 2003) ("2003 EPA Interim

---

[14] Although the exact weight of the 6-cubic yard containers delivered to the Site would depend on the density of the materials specific to C&I Leasing's waste stream, a matter for which Plaintiff is entitled discovery, the California Integrated Waste Management Board has a helpful conversion table for various types of wastes. It shows that even a single cubic yard of most materials well exceeds the 200-pound limit for the *De Micromis* Covenant. *See, e.g.*, CALIFORNIA INTEGRATED WASTE MGMT. BD., CONVERTING FROM WEIGHT TO VOLUME, *available at* https://pw.lacounty.gov/epd/CD/cd_attachments/Volume_to_Weight.pdf (last visited Mar. 22, 2021).

[15] Available at https://www.epa.gov/sites/production/files/documents/interim-msw-exempt.pdf.

Guidance"). However, the RD/RA Consent Decree addressed both response activities and natural resource damages ("NRDs"). *See, e.g.*, RD/RA Consent Decree, at 1, ¶ A, 34–35, ¶ 56 (Dkt. No. 174-2) (requiring payment of $240,000 in total past NRDs). This is important because the 2003 EPA Guidance explicitly states that the MSW policy does not address NRDs. 2003 EPA Interim Guidance at 3, n. 6. Thus, as a matter of contractual interpretation, the MSW and *De Micromis* Covenants in the RD/RA Consent Decree should not bar Plaintiff from pursuing NRD costs from C&I Leasing, even if they prevented Plaintiff from pursuing C&I Leasing for other types of response costs. But C&I Leasing does not fall under the protections of either covenant as explained below.

### D.    The *De Micromis* Covenant Does Not Apply

The *De Micromis* Covenant in Paragraph 108 of the RD/RA Consent Decree is inapplicable, because it is limited to less than 110 gallons of liquid materials or 200 pounds of solid materials containing hazardous substances. As demonstrated above, C&I Leasing, via each of the nexus parties, generated too much waste to fall under the *De Micromis* Covenant. Additionally, the Site records are incomplete. C&I Leasing is likely responsible for substantially more waste at the Site, since virtually all waste reflected in the historic records is from either November 1963 or the 1970 Accounts Receivable Ledger

### E.    The MSW Covenant Does Not Apply

C&I Leasing does not fall under the MSW Covenant for three reasons. First, as argued above, C&I Leasing did not generate waste meeting the definition of MSW. Second, the MSW Covenant in Paragraph 108 does not apply if "the MSW contributed significantly or could contribute significantly, either individually or in the aggregate, to the cost of the response action or natural resource restoration at the Site." RD/RA Consent Decree, at 54, ¶ 107 (Dkt. No. 384-

3). The Site accepted a significant amount of MSW waste, which has "contributed significantly" to the response costs. EPA's Record of Decision ("ROD") for the Site demonstrates that EPA considers the MSW to "contribute significantly" to the response costs, because the Selected Remedy includes numerous elements commonly used for closure of MSW landfills, including but not limited to venting of landfill gas, construction of access barriers, zoning restrictions, establishment of monitoring and maintenance programs, adding soil cover and re-vegetating, conveying leachate for treatment. *See* EPA Record of Decision Excerpts (Dkt. No. 521-8).[16] The Selected Remedy is therefore consistent with the presumptive remedy for CERCLA municipal landfills, which "relates primarily to containment of the landfill mass and collection and/or treatment of landfill gas," as well as "measures to control landfill leachate." *See* EPA, Presumptive Remedy for CERCLA Municipal Landfill Sites, at 2 (Sept. 1993) (Dkt. No. 521-9).[17] Third, the waste attributed to C&I Leasing has "contributed significantly" to the response costs, as it is among the top PRPs by volume which Plaintiff has identified at the Site and should well exceed 0.2% of the total waste at the Site. Plaintiff reasonably believes it can demonstrate this fact for C&I Leasing after formal discovery in the allocation phase of this case, but again, this case is in such a premature phase that allocation issues cannot be fleshed out completely until discovery occurs.

---

[16] Plaintiff attached this document as Exhibit H to its Response in Opposition to Certain Defendants' Motion to Dismiss and Alternative Motion for Summary Judgment (Dkt. No. 521). The full ROD is available in the docket for the underlying case. *United States v. AAI Corp.*, No. 17-cv-2909-RDB (D. Md. Oct. 2, 2017), Dkt. No. 2-3.

[17] Plaintiff attached this as Exhibit I to its Response in Opposition to Certain Defendants' Motion to Dismiss and Alternative Motion for Summary Judgment (Dkt. No. 521).

**IV.      Plaintiff is Entitled to a Declaratory Judgment**

  C&I Leasing states in an unclear section comprised of two sentences and disjointed string citations that because "Plaintiff's CERCLA claim is dismissed," the defendant is entitled to a declaration that it [the defendant] is not liable for response costs.[18] Def. Mot. 13-14 (Dkt. N. 384-2). First, Plaintiff's CERCLA claim for contribution survives because its allegations meet the pleading standard and set forth all the requisite elements of CERCLA (as set forth in detail above). Second although Plaintiff's cause of action is for contribution under Section 113(f) (*see* Compl., 151, Count I – Contribution Under CERCLA (Dkt. No. 1)), Plaintiff seeks the remedy of declaratory judgment under *both* CERCLA Section 113, and the Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202. Compl., 155, ¶ 1215. Plaintiff is entitled to declaratory relief under both statutes.

  First, Plaintiff is entitled to declaratory relief under CERCLA. In *Sherwin-Williams Co.*, this Court held that entry of declaratory judgment under Section 113(g)(2) of CERCLA was *mandatory*, once liability had been determined, for *contribution* claimants. *Sherwin-Williams Co. v. ARTRA Grp., Inc.*, 125 F. Supp. 739, 753–54 (D. Md. 2001). The Court noted that, although the language of Section 113(g)(2) could appear to relate only to cost recovery claims, courts have interpreted it to apply to both contribution and cost recovery actions. *Id*. at 753 (citing *Boeing*

---

[18] Using logic, Plaintiff assumes that C&I Leasing is actually trying to argue through three steps of analysis: that Plaintiff's CERCLA claim for contribution claim fails, and that *if* the Court dismisses the CERCLA claim, it should then dismiss the claim for declaratory relief, and then grant the defendant a declaration of nonliability. Because C&I Leasing's statements are unsupported by facts and arguments and are unclear, Plaintiff's response will focus on why it is entitled to declaratory relief.

*Co. v. Cascade Corp.*, 207 F.3d 1177, 1191–92 (9th Cir. 2000); *Morrison Enters. v. McShares, Inc.*, 13 F. Supp. 2d 1095, 1123–24 (D. Kan. 1998)).[19]

However, Plaintiff is also entitled to plead in the alternative a request for relief under the Declaratory Judgments Act. No case that Plaintiff can identify has held that a contribution claimant is barred from pursuing declaratory relief under the Declaratory Judgments Act. Indeed, it is quite common for CERCLA claimants to pair contribution claims with claims for declaratory relief under the federal Declaratory Judgments Act or state equivalents. *E.g.*, *PCS Nitrogen, Inc.*, 104 F. Supp. 3d at 733 (plaintiff proceeding under the Declaratory Judgments Act). In *PCS Nitrogen*, the defendants challenged the plaintiff's right to seek a money judgment for future response costs. Addressing this issue, the district court noted that a *money* judgment is prohibited for Section 107 cost recovery claimants, because Section 113(g) provides a limited remedy for declaratory judgment for future response costs. *Id.* at 743–44. By contrast, the district court noted that at least three circuits have upheld a district court's award of monetary damages for future response costs for Section 113(f) *contribution* claimants. *Id.* at 744 (collecting cases emphasizing the courts' discretion to fashion equitable relief in contribution cases).

## V.   This Matter Should Proceed to Discovery

Plaintiff respectfully requests the Court to deny the Motion to Dismiss as premature until Plaintiff has had a reasonable opportunity for discovery on the issue of successor liability and the precise nature of the waste attributed to C&I Leasing and its contractual arrangement for

---

[19] As a matter of statutory interpretation, the Court noted that this reading of CERCLA is consistent with the reading of the statute of limitations provisions, based on the premise that an action for contribution necessarily incorporates the liability provisions applicable to cost recovery actions. *Id.*

disposal. [20] Regarding the adequacy of Plaintiff's waste allegations, Plaintiff is not required to allege the total volume at the Site. At this premature stage of this case, the total volumes of waste attributable to all parties, and more importantly, all viable parties, are simply unknown. As with virtually every Superfund case with limited historical records, the total volume attributable to any individual defendant or to the Site as a whole cannot and will not be known at this early stage of the litigation before discovery, and may never be known. The Site records are incomplete. As with any case, significantly more records and other information undoubtedly will be uncovered as a result of discovery from all parties, which would provide a better understanding of each party's equitable share of liability, and which will be crucial for the Court's allocation determinations at a later phase of litigation. Obviously, much of the yet to be known volumetric information is peculiarly in the defendant's possession. It is simply premature to address this issue on a Motion to Dismiss before discovery.

Likewise, successor liability calls for a fact-intensive inquiry. *E.g.*, *Martin Hilti Family Trust v. Knoedler Gallery, LLC*, 386, F. Supp. 3d 319, 331 (S.D. N.Y. 2019) ("Claims premised on theories of successor liability and alter ego liability call for fact-intensive inquiries."); *Aaron Carlson Corp. v. Cohen*, No. 17-cv-0268 (WMW/DTS), 2017 WL 7370053, *2 (D. Minn. May 19, 2017) (resolution of the four exceptions to successor non-liability "is necessarily a fact-intensive inquiry"); *In re QR Properties, LLC*, 485 B.R. 20, 27 (D. Mass. 2013) (successor liability on mere continuation theory requires a "fact-intensive analysis of the evidence"). Other courts considering the adequacy of successor liability allegations have allowed discovery. *E.g.*, *Metro Container Grp.*, 450 F. Supp. 3d at 604 (dismissing claims without prejudice, but allowing

---

[20] Plaintiff's argument that it is entitled to discovery does not require an affidavit under Fed. R. Civ. P. 56(d) because discovery is not necessary to respond C&I Leasing's "facts," which are not determinative of Plaintiff's cause of action under CERCLA. However, Plaintiff can provide such an affidavit or declaration if the so Court requires.

leave to amend and limited discovery into successorship issues); *see also Ortiz v. Green Bull, Inc.*, No. 10-CV03747, 2011 WL 5554522, at **9–10 (E.D. N.Y. Nov. 14, 2011) (allowing plaintiff to engage in limited discovery because there was a plausible allegation of de facto merger based on documents suggesting the defendant purchased assets of the predecessor ad the defendant company's website "suggest[ed] some degree of continuity" between the two companies).

Indeed, the question raised by *Twombly* is whether a plaintiff has stated "enough facts to raise a reasonable expectation that *discovery* will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 555 (emphasis added). "The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *E.g.*, *Davidson v. Sarnova, Inc.*, No. JKB-17-1067, 2017 WL 5564654, at *4 (D. Md. Nov. 20, 2017) (citing *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citation and internal quotation marks omitted). Such circumstances warrant discovery. *See id.* (citing 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1224 (3d ed.)); *compare Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009) (addressing a challenge to personal jurisdiction, noting "Furthermore, we have found [jurisdictional] discovery particularly appropriate where the defendant is a corporation. . . . A plaintiff who is a total stranger to a corporation should not be required, unless he has been undiligent, to try such an issue on affidavits without the benefit of full discovery") (internal citation omitted); *Rocke v. Pebble Beach Co.*, 541 Fed. App'x. 208, 212–13 (3d Cir. 2013) ("Where information involving a corporation's business activities lies within the corporation's 'sole possession,' a plaintiff should be given the opportunity to conduct

[] discovery in order to correct this 'information imbalance'").[21] Plaintiff's allegations were constructed based on publicly available data which has led Plaintiff to a good faith belief that discovery will reveal evidence of the exact theory of corporate successorship.

## VI. Plaintiff Should be Allowed Leave to Amend if any Allegations are Insufficient, and that Amendment Should Relate Back to the Original Filing Date

Should the Court find Plaintiff's allegations against C&I Leasing to be insufficient in any way, the proper remedy is to allow Plaintiff leave to amend. FED. R. CIV. P. 15. Absent good reason, leave to amend under Rule 15(a) should be "freely given." *See In re Palmer*, 615 B.R. 86, 92 (D. Md. 2020) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). ". . . A court's discretion to deny an amendment 'is limited by the interpretation given Rule 15(a) in *Foman*, and by the general policy embodied in the Federal Rules favoring resolution of cases on their merits.'" *Id*. (quoting *Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 279 (4th Cir. 1987)). Courts should therefore "focus on prejudice or futility or bad faith as the only legitimate concerns in denying leave to amend." *Id*. (quoting *Island Creek Coal Co.*, 832 F.2d at 279). "[D]elay alone is not sufficient reason to deny leave to amend." *Id*. (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)).

Virtually every case dismissing a complaint for inadequate successor liability allegations allowed leave to amend to cure the technical deficiency. *See, e.g.*, *Metro Container Grp.*, 450 F.

---

[21] By comparison, in the product liability context, the Fifth Circuit has noted that requiring the pleading of "extremely detailed factual allegations that satisfy each element of a product liability action . . . creates a situation where a manufacturer will not be held liable . . . because it has sole possession of the necessary document to ultimately prove the claim." *Flagg v. Stryker Corp.*, 647 Fed. App'x 314 (5th Cir. 2016) (noting "Twombly and Iqbal were designed to avoid subjecting defendants to lengthy and expensive discovery when the plaintiff is merely on a fishing expedition . . ." and distinguishing that from "a pre-discovery stage . . ., in an area of law where defendants are likely to exclusively possess the information relevant to making more detailed factual allegations."). The same is the case for corporate liability.

Supp. 3d at 604 (dismissing claims without prejudice and allowing leave to amend and limited discovery into successorship issues); *New York v. Town of Clarkstown*, 95 F. Supp. 3d 660, 683 (S.D.N.Y. 2015) (dismissing without prejudice with leave to file a further amended complaint); *Hobart Corp. v. Dayton Power & Light Co.*, No. 3:13-cv-115, 2014 WL 631518, *5 (S.D. Ohio Feb. 18, 2014) (dismissing claims without prejudice and allowing leave to file a second amended complaint to cure the deficiency); *Carolina Power & Light Co. v. 3M Co.*, Nos. 5:08-CV-460-FL, 5:08-CV-463-FL, 2010 WL 11420854 (E.D. N.C. Mar. 24, 2010) *overruled in part on reconsideration* No. 5:08-CV-460-FL, 2010 WL 2837009, **2–3 (E.D. N.C. July 19, 2010) (finding the court "clearly erred" by dismissing with prejudice for inadequate successor liability allegations, changing the dismissal to one without prejudice, and granting leave to amend, reasoning "[t]he deficiency in the pleadings was merely a technical one that could be corrected"); *see also Dixon*, 2011 WL 6046828, *3 (dismissing without prejudice to refiling a new complaint with sufficient facts to demonstrate successor liability); *cf.*, *Ferguson v. Arcata Redwood Co., LLC*, No. C03-05632 SI, 2004 WL 2600471, at **5–6 (N.D. Cal. Nov. 12, 2004) (dismissed without leave to amend only because leave had previously been granted and the defective successor liability allegations were not cured by the amendment).

Furthermore, the amendment should be allowed to relate back to the date of the original pleading for statute of limitations purposes. Federal Rule of Civil Procedure 15(c) provides that an amendment relates back to the date of the original pleading for statute of limitation purposes if the amendment concerns the same conduct, transaction or occurrence as the original pleading,

FED. R. CIV. P. 15(C)(1)(B). That requirement is satisfied here because the amendment would concern the same conduct as the original pleading.[22]

The clear preference embodied in Rule 15 is for merits-based decision making. *T-Mobile Northeast LLC v. City of Wilmington*, 913 F.3d 311, 328 (3d Cir. 2019) (citation omitted).[23] The Fourth Circuit has made clear that when a party has been given fair notice of a claim within the limitations period and will suffer no improper prejudice in defending it, the liberal amendment policies of the Federal Rules favor relation-back. *Goodman v. Praxair, Inc.,* 494 F.3d 458, 471 (4th Cir. 2007) (citation omitted). In fact, "the Federal Rules do not demand a perfect effort at the outset." *Id.* at 473. Here the defendant would not be prejudiced in any way by Plaintiff amending its Complaint and has been given fair notice of the claim. Because any amendment as to Plaintiff's allegations regarding C&I Leasing relates to the same conduct, transaction, or occurrence, such amendment should relate back to the date of the original Complaint under Rule 15(c)(1)(B). FED. R. CIV. P. 15(C)(1)(B); *Boarhead*, 381 F. Supp. 2d at 434–35 (amended complaint naming individual PRP group members as named plaintiffs and also adding new claim related back to date of original complaint).

## VII.   Plaintiff's Claims Should not be Dismissed With Prejudice

C&I Leasing's requested relief is a dismissal with prejudice which "is ordinarily reserved for the most egregious cases." *Pisani v. Baltimore City Police Dept.*, No. WDQ-12-1654, 2014 WL 1401934, \*2 (D. Md. April 8, 2014) (analyzing issue under Rule 37 (quoting *Sadler v.*

---

[22] Allowing a plaintiff to relate back its amended pleading to the date of the original pleading renders the amended pleading "timely even though it was filed outside an applicable statute of limitations [period]." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010).

[23] The purpose of relation-back balances the protections of a statute of limitations (which are embodied in the rule itself) against the "clear preference" to resolve a dispute on its merits. *Krupski*, 260 U.S. at 550.

*Dimensions Health Corp.*, 178 F.R.D. 56, 59 (D. Md. 1998) (citing *Dove v. Codesco*, 569 F.2d 807, 810 (4th Cir. 1978) (analyzing issue under Rule 41(b)))); *see also Stephenson v. Warden, Doe*, 554 Fed. Appx. 835, 837 (11th Cir. 2014) ("Dismissals with prejudice are drastic remedies that are to be used only where lesser sanction would not better serve the interests of justice.") (citation omitted); *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 867–68 (3d Cir. 1984) (dismissals with prejudice are "drastic sanctions" and "extreme") (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)).

Although Plaintiff has detailed that any dismissal is not warranted for the reasons stated herein, Plaintiff respectfully submits that any dismissal should be without prejudice, with leave to amend relating back to the original filing date. Dismissal with prejudice by the court acts as adjudication on the merits. *See Orca Yachts, L.L.C. v. Mollicam, Inc.*, 287 F.3d 316, 319 (4th Cir. 2002) (involuntary dismisssal by the court is an adjudication on the merits under Rule 41(b), unless otherwise specified by the court); *see also Papera v. Pa. Quarried Bluestone Co.*, 948 F.3d 607, 610–11 (3d Cir. 2020) ("A dismissal with prejudice operates as an adjudication on the merits, so it ordinarily precludes future claims.") (citing *Landon v. Hunt*, 977 F.2d 829, 832–33 (3d Cir. 1992)) (quotes omitted). Plaintiff timely filed its Complaint within the three year statute of limitations but a dismissal with prejudice without relation back would prevent Plaintiff—the PRPs cooperating with EPA and spending millions of dollars to address contamination at the Site—from pursuing non-performing and non-cooperating PRPs such as C&I Leasing. A dismissal with prejudice would be contrary to the Federal Rules' preference for merits-based decision making and undermine CERCLA's private party cleanup incentives.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court enter an appropriate order denying C&I Leasing's Motion to Dismiss, and for such other and further relief as the Court deems appropriate under the circumstances.

Dated:    April 8, 2021                                       Respectfully submitted,

                                                              THE JUSTIS LAW FIRM LLC

                                                              */s/ Ambereen K. Shaffie*
                                                              Ambereen K. Shaffie      admitted *pro hac vice*
                                                              Rachel D. Guthrie         admitted *pro hac vic*
                                                              Matthew T. Merryman  admitted *pro hac vice*
                                                              10955 Lowell Ave.
                                                              Suite 520
                                                              Overland Park, KS  66210-2336
                                                              Telephone: (913) 955-3716
                                                              Facsimile:  (913) 955-3711
                                                              Email: ashaffie@justislawfirm.com
                                                                       rguthrie@justislawfirm.com
                                                                       mmerryman@justislawfirm.com


                                                              Stuart D. Kaplow
                                                              Bar Number 05282
                                                              James Kelly-Lieb
                                                              Bar Number 20420
                                                              Stuart D. Kaplow, P.A.
                                                              11426 York Road, 1st Floor
                                                              Cockeysville, MD 21030
                                                              (410) 339-3910 Telephone
                                                              (410) 415-7161 Facsimile
                                                              Email: skaplow@stuartkaplow.com

                                                              ATTORNEYS FOR PLAINTIFF 68TH STREET
                                                              SITE WORK GROUP

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 8, 2021 a copy of the foregoing Plaintiff's Response in

Opposition to Defendant C&I Leasing, Inc's Motion to Dismiss Plaintiff's Complaint was filed

electronically. Notice of this filing will be sent to all parties by operation of the Court's

electronic filing system. Parties may access the filing through the Court's Electronic Case Filing

System.

<u>*/s/ Ambereen K. Shaffie*                              </u>
Ambereen K. Shaffie