# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| 68TH STREET SITE WORK GROUP, | No.: 1:20-cv-03385-SAG |
| Plaintiff, | |
| v. | |
| 7-ELEVEN, INC., et al., | |
| Defendants. | |

## DEFENDANT C&I LEASING, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.      INTRODUCTION ........................................................................................ 1

II.     THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF IS NOT
        THE REAL PARTY IN INTEREST ................................................................... 2

III.    PLAINTIFF HAS NOT PLED FACTS THAT ESTABLISH SUCCESSOR
        LIABILITY AND INAPPROPRIATELY ATTEMPTS TO AMEND ITS
        COMPLAINT THROUGH ITS OPPOSITION BRIEF ....................................... 5

IV.     THE COMPLAINT FAILS BECAUSE IT DOES NOT CONTAIN FACTS
        SUPPORTING ARRANGER LIABILITY ......................................................... 7

V.      ALL CLAIMS CONCERNING MUNICIPAL SOLID WASTE WERE WAIVED
        IN THE RD/RA CONSENT DECREE ........................................................... 10

VI.     PLAINTIFF CANNOT PURSUE DECLARATORY RELIEF THROUGH THE
        DECLARATORY JUDGMENT ACT, AND ITS REQUEST FOR CERCLA
        DECLARATORY RELIEF OTHERWISE FAILS .............................................. 13

VII.    PLAINTIFF IS NOT ENTITLED TO DISCOVERY, AND DISMISSAL
        SHOULD BE WITH PREJUDICE .................................................................. 15

VIII.   CONCLUSION ......................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A. Shapiro & Sons, Inc. v. Rutland Waste & Metal Co.*,
    76 F. Supp. 2d 82 (D. Mass. 1999) .........................................................................................14

*Allied Towing Corp. v. Great E. Petroleum Corp.*,
    642 F. Supp. 1339 (E.D. Va. 1986) ........................................................................................8, 9

*Am. Alternative Ins. Co. v. Moon Nurseries, Inc.*,
    No. 11-cv-2267, 2012 WL 892620 (D. Md. Mar. 14, 2012) ....................................................9

*Ashcroft v. Iqbal*,
    556 U.S. 682 (2009)................................................................................................................15

*Boarhead Farm Agreement v. Advanced Envtl. Tech. Corp.*,
    381 F. Supp. 2d 427 (E.D. Pa. 2005) .....................................................................................4, 5

*Bryant v. Colonial Pipeline Co.*,
    699 F. Supp. 546 (W.D. Va. 1987) ...........................................................................................9

*City of Colton v. Am. Promotional Events, Inc.-West*,
    614 F.3d 998 (9th Cir. 2010) .................................................................................................14

*City of Kalamazoo v. Mich. Disposal Serv. Corp.*,
    125 F. Supp. 2d 219 (W.D. Mich. 2000) ..................................................................................4

*Dixon Lumber Co. v. Austinville Limestone Co.*,
    No. 7:16-cv-130, 2017 WL 4933053 (W.D. Va. Oct. 31, 2017) ...............................................8

*Haley Paint Co. v. E.I. Dupont De Nemours & Co.*,
    804 F. Supp. 2d 419 (D. Md. 2011).........................................................................................5

*In re Triangle Capital Corp. Sec. Litig.*,
    988 F.3d 743 (4th Cir. 2021) ................................................................................................15

*J & P Dickey Real Estate Family Ltd. P'ship v. Northrop Grumman Guidance & Elecs. Co.*,
    No. 2:11-cv-37, 2012 WL 925015 (W.D.N.C. Mar. 19, 2012) .................................................9

*Metro Container Grp. v. AC & T Co.*,
    450 F. Supp. 3d 583 (E.D. Pa. 2020) ....................................................................................4, 5

*Migdal v. Rowe Price-Fleming Int'l, Inc.*,
    248 F.3d 321 (4th Cir. 2001)................................................................................................15

*Mylan Labs., Inc. v. Akzo, N.V.*,
    770 F. Supp. 1053 (D. Md. 1991) ..................................................................6

*Nurad, Inc. v. William E. Hooper & Sons Co.*,
    966 F.2d 837 (4th Cir. 1992) ...................................................................8, 9

*Pasco Sanitary Landfill NPL Site Indus. Waste Area Generator Grp. III v. Basin Disposal, Inc.*,
    No. 4:15-cv-5022, 2015 WL 12516735 (E.D. Wash. Nov. 16, 2015) .........................2, 3, 4, 5

*PCS Nitrogen, Inc. v. Ross Development Corp.*,
    104 F. Supp. 3d 729 (D.S.C. 2015) ..........................................................14

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013) ....................................................................15

*Shillman v. Hobstetter*,
    249 Md. 678 (1968) ........................................................................11, 12

*United States v. Alcan Aluminum Corp.*,
    964 F.2d 252 (3d Cir. 1992) .....................................................................8

*Zachair, Ltd. v. Driggs*,
    965 F. Supp. 741 (D. Md. 1997) ...............................................................6

## STATUTES

42 U.S.C. § 9601 .................................................................................9

42 U.S.C. § 9607 .............................................................................7, 10

42 U.S.C. § 9613 .................................................................................2

Fed. R. Civ. P. 12(b) .........................................................................5, 16

Fed. R. Civ. P. 17(a) ............................................................................3

## OTHER AUTHORITIES

EPA, *Interim Guidance on the Municipal Solid Waste Exemption Under CERCLA § 107(p)*
    (Aug. 20, 2003), *available at* https://www.epa.gov/sites/production/files/documents/interim-msw-exempt.pdf ..............................................................................11

L. Civ. R. 105.3 .................................................................................1

I.     **INTRODUCTION**

Plaintiff's Brief in Opposition to C&I Leasing's Motion to Dismiss (Dkt. 529 or "Opp."),[1] does nothing to change the fact that its Complaint impermissibly relies on legal conclusions rather than well-pled facts and, thus, fails as a matter of law.  Interestingly, the Opposition does not actually "oppose" many of C&I Leasing's arguments.  Rather, with few exceptions, the Opposition acts as a ship passing in the night: failing to acknowledge or distinguish the numerous cases cited by C&I Leasing where courts granted motions to dismiss concerning similar conclusory complaints.  At other times, the Opposition interestingly responds to arguments that C&I Leasing did not advance in its Motion, as if Plaintiff were pulling from another opposition brief and failed to remember which legal conclusions or defendant it was addressing.  Even worse, Plaintiff violates well-established case law prohibiting plaintiffs from introducing new "facts" in a brief opposing a motion to dismiss.  But the Court should see Plaintiff's introduction of these new "facts," coupled with its four-page argument that dismissal should be without prejudice, for what it is: a tacit concession that its Complaint fails as a matter of law.

For the reasons advanced in C&I Leasing's Moving Brief (Dkt. 384-2) and those below, the Court should dismiss the Complaint because (1) Plaintiff is still not the real party in interest; (2) there are no well-pled facts concerning successor liability; (3) it fails to state a contribution claim for arranger liability; and (4) the declaratory judgment claim cannot survive absent a viable contribution claim.  Finally, dismissal should be *with prejudice* because in the RD/RA Consent Decree, all claims concerning Municipal Solid Waste were waived.

---

[1] Plaintiff's 37+ page Opposition violates this Court's Local Rule that opposition briefs "shall not exceed thirty-five (35) pages."  L. Civ. R. 105.3.

## II.   THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF IS NOT THE REAL PARTY IN INTEREST

Plaintiff's attempt to show that it is the real party in interest is unavailing because it relies on arguments that other courts have rejected, overplays the four cases it relies on, and mischaracterizes C&I Leasing's case law.  The Court should reject Plaintiff's contention that, because it "is common practice for unincorporated associations to be named plaintiffs in CERCLA cases" and "their status as real parties in interest is rarely analyzed," Plaintiff is the real party in interest.  *See* Opp. at 8-9.  Contrary to Plaintiff's assertion, other courts' failures to analyze this issue does not mean these "courts must have determined that such PRP groups are the real parties in interest." *Id.* at 9 n.5.  Rather, all this means is that this issue was not raised or analyzed.  Indeed, Plaintiff's counsel raised this argument in prior litigation, but the court rejected it.  *See Pasco Sanitary Landfill NPL Site Indus. Waste Area Generator Grp. III v. Basin Disposal, Inc.*, No. 4:15-cv-5022, 2015 WL 12516735, at *2 (E.D. Wash. Nov. 16, 2015) ("Further, IWAG III's assertion that other district courts have allowed other such associations to proceed as parties is not germane to the issue before the Court.  To support their argument, IWAG III only sites [*sic*] cases where the associations' statues [*sic*] as parties went unchallenged.").

Equally meritless is Plaintiff's contention that it is the real party in interest because the CERCLA definition of "person" includes associations.  *See* Opp. at 7 (citing 42 U.S.C. § 9601(21)).  Being a CERCLA "person" does not automatically entitle an entity to bring a contribution action.  Rather, the entity must be a "person *who has resolved its liability to the United States or a State for some or all of a response action*."  42 U.S.C. § 9613(f)(3)(B) (emphasis added).  Unlike its members, Plaintiff never had liability to the United States or Maryland, never resolved any liability to the United States or Maryland, and, thus is not a PRP who can bring a contribution claim.  *See Pasco Sanitary Landfill*, 2015 WL 12516735, at *2 ("CERCLA provides

that PRPs who have paid for more than their share of remediation costs have the right to sue other PRPs for contribution." (citations omitted)).

This distinction is critical because in two of the cases on which Plaintiff relies, *the PRP Group itself was a PRP*.  In *Karras v. Teledyne Industries, Inc.*, the Plaintiff was a trustee of a PRP group that had organized itself as a trust.  191 F. Supp. 2d 1162, 1164 (S.D. Cal. 2002).  Unlike here, the "Plaintiffs acknowledge[d] their PRP status in the complaint."  *Id.* at 1170.[2]  The *Karras* PRP group was a PRP because the "group of PRPs ('PRP Group') entered into an Imminent and Substantial Endangerment Order" with the California Department of Toxic Substances Control ("DTSC"), and the "PRP Group entered into a Consent Decree with DTSC."  *Id.* at 1164.  This matter is unlike *Karras* because Plaintiff alleges that its twelve members, <u>*not Plaintiff itself*</u>, (1) settled with the EPA and State of Maryland; (2) "are signatories to the RD/RA Consent Decree"; (3) "entered into an Administrative Settlement Agreement and Order for Remedial Investigation and Feasibility Study" with EPA; and (4) completed a Remedial Investigation Report and Feasibility Study Report.  *See* Dkt. 1 ¶¶ 16, 20, 22, 29.  *Karras* is also distinguishable because "Rule 17(a) provides that a trustee of an express trust may sue as the real party in interest on behalf of trust beneficiaries."  *Karras*, 191 F. Supp. 2d at 1171 (citing Fed. R. Civ. P. 17(a)).  Rule 17(a) does not provide the same for unincorporated associations.  Likewise, in *LWD PRP Group v. ACF Industries, LLC* – another case brought by The Justis Law Firm – the PRP group itself entered into an administrative settlement agreement and order on consent with the EPA.  No. 5:12-cv-127, 2014 WL 901648, at *2 (W.D. Ky. Feb. 7, 2014) ("*The LWD PRP Group*, and the other PRPs who entered into the Removal Action AOC, completed the removal activities in September 2009. . . .

---

[2] *Pasco Sanitary Landfill* expressly distinguished *Karras* on this ground.  *Pasco Sanitary Landfill*, 2015 WL 12516735, at *2 n.1 (finding PRP group's reliance on *Karras* "misplaced" and that the "case is distinguishable because the PRP association in that case was itself a named PRP").

*The LWD PRP Group* alleges that in addition to entering into the Removal Action AOC . . . ." (emphasis added)).[3]

Finally, the Court should not be misled by Plaintiff's attempts to distinguish C&I Leasing's cases where the courts held the PRP group was not the real party in interest. Contrary to Plaintiff, the *Pasco Sanitary Landfill* PRP group was not "formed solely for the purpose of litigation." *See* Opp. at 12. Rather, the court expressly noted that – just like here – the PRP group "was created to facilitate clean-up and cost recovery efforts of the 16 member PRPs." *Pasco Sanitary Landfill*, 2015 WL 12516735, at *1. Plaintiff also fails to acknowledge that – just like here – the *Boarhead* "PRPs paid for remediation by contributing to the Agreement Group which, acting as an intermediary, then pooled the funds and paid the contractors conducting remediation." *Boarhead Farm Agreement v. Advanced Envtl. Tech. Corp.*, 381 F. Supp. 2d 427, 432-33 (E.D. Pa. 2005).[4] These factors make *Pasco Sanitary Landfill* and *Boarhead* similar to the instant matter and unlike the cases on which Plaintiff relies, where the PRP groups themselves were PRPs. The Court should

---

[3] The Court should reject out of hand Plaintiff's argument that in "*City of Kalamazoo*, the district court analyzed the real party in interest doctrine in the context of a PRP group." *See* Opp. at 10. **That case never once mentioned the real party in interest concept.** *See generally City of Kalamazoo v. Mich. Disposal Serv. Corp.*, 125 F. Supp. 2d 219 (W.D. Mich. 2000). Rather, that case concerned a motion to disqualify an attorney who served as common counsel to a joint defense group in previous litigation and, thus, had a conflict of interest because he sought to represent plaintiffs who were suing the members of the former joint defense group. *Id.* at 220-21.

[4] C&I Leasing acknowledges that the U.S. District Court for the Eastern District of Pennsylvania recently held that a PRP group had sufficient interest to continue as a plaintiff. *Metro Container Grp. v. AC & T Co.*, 450 F. Supp. 3d 583, 605 (E.D. Pa. 2020). C&I Leasing maintains that this case is inapplicable and was decided on expansive application of a narrow holding. First, it relied solely on *Karras*, which C&I Leasing has shown to be distinguishable as, *inter alia*, the trusts had undertaken the liability for clean-up and had performed actual cleanup on the site. Second, it did not contain any discussion of *Boarhead*, which was also from the Eastern District of Pennsylvania and held that the PRP group was not the real party in interest.

follow C&I Leasing's case law, reject Plaintiff's misreading, and dismiss the Complaint because this action is not being prosecuted by the real parties in interest.[5]

## III.   PLAINTIFF HAS NOT PLED FACTS THAT ESTABLISH SUCCESSOR LIABILITY AND INAPPROPRIATELY ATTEMPTS TO AMEND ITS COMPLAINT THROUGH ITS OPPOSITION BRIEF

In its Moving Brief, C&I Leasing cited five cases for the proposition that a complaint relying on successor liability must be dismissed where it does not allege facts to support one of the four exceptions to the rule that corporate purchasers of assets do not also acquire liabilities. *See* Dkt. 384-2 at 6-7.  Plaintiff's opposition acknowledges that successor liability attaches only through "one of the four exceptions to the traditional rule," *see* Opp. at 22, but makes no attempt to distinguish these cases, thus conceding their applicability.  In fact, one of the cases on which Plaintiff relies for its real party in interest argument dismissed a complaint brought by The Justis Law Firm LLC for failing to plausibly allege facts to support any of the four successor theories, noting that the successorship allegations "only amount to conclusory finger-pointing" and were "nothing more than the lightest weight blanket allegations."  *Metro Container*, 450 F. Supp. 3d at 604 ("As a result, the purported successor defendants are left to speculate as to what theory of liability attaches their liability.").  Rather than cite any case that allowed a complaint to proceed on such wholly conclusory allegations of successor liability, Plaintiff curiously relies on *Haley Paint Co. v. E.I. Dupont De Nemours & Co.*, 804 F. Supp. 2d 419 (D. Md. 2011).  *See* Opp. at 22.  But that case concerned whether the plaintiff plausibly pled a conspiracy to fix prices under the Sherman Act and had nothing to do with successor liability.  *Haley*, 804 F. Supp. 2d at 420.

---

[5] Plaintiff faults C&I Leasing for bringing a Rule 12(b)(6) motion and not analyzing the real party in interest issue through "a jurisdictional challenge."  *See* Opp. at 5 n.2.  However, neither *Pasco Sanitary Landfill*, *Boarhead*, *Karras*, *LWD PRP Group*, nor *Metro Container* analyzed this issue under Rule 12(b)(1).  Regardless, even if Plaintiff were correct, its concern is purely academic, as it acknowledges that reviewing courts may analyze jurisdictional issues *sua sponte*.  Opp. at 9 n.5.

Tacitly conceding the inadequacy of its allegations, Plaintiff's opposition instead inappropriately introduces new "facts" that purport to establish successorship. *See* Opp. at 22-23. But the Court cannot consider these new "facts," as "'it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (citation omitted); *see Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) ("[A plaintiff] is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint." (citations omitted)). Thus, the Court must "restrict[] its consideration to allegations which do appear in the complaint." *Mylan Labs.*, 770 F. Supp. at 1068. Because the Complaint's conclusory allegations do not come close to pleading successor liability, the Court should dismiss it as to C&I Leasing.[6]

Regardless, even if the Court considered Plaintiff's newly raised allegations, they are still not enough to plead successor liability. For instance, Plaintiff claims for the first time that "C&I Leasing ultimately acquired those five entities through a series of mergers and acquisitions." *See* Opp. at 22. This allegation fails, however, because there are still no facts regarding an express or implied assumption of liabilities, de factor merger, mere continuation, or fraudulent transfer. *See* Dkt. 384-2 at 6-7 (listing four exceptions to rule that acquiring company does not acquire liabilities). Likewise, Plaintiff's convoluted, page-length recitation of the purported corporate history of C&I Leasing and the five Pepsi Entities makes for interesting reading, but it does not link C&I Leasing to all five Pepsi Entities. *See* Opp. at 23. This history claims that Allegheny Beverage Co. acquired American Brewery and Suburban Club Beverage. It further argues that

---

[6] Further grasping at straws, Plaintiff faults C&I Leasing for "attach[ing] no affidavits or evidence undermining successorship," but then, *in the very same sentence*, concedes that "to do so would be incorrect at this stage of pleadings." *See* Opp. at 24. The only thing Plaintiff got right in that sentence is that we are at the "stage of pleadings." At this stage, it is Plaintiff's burden to plead plausible facts – not legal conclusions – and it has come up woefully short.

Pepsi-Cola Bottling Co. merged into Allegheny Pepsi-Cola Bottling Co. and that this entity later changed its name to C&I Leasing.   At best, this links C&I Leasing to Pepsi-Cola Bottling Co. and/or Allegheny Pepsi-Cola Bottling Co.   There still, however, are no facts as to why C&I Leasing is a successor to the other three entities.   Indeed, Plaintiff argues that "Allegheny Pepsi-Cola Bottling Co. was a subsidiary of Allegheny Beverage Co.," *i.e.*, a separate legal entity.   *See id.*

Although Plaintiff claims that certain "nexus parties" were "sold and/or merged into Pepsi Co. and renamed to C&I Leasing," *see id.*, this argument fails for a host of reasons.   First, Plaintiff never identifies what the term "nexus parties" means.   Second, if they were "sold and/or merged into Pepsi Co.," this does not aid Plaintiff because Plaintiff concedes that C&I Leasing is a separate legal entity from Pepsi Co.   *Id.*   Third, C&I Leasing is left guessing what it means for a company to be "renamed to C&I Leasing."   But the Court need not dwell on this abstract concept, as none of these allegations are in the Complaint, and they, thus, cannot be considered.

## IV.   THE COMPLAINT FAILS BECAUSE IT DOES NOT CONTAIN FACTS SUPPORTING ARRANGER LIABILITY

C&I Leasing's Motion established that Plaintiff's conclusory contribution claim fails because its allegations are merely a threadbare recital of the elements for arranger liability.   *See* Dkt. 384-2 at 7-11.   Indeed, Plaintiff's allegation that C&I Leasing's purported predecessor entities "by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of waste containing hazardous substances at the 68th Street Site" is literally word-for-word identical to the language in CERCLA.   *Compare* Dkt. 1 ¶ 210, *with* 42 U.S.C. § 9607(a)(3).   Plaintiff's Opposition does not cite a single case that denied a motion to dismiss when faced with such boilerplate allegations.   *See* Opp. at 13-21.   Instead, Plaintiff merely copy-and-pastes block quotes from its Complaint, while ignoring C&I Leasing's motion to dismiss case law, thus again conceding its applicability.   As C&I Leasing's cases show,

instead of regurgitating the statutory language, a Complaint must plead (1) the defendant "entered into a transaction with the purpose of discarding a hazardous substance; and (2) "who decided to place the waste into the hands of a particular facility that (now) contains the hazardous waste.'" *Dixon Lumber Co. v. Austinville Limestone Co.*, No. 7:16-cv-130, 2017 WL 4933053, at *4 (W.D. Va. Oct. 31, 2017); *Allied Towing Corp. v. Great E. Petroleum Corp.*, 642 F. Supp. 1339, 1350 (E.D. Va. 1986). Plaintiff has not pled these requisites. Nor is it aided by its citation to *United States v. Alcan Aluminum Corp.*, 964 F.2d 252 (3d Cir. 1992) for the proposition that "there is no quantitative requirement in the definition of 'hazardous substances.'" *See* Opp. at 21. There, the court rejected the defendant's argument that substances are not "hazardous" if they are released at "below-ambient levels." *Alcan*, 964 F.2d at 259, 264. This point has nothing to do with any argument raised by C&I Leasing. Plaintiff's remaining contentions fair no better.

Plaintiff is incorrect that its Complaint adequately "alleges in detail that the 68th Street Site is a 'facility' as defined under CERCLA." *See* Opp. at 14. As C&I Leasing's Motion noted, "the Fourth Circuit has held that a CERCLA 'facility' is not an entire CERCLA site; rather, it is only the area 'where hazardous substances have come to be located.'" Dkt. 384-2 at 10 (quoting *Nurad, Inc. v. William E. Hooper & Sons Co.*, 966 F.2d 837, 842-43 (4th Cir. 1992)). Rather than citing any case law indicating that *Nurad* is bad law, Plaintiff curiously cites *Nurad* for the proposition that its Complaint need "not identify specific locations or amounts of hazardous waste." *See* Opp. at 20-21 (citing *Nurad*, 966 F.2d at 846). The portion of *Nurad* cited by Plaintiff, however, has nothing to do with its interpretation of CERCLA's "facility" definition. Rather, the portion Plaintiff cites concerns CERCLA's "disposal" definition. *See Nurard*, 966 F.2d at 846. There, the court held "that § 9607(a)(2) imposes liability not only for active involvement in the 'dumping' or 'placing' of hazardous waste at the facility, but for ownership of the facility at a time that

hazardous waste was 'spilling' or 'leaking.'" *Id.* The court then found that "a statutory disposal of hazardous waste occurred during the period of [the defendants'] ownership." *Id.* Nothing in this passage saves the Complaint for its failure to allege facts concerning the "facility" at which disposal purportedly occurred.

Also, the Court should reject Plaintiff's conclusory argument that its "Complaint alleges in detail that there has been a release or threatened release of hazardous substances." *See* Opp. at 15. Plaintiff fails to address the two cases cited by C&I Leasing that granted motions to dismiss due to conclusory "release or threatened release" allegations and, thus, concedes their applicability. *See Bryant v. Colonial Pipeline Co.*, 699 F. Supp. 546, 548-49 (W.D. Va. 1987); *Allied Towing*, 642 F. Supp. at 1350. Although Plaintiff has copy-and-pasted 1.5 pages of allegations from its Complaint purportedly containing the "detail" of the release, a review of these allegations shows this is anything but the case. *See* Opp. at 15-17. All these allegations show is that certain waste may have been disposed at the Site – which is what you would expect to occur at a landfill – and then, some of it was later removed. *See* Dkt. 1 ¶ 11 (alleging that "disposal of waste material continued until at least 1969"), *id.* ¶¶ 12, 19 (alleging "there was drum removal" and action was taken "to remove surface materials and containers"). None of this indicates that there was a "release," which is defined as, *inter alia*, the spilling, leaking, or dumping "into the environment." 42 U.S.C. § 9601(22). Plaintiff's use of the "buzz words" of "release or threatened release," without supporting facts, is not enough. *See Am. Alternative Ins. Co. v. Moon Nurseries, Inc.*, No. 11-cv-2267, 2012 WL 892620, at *8 (D. Md. Mar. 14, 2012) (granting motion to dismiss CERCLA claim because complaint was "replete with the use" of "'buzz words'" that constituted "'a mere formulaic recitation'" of CERCLA elements (quoting *Twombly*, 550 U.S. at 555)); *see also J & P Dickey Real Estate Family Ltd. P'ship v. Northrop Grumman Guidance & Elecs. Co.*, No. 2:11-

cv-37, 2012 WL 925015, at *5 (W.D.N.C. Mar. 19, 2012) ("Plaintiffs, however, must allege more than a formalistic recitation of the elements of a CERCLA claim to state a claim in federal court." (citing *Twombly*, 550 U.S. at 555)).[7]

Plaintiff's arranger liability claim is literally a word-for-word parroting of the claim's elements from CERCLA.[8]   If Plaintiff's claim does not fail under *Twombly-Iqbal*, then no complaint will ever fail this standard.

## V.     ALL CLAIMS CONCERNING MUNICIPAL SOLID WASTE WERE WAIVED IN THE RD/RA CONSENT DECREE

In its Motion, C&I Leasing demonstrated that Plaintiff's claims should be dismissed with prejudice because in the RD/RA Consent Decree, it was agreed "not to assert any claims and to waive all claims or causes of action . . . against any person where the person's liability to [signatories] with respect to the Site is based solely on having arranged for disposal or treatment, . . . of Municipal Solid Waste (MSW) at the Site . . . ." *See* Dkt. 384-2 at 11-12 (quoting RD/RA Consent Decree ¶ 106 (in record as Dkt. 384-3)).   In its Opposition, Plaintiff raises a host of arguments, some of which are self-defeating, others that have nothing to do with C&I Leasing's arguments.   But at the end of the day, none of Plaintiff's arguments show why its claims should not be dismissed with prejudice.

First, Plaintiff's contention that "the statutory MSW exemption does not apply" because C&I Leasing is purportedly not a small business, *see* Opp. at 25-26, is irrelevant because C&I

---

[7] Plaintiff spends over a page arguing that it "incurred response costs."  Opp. at 17-18.  C&I Leasing did not raise this issue in its Motion but reserves the right to challenge this point should this litigation ever proceed past the pleadings.

[8] Plaintiff's Complaint alleges that C&I Leasing's purported predecessors "by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of waste containing hazardous substances."  Dkt. 1 ¶ 210.  This is identical to CERCLA's language imposing liability on "any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances."  42 U.S.C. § 9607(a)(3).

Leasing did not base its argument on this provision.  Rather, C&I Leasing argued that Paragraph 106 of the RD/RA Consent Decree barred Plaintiff's claims.  *See* Dkt. 384-2 at 11-13.  Curiously, Plaintiff draws the Court's attention to an EPA Interim Guidance on MSW.  *See* Opp. at 27-28.  Yet, this guidance completely undercuts Plaintiff's argument because it clarifies that the waiver language in consent decrees releases claims against entities that "do not fall within the scope of the MSW exemption."  *See* EPA, *Interim Guidance on the Municipal Solid Waste Exemption Under CERCLA § 107(p)* at 11 (Aug. 20, 2003), *available at* https://www.epa.gov/sites/production/files/documents/interim-msw-exempt.pdf  ("Therefore, a waiver regarding these parties generally should continue to be required in RD/RA consent decrees and other types of agreements at NPL sites which received MSW.").

Second, although Plaintiff admits that the RD/RA Consent Decree is a contract, it is incorrect that C&I Leasing lacks standing to enforce the MSW waiver.  *See* Opp. at 25.  Plaintiff claims the C&I Leasing is not a third-party beneficiary of the RD/RA Consent Decree, but – like the allegations in its Complaint – this assertion is wholly conclusory, as Plaintiff performs no analysis of the third-party beneficiary issue.  C&I Leasing easily fits within the rubric for third-party beneficiary status, which allows non-parties to a contract to enforce contractual provisions that were intended for the non-parties' benefit.  *Shillman v. Hobstetter*, 249 Md. 678, 687 (1968) (finding non-party was a third-party beneficiary because parties to contract intended that it was for his benefit).  "In determining the intention of the parties, the language of the instrument is the primary source for that determination."  *Id.* at 688 (citation omitted).  Importantly, the contract need not identify a third-party beneficiary by name, as long as it "clearly identifies the class of persons" it was meant to benefit.  *See id.* at 689.  Paragraph 106 of the RD/RA Consent Decree clearly identifies a "class of persons" the waiver was meant to benefit: entities that may have

-11-

"arranged for disposal or treatment, . . . of Municipal Solid Waste (MSW) at the Site."  Assuming, *arguendo*, that C&I Leasing arranged for disposal of MSW, it can enforce this waiver because "a third party beneficiary takes subject to the same defenses against the enforcement of the contract, as such, as exist between the original promisor and promisee."  *Id.* at 690.  Indeed, can it seriously be questioned that this waiver was meant to benefit third parties, as it certainly does not benefit EPA or Plaintiff.  This waiver was meant to benefit third parties like C&I Leasing, and it can enforce the waiver.

Third, Plaintiff's reliance on purported "waste disposal tickets" and "driver tickets," *see* Opp. at 27 & Ex. A, is inappropriate because, as discussed above, Plaintiff cannot introduce extrinsic documents through its Opposition.  *See supra* p. 6 (citing cases).  Nor can Plaintiff rely on them because they are purportedly "referenced in the Complaint."  *See* Opp. at 26 n.13.  The Complaint contains only eleven paragraphs concerning C&I Leasing, none of which reference "waste disposal tickets" or "driver tickets."  *See* Dkt. 1 ¶¶ 210-20.  Nor are these documents "integral" to the Complaint because as Plaintiff's own case law recognizes, to be integral, "a document must be one that by its very existence, *and not the mere information it contains*, gives rise to the legal rights asserted."  *See* Opp. at 26 n.13 (quoting *Chesapeake Bay Found., Inc. v. Severstal Sparrow Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)).  Plaintiff appears to rely on these documents due to the information they contain, not because they give rise to its legal rights.  Nor does Plaintiff rely "heavily upon [their] terms and effect."  *Id.* (quoting *Palin v. N.Y. Times Co.*, 940 F.3d 804, 811 (2d Cir. 2019) (acknowledging that "integral" documents are typically contracts or agreements).  Regardless, these documents do not save Plaintiff because – at best – they show that the purported predecessor Pepsi Entities contracted with a waste hauler to

dispose of "trash." *See* Dkt. 529-1 at 3.  Nothing in these records show that hazardous substances were (1) collected from the Pepsi Entities; or (2) disposed of at the Site.

Fourth, Plaintiff's reliance on Paragraph 107 of the RD/RA Consent Decree does not salvage its claims.  *See* Opp. at 28-29.  That provision provides that the MSW waiver does not apply "if EPA determines that the MSW contributed significantly or could contribute significantly, either individually or in the aggregate, to the cost of the response action or natural resource restoration at the Site."  Plaintiff's argument that the "Site accepted a significant amount of MSW waste [*sic*], which has 'contributed significantly' to the response cost," does not avail it of Paragraph 107's qualification because Plaintiff's argument conflates the total amount of MSW at the Site with the MSW that C&I Leasing purportedly disposed of.  *See* Opp. at 29.  Nor should Plaintiff be allowed to amend its Complaint through its Opposition to assert that "the waste attributed to C&I Leasing has 'contributed significantly' to the response costs, as it is among the top PRPs by volume," especially when it provides no explanation as to how it belatedly reached this conclusion.  *See id.*[9] For these reasons, even if Plaintiff could plead an arranger liability claim, its Complaint should still be dismissed with prejudice because all claims concerning MSW were waived.

## VI.   PLAINTIFF CANNOT PURSUE DECLARATORY RELIEF THROUGH THE DECLARATORY JUDGMENT ACT, AND ITS REQUEST FOR CERCLA DECLARATORY RELIEF OTHERWISE FAILS

It takes some serious chutzpah for Plaintiff – who filed an overlength brief, argued points that C&I Leasing never raised, and introduced a host of new facts – to claim that C&I Leasing's

---

[9] The Opposition advances two irrelevant arguments that were not raised in C&I Leasing's Motion. Whether the MSW waiver applies to NRD is irrelevant because this is a contribution, not natural resource damages, action.  *See* Opp. at 27-28.  Further, although C&I Leasing reserves its right to rely on Paragraph 108 of the RD/RA Consent Decree concerning *de micromis* parties, it did not raise this issue in its Motion and does not know why the Opposition addresses it.  *See id.* at 28.

declaratory relief argument is "disjointed" and "unclear." *See* Opp. at 30. C&I Leasing's three-sentence argument, supported by case law from this district and three other circuits, is simply that when a CERCLA Plaintiff's contribution claim fails, its declaratory relief claim fails as well. *See* Dkt. 384-2 at 13 (citing cases). Likely recognizing the weakness of its CERCLA contribution claim, Plaintiff argues that it can, in the alternative, seek declaratory relief under the Declaratory Judgments Act ("DJA"). *See* Opp. at 30. Plaintiff's argument fails because CERCLA claimants are limited to seeking declaratory relief through CERCLA. *See City of Colton v. Am. Promotional Events, Inc.-West*, 614 F.3d 998, 1007 (9th Cir. 2010) (holdings that CERCLA plaintiffs cannot pursue declaratory relief under DJA because "'a precisely drawn, detailed statute pre-empts more general remedies'" (quoting *Hinck v. United States*, 550 U.S. 501, 506 (2007))); *A. Shapiro & Sons, Inc. v. Rutland Waste & Metal Co.*, 76 F. Supp. 2d 82, 88 (D. Mass. 1999) (CERCLA plaintiff could not seek declaratory relief under DJA because "the court is not inclined to permit an indirect approach to declaratory relief when the direct CERCLA-based approach, for the reasons described, is unavailable")). Nothing in Plaintiff's *PCS Nitrogen, Inc. v. Ross Development Corp.*, 104 F. Supp. 3d 729 (D.S.C. 2015) is to the contrary. There, the court noted that the plaintiff sought CERCLA contribution, CERCLA declaratory relief, and DJA declaratory relief. *Id.* at 733. The court never again referenced the DJA claim and held that the plaintiff could seek CERCLA declaratory relief because its contribution claim survived a motion to dismiss. *Id.* at 743-44.

Plaintiff cannot pursue relief under the DJA, and nothing in its case law contradicts C&I Leasing's authorities which held that a CERCLA declaratory relief claim fails when the underlying contribution claim fails. *Sherwin-Williams Co. v. Artra Group* stands for the unremarkable proposition that a plaintiff can obtain CERCLA declaratory relief *when it has a valid contribution*

*claim*. 125 F. Supp. 2d 739, 754 (D. Md. 2001). Plaintiff's case law is distinguishable because its contribution claim fails as a matter of law, and it, thus, is not entitled to declaratory relief.

## VII.   PLAINTIFF IS NOT ENTITLED TO DISCOVERY, AND DISMISSAL SHOULD BE WITH PREJUDICE

Nothing says "fishing expedition" like a 2.5-page section at the end of a brief asking the Court "for discovery on the issue of successor liability and the precise nature of the waste attributed to C&I Leasing and its contractual arrangement for disposal." *See* Opp. at 31. By asking for discovery that goes to the very merits of arranger liability, Plaintiff ignores that the federal pleading standard "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 682, 678 (2009). The federal rules serve "to prevent costly discovery on claims with no underlying factual or legal basis. 'Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition.'" *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 326 (4th Cir. 2001) (quoting *DM Research v. Coll. of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999)). The *Twombly/Iqbal* standard is especially important "'to prevent settlement extortion—using discovery to impose asymmetric costs on defendants in order to force a settlement advantageous to the plaintiff regardless of the merits of his suit.'" *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013) (quoting *Am. Bank v. City of Menasha*, 627 F.3d 261, 266 (7th Cir. 2010)). Plaintiff's boasting of its settlement with 79/158 defendants, *see* Opp. at 1, is indicative of this settlement extortion that the Rules were meant to prevent. In the absence of well-pled facts, its conclusory allegations do not entitle Plaintiff to discovery.

In addition to denying discovery, the Court should dismiss the Complaint with prejudice for two reasons. First, leave to amend is not warranted because any amendment would be futile. *In re Triangle Capital Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021) ("But in recent years,

we have made clear that district courts are free to deny leave to amend as futile if the complaint

fails to withstand Rule 12(b)(6) scrutiny." (citation omitted)).   As discussed above, Plaintiff's

introduction of new "facts" in an opposition brief is inappropriate.  *See supra* p. 6.   However, even

if Plaintiff put these new facts in an amended complaint, it would still fail to withstand Rule

12(b)(6) scrutiny because Plaintiff cannot plausibly allege the requirements for arranger liability.

Second, even if Plaintiff could plead arranger liability, the RD/RA Consent Decree would still bar

its claims against C&I Leasing for MSW.

## VIII.   <u>CONCLUSION</u>

For these reasons, Defendant C&I Leasing respectfully requests that the Court grant its

motion to dismiss.   Although dismissal for failure to state a claim is normally without prejudice,

here dismissal should be with prejudice because any amendment would be futile.   Plaintiff's

opposition introduced a host of new facts.   But even if these new facts were pled in an amended

complaint, they still would not plausibly entitle Plaintiff to relief.   Moreover, in the RD/RA

Consent Decree, all claims concerning Municipal Solid Waste were waived.

Dated: April 22, 2021                    Respectfully submitted,


                                         <u>*/s/ Stephen E. Fitzgerald*</u>
                                         Stephen E. Fitzgerald
                                         Morgan, Lewis & Bockius LLP
                                         1717 Main Street, Suite 3200
                                         Dallas, TX 75201
                                         Telephone: 214.466.400
                                         Fax: 214.466.4001
                                         stephen.fitzgerald@morganlewis.com

                                         Jason R. Scherr
                                         Morgan, Lewis & Bockius LLP
                                         1111 Pennsylvania Ave., NW
                                         Washington, DC 20004
                                         Telephone: 202.739.3000

Fax: 202.739.3001
jr.scherr@morganlewis.com
*Attorneys for Defendant C&I Leasing, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of April 2021, I served C&I Leasing's Reply Memorandum of Law in Support of Motion by filing the same via ECF to distribute to all counsel of record.

*/s/ Stephen E. Fitzgerald*
Stephen E. Fitzgerald