IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| **68TH STREET SITE WORK GROUP,** | * |
| **Plaintiff,** | * |
| v. | * Case No. 1:20-cv-03385-SAG |
| **AIRGAS, INC.,** *et al.*, | * |
| **Defendants.** | * |

* * * * * * * * * * * * *

## MEMORANDUM OPINION

Plaintiff 68th Street Site Work Group ("Plaintiff") filed a Complaint, pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601–75, against more than 150 defendants, seeking recovery of and contribution for an alleged $4.8 million in costs incurred as a result of response activities undertaken at the 68th Street Dump Superfund Alternative Site ("68th Street Site" or "Site"), as well as a declaration of each Defendants' liability for any future response costs incurred by Plaintiff at the Site. ECF 1. Defendants Airgas, Inc. ("Airgas"); Drug City Pharmacy, LLC ("Drug City"); and Melibelle USA, Inc. ("Melibelle") failed to respond timely to Plaintiff's Complaint.

On May 7, 2021, Plaintiff filed for a Clerk's Entry of Default against Airgas (ECF 627), Drug City (ECF 631), and Melibelle (ECF 633). On May 14, 2021, the Clerk entered defaults against, and sent Notices of Default to, respectively, Airgas (ECF 662, 663), Drug City (ECF 651, 652), and Melibelle (ECF 655, 656), indicating that Defendants had thirty days to file motions to vacate the defaults. On June 14, 2021, Defendants filed their respective Motions to Vacate the Clerk's Entry of Default, ECF 722 through ECF 724. Plaintiff has since filed oppositions, ECF 731 through ECF 733, to the respective motions, and Defendants have filed their respective replies,

1

ECF 743 through 745.  No hearing is deemed necessary.  *See* Loc. R. 105.6 (D. Md. 2018).  For the reasons that follow, Defendants' Motions to Vacate Entry of Default will be granted.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff is an unincorporated association of twelve business entities (AAI Corporation; Acme Markets Inc.; AK Steel Corporation; Browning-Ferris, Inc.; Black & Decker (U.S.) Inc.; Brunswick Corporation; ConAgra Grocery Products Company, LLC; Crown Cork & Seal Company, Inc.; CSX Realty Development, LLC; CSX Transportation, Inc.; Exxon Mobil Corporation; and Illinois Tool Works, Inc., on behalf of Signode and Vulcan-Hart) who are signatories to a November 28, 2017 Consent Decree for Remedial Design/Remedial Action at the 68th Street Site.  ECF 1 ¶¶ 22, 27-29.  By letters dated August 28, 2020, Plaintiff demanded that Defendants, including the three at issue here, "reimburse Plaintiff for a specified amount of response costs incurred and to be incurred by Plaintiff at the 68th Street Site."  ECF 1 ¶¶ 64, 355, 756.  Plaintiff then filed a Complaint against those Defendants who did not make the requested reimbursement.  ECF 1.

   A.  **Airgas, Inc.**

Plaintiff, in its Complaint filed on November 20, 2020, alleged that Defendant Airgas, Inc. is the successor to Arundel Corporation, Arundel Sales & Service, and Mr. R.B. Cooke, by the merger of Arundel Sales & Service into Potomac Airgas, Inc., which Plaintiff alleges is a subsidiary of Airgas.  ECF 1 ¶¶ 59-61.  Plaintiff alleged that the purported predecessor entities were engaged in the business of "gas distribution," and that these entities arranged for disposal of hazardous substances contained in their "transportation waste and general office waste."  ECF 1 ¶¶ 58, 62-63.

On January 4, 2021, Plaintiff delivered a waiver package renewing its pre-litigation settlement offer and including a copy of the file-stamped Complaint, Notice of Lawsuit, Request to Waive Service of Summons, and self-addressed stamped envelope, to Airgas at its headquarters at 259 North Radnor-Chester Rd., Suite 100, Wayne, PA 19087. ECF 731 at 3. In a January 8, 2021 email, Mary C. Doherty, Associate General Counsel for Airgas, acknowledged receipt of the waiver package and expressed willingness to waive service. ECF 731-3; *see also* ECF 724-2 (Affidavit of Mary C. Doherty), ¶ 6 ("Airgas initially learned of the Complaint and e-mailed Plaintiff regarding its settlement proposal and the possibility of formalizing service of process."). However, Airgas never executed a waiver of service and Plaintiff received no further communication. ECF 731 at 3.

On February 12, 2021, Plaintiff effected service upon Jane Woods, identified by Plaintiff's Affidavit of Process Server as an "Executive Assistant & Authorized Agent of Airgas," on February 12, 2021. ECF 237. As described above, Airgas failed to file a timely answer.

**B. Drug City Pharmacy, LLC**

Plaintiff, in its Complaint filed on November 20, 2020, alleged that Defendant Drug City Pharmacy, LLC is "the successor to and/or formerly known as Drug City Pharmacy." ECF 1 ¶ 351. Plaintiff alleged that the purported predecessor entity was engaged in the business of "pharmacy services," and that this entity arranged for disposal of hazardous substances "associated with pharmacy services," as well as those contained in its "retail waste and general office waste." ECF 1 ¶¶ 350, 353-54.

On January 21, 2021, Plaintiff delivered a waiver package renewing its pre-litigation settlement offer and including a copy of the file-stamped Complaint, Notice of Lawsuit, Request

to Waive Service of Summons, and self-addressed stamped envelope, to Drug City at its headquarters at 2805 N. Point Rd., Baltimore, MD 21222-2413. ECF 732 at 3.

When no response was received, Plaintiff effected service, addressed to George Fotis, Owner of Drug City, upon Marlene Anderson, identified by Plaintiff's Affidavit of Process Server as an "Authorized Agent of Drug City Pharmacy, LLC," at Drug City's headquarters on February 16, 2021. ECF 269. The same day, and the following day, Mr. Fotis called Plaintiff's counsel about the summons. On February 17, 2021, he sent an email to Plaintiff's counsel with an asset purchase agreement attached, and asked if anything else was needed in order for Drug City to be removed from the suit. ECF 732-3. On March 8, 2021, Plaintiff's counsel notified Drug City by email that it intended to continue pursuing its claim. ECF 732 at 5. As described above, Drug City failed to file a timely answer.

### C. Melibelle USA, Inc.

Plaintiff, in its Complaint filed on November 20, 2020, alleged that Defendant Melibelle USA, Inc. is the successor to David Fulton and Plantabbs Corp. ECF 1 ¶ 750. Plaintiff alleged that the purported predecessor entities were engaged in the business of "fertilizer production," and that these entities arranged for disposal of hazardous substances "associated with fertilizer production waste," as well as those contained in their "general office waste." ECF 1 ¶¶ 749, 753-54.

On January 21, 2021, Plaintiff sent a waiver package, renewing its pre-litigation settlement offer and including a copy of the file-stamped Complaint, Notice of Lawsuit, Request to Waive Service of Summons, and self-addressed stamped envelope, to Melibelle at its headquarters at 8839 Kelso Dr., Suite H, Baltimore, MD 21221. ECF 733 at 3. When no response was received, Plaintiff effected service upon W. Wayne Davis, Jr., identified by Plaintiff's Affidavit of Process

Server as a "President and Authorized Agent of Melibelle USA, LLC," at Melibelle's headquarters on February 9, 2021. ECF 274. On March 2, 2021, Mr. Davis called and sent a follow-up email to Plaintiff's local counsel, Stuart Kaplow. ECF 733-3. The same day, Plaintiff's counsel, Matthew Merryman, left a voicemail for Mr. Davis, but Plaintiff received no further correspondence from Mr. Davis or Melibelle. ECF 733 at 4. As described above, Defendant failed to file a timely answer.

## II.     LEGAL STANDARD FOR SETTING ASIDE THE CLERK'S ENTRY OF DEFAULT

After the Clerk enters default, the Court "may set aside an entry of default for good cause." Fed. R. C. P. 55(c). The Fourth Circuit has stated that, when compared to the standard under Rule 60(b), the "good cause" standard in Rule 55(c) "is more forgiving of defaulting parties because it does not implicate any interest in finality." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 420 (4th Cir. 2010); *see also Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967) ("Generally a default should be set aside where the moving party acts with reasonable promptness and alleges a meritorious defense."). Indeed, the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton*, 616 F.3d at 417. Thus, motions to set aside default "must be 'liberally construed in order to provide relief from the onerous consequences of defaults and default judgments.'" *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 954 (4th Cir. 1987) (quoting *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969)). Because the Clerk has made an entry of default against Defendant, but a default judgment has not been issued, Defendant's motion to vacate is correctly considered pursuant to the more lenient standard of Rule 55(c), rather than Rule 60(b).

Six factors are relevant to the analysis of this motion: (1) "whether the moving party has a meritorious defense," (2) "whether it acts with reasonable promptness," (3) "the personal responsibility of the defaulting party," (4) "the prejudice to the party," (5) "whether there is a history of dilatory action," and (6) "the availability of sanctions less drastic." *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204-05 (4th Cir. 2006). The decision to set aside a default "lies largely within the discretion of the trial judge." *Id.* at 204.

### III. ANALYSIS

Having established the relevant factors for determining whether to set aside an entry of default, the Court will address each factor in turn.

#### A. Presence of Meritorious Defense

"A meritorious defense requires a proffer of evidence which would permit a finding for the defaulting party or which would establish a valid counterclaim." *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988); *see also United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) ("[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party."). "The underlying concern is . . . whether there is some possibility that the outcome . . . after a full trial will be contrary to the result achieved by the default." *Augusta Fiberglass*, 843 F.2d at 812.

First, both Defendants Airgas and Drug City allege improper service of process under Rule 4(c). Namely, they contest whether Ms. Jane Woods (whom Airgas maintains is an administrative assistant) and Ms. Marlene Andersen (whom Drug City maintains is a store manager) were, in fact, authorized agents of their respective companies.

Similarly, Defendants Drug City and Melibelle state that they were "unaware that this action was commenced and existed" before the Entries of Default, and that they "did not learn of the action as a result of service of process." ECF 722 ¶ 8; ECF 723 ¶ 7. However, as conceded by both parties, this may speak more to Defendants' officers' purported lack of understanding of the judicial process than to the sufficiency of service. *See* ECF 744 at ¶ 4 ("Mr. Fotis . . . did not understand that further response in court was required of him. Mr. Fotis is not a lawyer . . ."); ECF 745 ¶ 4 ("Mr. Davis was confused about the procedural posture of this matter.").

Even assuming *arguendo* that Defendants were properly served, though, they offer various other meritorious defenses in support of their proposed motions to dismiss (ECF 722-3, ECF 723-3, and ECF 724-3) as well as through their proposed joinder of the Motion to Dismiss submitted by Certain Defendants (ECF 448). The specific defenses raised by each Defendant are outlined below.

### 1. Airgas

In its attached memorandum (ECF 724-3), by which it seeks to supplement its proposed joinder of ECF 448, Airgas argues that Plaintiff's Complaint should be dismissed because (1) Plaintiff has failed to adequately allege that Airgas is liable as a corporate parent for the acts of its alleged subsidiary, Potomac Airgas, Inc., by either of the two bases for finding such liability that were articulated in *United States v. Bestfoods*, 524 U.S. 51, 61-64 (1998); and (2) even if Plaintiff were to sufficiently allege Airgas's liability for its subsidiary, any waste it may have contributed qualifies as *de micromis* or municipal solid waste contributions, for which Plaintiff waived its claims under the terms of the Consent Decree.[1]

---

[1] Airgas does not raise issues of successor liability which could affect Potomac Airgas's liability in the first instance for actions allegedly taken by Arundel Corporation, Arundel Sales & Service, or R.B. Cooke. Thus, this Court will not address those questions.

7

**2. Drug City**

Similarly, in its attached memorandum (ECF 722-3), by which it seeks to supplement its proposed joinder of ECF 448, Drug City argues that Plaintiff's Complaint should be dismissed because (1) Plaintiff has failed to adequately allege that it is liable as a successor to its alleged predecessor, Drug City Pharmacy, and that, in fact, publicly available corporate records documenting the Articles of Sale and Transfer between the two entities show that Drug City did not assume its alleged predecessor's liabilities in the agreement; and (2) even if Plaintiff had adequately alleged successor liability, any waste that Drug City's alleged predecessor may have contributed to the 68th Street Site qualifies as *de micromis* or municipal solid waste contributions, for which Plaintiff waived its claims under the terms of the Consent Decree.

**3. Melibelle**

Likewise, in its attached memorandum (ECF 723-3), by which it seeks to supplement its proposed joinder of ECF 448, Melibelle argues that Plaintiff's Complaint should be dismissed because (1) Plaintiff has failed to state a claim for successor liability to hold Melibelle liable for the alleged waste streams of Plantabbs Corporations (which Melibelle states is a trade name, not a corporate entity) or David Fulton[2]; and, as raised by the other Defendants, (2) even if Plaintiff had adequately alleged successor liability, any waste that Melibelle's alleged predecessor may have contributed to the 68th Street Site qualifies as *de micromis* or municipal solid waste contributions, for which Plaintiff waived its claims under the terms of the Consent Decree.  Alternatively, if the entry of default is vacated, Melibelle plans to seek summary judgment against Plaintiff, because, as stated in an affidavit by its President, W.Wayne Davis, Melibelle has never employed more than

---

[2] David Fulton appears to be an individual.  This Court is aware of no basis for finding a corporation to be a successor to a real person.

8

100 full-time employees, and is therefore excluded by CERCLA's municipal solid waste exception, Section 107(p).

All three defendants proffer some evidence to prove the merits of their defense alleging Plaintiff's failure to state a claim for successor or corporate parent liability. Defendants do not put forward much specific factual evidence to support their defense that they fall within the exemptions and waivers expressed in CERCLA and the Consent Decree. However, the omission illustrates the point: such evidence – volumetric information of alleged predecessors' waste streams, and their contents, from more than fifty years ago – will be difficult if not impossible to ascertain, and, in fact, that difficulty likely accounts for the scant and repetitive nature of Plaintiff's allegations against all Defendants in this case. The Fourth Circuit made clear in *Augusta Fiberglass* that cases with some possibility of a defendant's prevailing at trial should proceed to adjudication on the merits. *See* 843 F.2d at 812. It is certainly the case here that Defendants have presented meritorious defenses that raise the possibility of their success, and, thus, weigh in favor of vacating the defaults.

### B. Acting with Reasonable Promptness

Courts must consider the specific "facts and circumstances of each occasion" when determining whether a defendant acted in a reasonably prompt manner when moving to set aside a default judgment. *Prescott v. MorGreen Solar Solutions, LLC*, 352 F. Supp. 3d 529, 537 (E.D.N.C. 2018) (quoting *U.S. v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982)). Here, Defendants filed their respective Motions to Vacate Entry of Default by June 14, 2021, meeting the thirty-day deadline set by the Court upon the entry of default on May 14, 2021. Thus, Defendants did respond promptly with regards to the Entries of Default. Within the circumstances of the case as a whole, Defendants' promptness of action is more questionable. All three Defendants, after engaging in

initial correspondence with Plaintiff's counsel in the early months (January through March) of 2021, ceased that communication, leading to the Entries of Default. However, because Defendants did file their motions within the thirty-day deadline, it would be inappropriate to find that this factor clearly weighs in favor of the Plaintiff. For purposes of this Court's six-factor evaluation, this factor may be fairly considered a draw.

### C.  Personal Responsibility for the Default

There is no compelling evidence that Defendants' delay was a deliberate attempt to disregard or frustrate the legal process, as opposed to the consequence of flawed understanding of its requirements. However, the Fourth Circuit has held that a defendant "cannot escape the consequences of his own negligence by claiming ignorance of the law of service of process." *S.C. Nat'l Bank v. Baker*, 941 F.2d 1207, 1991 WL 157277, at *3 (4th Cir. Aug. 19, 1991) (table decision). Defendant Melibelle does not argue that it was not properly served, it merely states that it does not recall being served, which it acknowledges is no excuse. ECF 723 ¶ 17. Defendants Drug City and Airgas each argue that there were some deficiencies in service of process; however, Drug City, in its Reply (ECF 744 ¶ 3), states that the improper service it alleges should be an "additional factor" for consideration in the Court's analysis, but "does not ask, at this particular time, for the Court to rule definitively on the quality of service[,]" and Airgas does not dispute that it was aware of the litigation and had some communication with the Plaintiff prior to default being entered (ECF 724 ¶ 11 ("Despite issues with service of process, Airgas initially learned of the Complaint and e-mailed Plaintiff . . .")). Airgas also argues that it is not responsible for the default because COVID restrictions meant that most of its employees were (and continue to be) working from home, which led to complications in documenting the service papers and bringing them to the attention of appropriate employees. ECF 724 ¶ 23. This Court is sympathetic to Defendant

Airgas's challenge of navigating the unique circumstances of the pandemic; however, those circumstances do not completely absolve it of its responsibility for the default. Ultimately, this factor weighs in favor of the Plaintiff with respect to each of the Defendants.

### D. Prejudice

Plaintiff makes no mention of the possibility of its suffering prejudice as a result of vacating the defaults, likely because it does not stand to suffer any. As argued by Defendants, none of the preliminary motions to dismiss already filed by other defendants in this matter have been adjudicated on their merits to date. Vacating the entries of default, allowing Defendants to move to dismiss the complaint, and adjudicating the case on its merits would not constitute undue prejudice to Plaintiff. *See Augusta Fiberglass*, 843 F.2d 808, 812 (4th Cir. 1988) ("As to prejudice, we perceive no disadvantage to Augusta beyond that suffered by any party which loses a quick victory.").

In addition, Defendants Airgas, Drug City, and Melibelle each state that their counsel contacted Plaintiff's counsel to request their consent to have the Entry of Default vacated, but were told that Plaintiff's counsel would only consent on the condition that Defendants only file answers and waive their right to file preliminary motions, which Plaintiff knew Defendants intended to do. Thus, Defendants argue, Plaintiff itself contributed to any delay that it experienced. *See, e.g.*, ECF 724 ¶¶ 14-15; ECF 731 at 1-2.

With no evidence to suggest and, in fact, no contention by Plaintiff that it would be prejudiced by vacating the entries of default, this factor weighs in favor of Defendants.

### E. History of Dilatory Action

As their respective Motions to Vacate Entry of Default constitute their "first act[s] in the matter" (*See, e.g.* ECF 722 at 6), and those motions, as discussed, were filed within the thirty-day

11

deadline set by this Court upon the Entries of Default, Defendants have not demonstrated a history of dilatory action. This factor weighs in favor of Defendants.

### F. Availability of Less Drastic Sanctions

"[W]hen a default judgment is vacated the trial court may nonetheless impose other sanctions against the offending attorney, such as awarding the non-movant's costs and attorney's fees." *Augusta*, 843 F.2d at 811. There are less drastic sanctions available in this case, such as requiring Defendant to pay Plaintiff's costs, expenses, and attorney's fees related to Plaintiff's formal service of process (as a result of Defendants' failure to execute waivers of service) and its need to seek Default, and Plaintiff has indicated it has sought such reimbursement. Such reimbursement may be appropriate, depending on the reasonableness of the amounts sought, and is preferable to an entry of default judgment. Thus, this factor weighs in favor of the Defendants.

## IV. CONCLUSION

Upon review of the six *Payne* factors, this Court finds that just one factor clearly weighs in favor of Plaintiff: the personal responsibility of the defaulting party. One factor weighs evenly for both parties: the question of reasonable promptness of action. The remaining four factors weigh in favor of Defendants: whether the moving party has a meritorious defense, prejudice to the plaintiff, whether there is a history of dilatory action, and the availability of less drastic sanctions. In light of the factors favoring Defendant, the "time-worn commitment to the resolution of disputes on their merits," and the long-held view that a motion to set aside default "must be 'liberally construed in order to provide relief from the onerous consequences of defaults and default judgments,'" this case is best resolved on its merits. *Colleton*, 616 F.3d at 420–21 (quoting *Tolson*, 411 F.2d at 130).

Accordingly, Defendants' Motions to Vacate the Clerk's Entry of Default, ECF 724 (Airgas), ECF 723 (Drug City), and ECF 722 (Melibelle), will be **GRANTED**. Defendants will be required to respond to the Complaint within thirty days, although based upon the attachments to their motions it appears they will be able to respond more expeditiously.

However, Plaintiff will be permitted to file a motion seeking reasonable costs, expenses, and attorney's fees incurred in formal service of process and its seeking default against Defendants. The motion should not include any fees or costs associated with opposing the instant motions to vacate the defaults. Any such motion should be filed on or before August 5, 2021. Defendants will then have until August 19, 2021 to file any opposition to the amount requested. A separate Order follows.

Dated: July 21, 2021                                /s/
                                                                Stephanie A. Gallagher
                                                                United States District Judge