**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| 68th STREET SITE WORK GROUP,         * <br>                             Plaintiff,            * <br> v.                                              * <br> AIRGAS, INC., et al.,                    * <br>                          Defendants.        * | Civil Case No.: SAG-20-3385 |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Presently pending before this Court is a motion for summary judgment, filed by Defendant Schumacher & Seiler, Inc. ("Defendant" or "S&S"). ECF 515. Plaintiff 68th Street Site Work Group ("Plaintiff") filed its opposition. ECF 548. Defendant then filed its reply. ECF 597. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons set forth below, Defendant's motion will be granted.

**I.    Factual Background**

The 68th Street Dump Superfund Alternative Site ("68th Street Site" or "the Site") is an aggregation of seven landfills in the Rosedale area of Baltimore County and the City of Baltimore, that hosted waste disposal activities of municipal, industrial, and commercial waste containing hazardous substances between the 1950s and early 1970s. ECF 1 ¶¶ 4, 6. The United States Environmental Protection Agency ("EPA") and the State of Maryland commenced emergency response and removal actions at the Site in the 1980s. ECF 1 ¶ 12. Beginning in 1999, EPA issued General Notice Letters to various potentially responsible parties ("PRPs"). ECF 1 ¶ 13. After completion of multiple rounds of study and EPA's issuance of a final Record of Decision for remedial actions at the Site, this Court, in November 2017, entered a Consent Decree for Remedial

Design/Remedial Action ("Consent Decree") between EPA and the State of Maryland, on the one hand, and a group of "Settling Defendants" on the other.  ECF 1 ¶ 16-22.

Plaintiff 68th Street Site Work Group, an unincorporated association of entities who were "Settling Defendants" and signatories to the Consent Decree, brought this lawsuit pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9601 *et seq.* ("CERCLA"), seeking contribution from more than 150 Defendants for response costs incurred in connection with activities and payments required by the Consent Decree to address the release and/or threatened release of hazardous substances at the Site.  ECF 1 ¶¶ 1, 24.  The majority of those Defendants have been dismissed, whether voluntarily by Plaintiff, or by this Court's adjudication of motions.  *See, e.g.*, ECF 786 (dismissing claims against twenty-nine defendants without prejudice and granting summary judgment for two defendants).  Plaintiff's allegations against Defendant S&S, specifically, remain pending and are laid out, in relevant part, below:

> 974. According to 68th Street Site records, Defendant Schumacher & Seiler, Inc. ("Schumacher & Seiler") by contract, agreement or otherwise, arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment of waste containing hazardous substances at the 68th Street Site.
>
> 975. Schumacher & Seiler is and/or was engaged in the business of wholesale and service of plumbing, heating, ventilation and air conditioning equipment.
>
> 976. Schumacher & Seiler's waste streams consisted of maintenance waste, metal finishing waste, building construction waste and general office waste, which contained the following hazardous substances: acetone, benzene, cadmium, chromium, copper, dichloroethylene, ethyl benzene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, silver, tin, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylene, and zinc.

ECF 1 ¶¶ 974-76.

While Plaintiff, in its response to Defendant S&S's Motion for Summary Judgment, challenges many of the additional "Undisputed Facts" that S&S proffers, Plaintiff does not dispute that S&S filed for Chapter 11 bankruptcy protection "on or about June 26, 1992," and that an

2

"Order Confirming the Amended Chapter 11 Plan was entered on December 17, 1992." ECF 515-1 at 3 ¶¶ 4, 5.[1]  Neither does Plaintiff dispute the fact that "Pursuant to the provisions of the Plan, § 1141(d) of the United States Bankruptcy Code, and the discharge and release incorporated into the Confirmation Order, [S&S] has been granted a discharge . . . and has been released from any obligations that arose before the Effective Date." ECF 515-1 at 3 ¶¶ 6, 7.[2]

## II.     Legal Standard for Rule 56 Motion for Summary Judgment

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden of showing that there is no genuine dispute of material fact. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)).  If the moving party establishes that there is no evidence to support an element of the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.*  The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)).  The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)).  Moreover, a genuine issue of material fact cannot rest on "mere

---

[1] Plaintiff does dispute portions of paragraph 5 regarding the timing of the bankruptcy plan's effective date under the Confirmation Order, but does not dispute the fact of the Order's entry on December 17, 1992. ECF 548 at 4.

[2] The parties dispute the date upon which S&S came into existence.  Defendant asserts it was formed in 1978 (ECF 515-1 at 3 ¶ 3), and Plaintiff alleges S&S formed in 1932, and merely changed its name in 1978 (ECF 548 at 3).  The Court need not reach this dispute, as it does not bear on the ultimate adjudication of the motion.

speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010)). In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

### III.    Analysis

In its motion, Defendant S&S argues that as a result of its bankruptcy – filed and confirmed in 1992, with a Final Decree being issued in May 1996 – any CERCLA claims serving as the basis for Plaintiff's contribution claim were discharged, and S&S is not liable. ECF 515.

Plaintiff, in its response, argues that Plaintiff itself did not begin incurring response costs until 2006, more than a decade after S&S's bankruptcy, and thus its claim could not have been discharged by the bankruptcy.[3] ECF 548 at 7. However, because Plaintiff's claim is one for

---

[3] Plaintiff alternatively argues that, even if it had a claim prior to S&S's bankruptcy, "due process" dictates that it cannot have been discharged[,]" because neither Plaintiff nor its members were provided notice of the bankruptcy. ECF 548 at 8-9. Plaintiff cites to *Monbo v. Blair*, 621 B.R. 383 (D. Md. Bankr. 2020) for this proposition, but within the same paragraph cites to the same case for its acknowledgment that due process only requires written notice to *known* creditors. *Id.*

4

contribution, it depends on Plaintiff and S&S both being liable to the United States and the State of Maryland. *See In re Reading*, 115 F.3d 1111, 1124 (3d Cir. 1997) ("In permitting a party to seek contribution from 'any other person who is liable or potentially liable' under § 107(a), it is inherent in the concept of contribution that the persons commonly liable be liable to the same entity." (quoting 42 U.S.C. § 9613(f))); *id* ("Reading's liability to Conrail depends on Reading's liability to the United States. To be liable for contribution, Reading must be liable to the United States under § 107(a)."). Thus, here, if the federal and state governments' joint claim was discharged through S&S's bankruptcy, Plaintiff's contribution action, based on S&S's common liability with Plaintiff to those parties, fails as a matter of law. *See id.* at 1123 ("Because . . . the United States's claim was discharged by Reading's bankruptcy, Conrail's contribution action, based on Reading's common liability with Conrail to the United States, cannot proceed."); *see also Signature Combs, Inc. v. United States*, 253 F. Supp. 2d 1028, 1032 (W.D. Tenn. 2003) (discussing *In re Reading*'s discussion of contribution/common derivation of liability, and finding it persuasive: "Plaintiffs in the case *sub judice* may only bring their CERCLA § 113(f) contribution claims against MDL if both Plaintiffs' and MDL's liability are derivative of the claims of the United States."). Whether a defendant's potential CERCLA liability to the United States was discharged by its bankruptcy depends on when the United States's claim arose. Under Chapter 11 of the Bankruptcy Code, a debtor is discharged from all claims that arose before confirmation of

---

at 389 n.10. Plaintiff's primary argument – that it couldn't have had a claim prior to bankruptcy because it did not even become a party to the 68th Street Site process until well after the bankruptcy – provides the counterargument to its alternative argument. Because neither Plaintiff nor its member entities were known creditors of S&S prior to its bankruptcy petition, there is no reason S&S would have – or should have – provided written or constructive notice of its bankruptcy to Plaintiff, whom it would only come to know nearly three decades later in this litigation.

its bankruptcy plan (excepting any expressly maintained within the plan) but remains liable for claims arising after.  11 U.S.C. § 1141(d)(1)(A).

As other courts have acknowledged, "the Bankruptcy Code and CERCLA point toward competing objectives[,]" the former seeking to provide debtors with a fresh start by limiting or discharging liability, and the latter casting a broad net of liability for cleanup of hazardous waste. *In re Chateauguay Corp.*, 944 F.2d 997, 1002 (2d Cir. 1991); *see also In re Jensen*, 995 F.2d 925 (9th Cir. 1993).  As a result, the question of when a CERCLA claim has arisen, and, thus, whether it has been discharged, depends on the weight given to the statutes' respective aims.  Different circuits have applied different approaches to determine whether a bankruptcy discharges a CERCLA claim.  These approaches differ in accordance with courts' varying interpretations of the intended breadth of the word "claim" under the Bankruptcy Code. Among these different approaches, covering the spectrum of deference to bankruptcy law, are the "right to payment" approach (least deferential), and the "underlying acts" approach (most deferential).[4]

### A. The "right to payment" approach

Plaintiff, understandably, urges this Court to prioritize the aims of CERCLA and apply the "right to payment" approach – the least deferential to bankruptcy law, with the narrowest interpretation of what constitutes a "claim."  The Third Circuit applied the "right to payment" approach in *In re Reading*.  ECF 548 at 7.  In a CERCLA context, the "right to payment" approach means that "a debtor's CERCLA liability will be discharged only if all four CERCLA elements

---

[4] The court in *Signature Combs*, 253 F. Supp. 2d at 1033-38, provided a thorough exposition of these approaches, as well as the "fair contemplation" approach (discussed below, in note 6), and the "debtor-creditor relationship" approach (which this Court does not address because, in its application, it has largely become "the equivalent of the underlying acts approach.").

exist prior to a bankruptcy." *Signature Combs*, 253 F. Supp. 2d at 1033.[5] Here, it is clear that not all four elements of the government's CERCLA claim existed before S&S's bankruptcy. While "emergency removal actions were performed at the 68th Street Site in the 1980s[,]" S&S had not been identified as a PRP – arguably the most vital element of the claim – prior to the bankruptcy. ECF 1 ¶ 12. Thus, under the "right to payment" approach, no CERCLA claim existed prior to S&S's bankruptcy, and thus no such claim was discharged. The right to payment approach has come under criticism for subjugating bankruptcy law and, thus, undermining the goals of bankruptcy. *See, e.g.*, *In re Jensen*, 995 F.2d at 929 ("To hold that a claim for contribution arises only when there is an enforceable right to payment appears to ignore the breadth of the statutory definition of 'claim.'"). More importantly, however, the Fourth Circuit employs the alternative approach with the *broadest* interpretation of a "claim," or what is known as the "underlying acts" or "conduct" approach. Accordingly, this Court must reject the Plaintiff's invitation to adopt the "right to payment" approach here.

### B. The "underlying acts" or "conduct" approach

The "underlying acts," or "conduct" approach proposes that a "claim" exists "so long as the underlying . . . act occurred prior to the debtor's bankruptcy." *Signature Combs*, 253 F. Supp. 2d at 1034. The Fourth Circuit endorsed this approach in *Grady v. A.H. Robins Co., Inc.*, 839 F.2d 198 (4th Cir. 1988), and reiterated it in *Holcombe v. US Airways, Inc.*, 369 F. Appx. 424 (4th Cir. 2010): "[F]or a claim to arise, there need not be an immediate right to payment when the predicate acts occurred pre-petition." *Id.* at 428 (citing *Grady*, 839 F.2d at 200-03); *see also In re Brand*,

---

[5] These four elements are: "1) the defendant falls within one of the four categories of responsible parties; 2) hazardous substances are disposed at a facility; 3) there is a release or threatened release of hazardous substances from the facility into the environment; and 4) the release causes the incurrence of response costs including removal activities and enforcement activities related thereto." *See Signature Combs*, 253 F. Supp. 2d at 1033 n.3; 42 U.S.C. § 9607(a).

578 B.R. 729, 732 (D. Md. Bankr. 2017) ("In the Fourth Circuit, the point at which the right to payment arises is established by application of the conduct test.") (citing *Grady*, 839 F.2d at 203).

Proponents of the "underlying acts" standard argue that it respects the intent of the Bankruptcy Code, which "defines 'claim' more broadly than the traditional cause of action, encompassing any right to payment, no matter how distant or contingent." *Signature Combs*, 253 F. Supp. 2d at 1034 (citing 11 U.S.C. § 1011(5)(A) (defining "claim" as "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.")); *see also Holcombe*, 369 F. Appx. at 428 ("To determine whether a claim has arisen, we employ the 'conduct test,' which takes an expansive view of what constitutes a claim, because 'Congress intended that the definition of claim in the Code be as broad as possible[.]'") (quoting *Grady*, 839 F.2d at 200).

While the Fourth Circuit has not taken up the issue of the definition and timing of a claim in the CERCLA context, the *Signature Combs* court summarized the application of the conduct test in that realm:

> [E]ven if the EPA does not yet know of a potential CERCLA claim against the debtor, the debtor's liability is discharged so long as the debtor's conduct relating to the contamination concluded prior to its bankruptcy petition. Rather than looking to substantive nonbankruptcy law to determine when a CERCLA claim arises, these courts emphasize substantive bankruptcy law and policy.

*Signature Combs*, 253 F. Supp. 2d at 1035.  This approach has been criticized for undermining CERCLA's goal of polluter accountability, which would be rendered ineffectual if polluters could evade response cost and action obligations by filing for bankruptcy before EPA became aware of their polluting.

However, as stated by another district court within this Circuit, "Fourth Circuit precedent on this point is legion[,]" and this Court will not eschew that precedent here.[6] *In re U.S. Airways Grp., Inc.*, 296 B.R. 673, 680 (E.D. Va. Bankr. 2003) ("*Whether* a claim arises requires consideration of the substantive law from which the claim arises, not of the bankruptcy code itself; but *when* a claim arises for bankruptcy purposes is determined according to bankruptcy law, not according to the substantive law creating the claim.") (emphasis in original).  By application of this Circuit's precedent, which employs the more debtor-friendly "underlying acts" or "conduct" approach, any CERCLA liability claims against S&S were discharged by its bankruptcy, because its alleged underlying acts – hazardous waste pollution from the 1950s to early 1970s – undoubtedly occurred prior to its bankruptcy.  Because the claims were discharged, summary judgment in favor of S&S is warranted.

---

[6] The Court does, though, note again that the Fourth Circuit has not yet considered the applicability of the "conduct" or "underlying acts" approach in a CERCLA case.  While adhering to this Circuit's practice of using the "underlying acts" or "conduct" approach to determine when a claim arises, this Court acknowledges a third approach that has been applied in other jurisdictions in recent years.  The "fair contemplation" approach attempts to strike a middle ground between the competing objectives of CERCLA and the Bankruptcy Code by proposing that "claims" arise when "all future response and natural resource damages cost based on pre-petition conduct . . . can be fairly contemplated by the parties at the time of [d]ebtor's bankruptcy[.]" *In re Jensen*, 995 F.2d at 930 (quoting *In re Nat'l Gypsum Co.*, 139 B.R. 397, 409 (N.D. Tex. Bankr. 1992)); *see also In re Hexcel Corp.*, 239 B.R. 564, 570 (N.D. Cal. 1999) ("In light of the competing public policy concerns expressed by Congress, the Court stated, it would be inappropriate to bar a CERCLA claimant from recovery if the claimant could not reasonably contemplate, prior to the bankruptcy proceedings, that it might have a cause of action against the debtor.").  Regardless of the potential merits of that approach, however, it contravenes existing Fourth Circuit precedent in the bankruptcy context.

## IV. Conclusion

For the reasons set forth above, Defendant Schumacher & Seiler, Inc.'s Motion for Summary Judgment, ECF 515, will be GRANTED. A separate Order follows.

Dated: October 12, 2021                                /s/
                                        Stephanie A. Gallagher
                                        United States District Judge