**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

---

68TH STREET SITE WORK GROUP,

               Plaintiff,

    v.

7-ELEVEN, INC., et al.,

               Defendants.

No.: 1:20-cv-03385-SAG

---

**JOINT MEMORANDUM OF LAW REGARDING ARRANGER LIABILITY IN**
**<u>OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.     INTRODUCTION ................................................................................................ 1

II.    STATEMENT OF FACTS & PROCEDURAL HISTORY ............................................. 2

III.   LEGAL STANDARD........................................................................................... 5

IV.    THE PROPOSED AMENDED COMPLAINT DOES NOT ALLEGE THAT
       DEFENDANTS ARRANGED FOR THE DISPOSAL OF HAZARDOUS
       SUBSTANCES ................................................................................................. 6

       a.     The Proposed Amended Complaint Does Not Cure the Pleading
              Deficiencies Identified in the Motion to Dismiss Opinion ................................... 6

       b.     The Proposed Amended Complaint Does Not Plausibly Allege Arranger
              Liability for Two Additional Reasons ................................................................... 8

       c.     None of the Defendant-Specific Allegations Establish Arranger Liability ......... 10

              i.     The Allegations Fail as to C&I Leasing ................................................... 10

              ii.    The Allegations Fail as to Alban Tractor................................................. 12

              iii.   The Allegations Fail as to Rukert Terminals ........................................... 13

              iv.    The Allegations Fail as to Solo Cup ....................................................... 15

              v.     The Allegations Fail as to ViacomCBS ................................................... 17

              vi.    The Allegations Fail as to Vornado Realty .............................................. 18

V.     THE COURT SHOULD DENY LEAVE TO AMEND WITH PREJUDICE ............... 21

VI.    BECAUSE THE CERCLA CLAIM FAILS, DEFENDANTS ARE ENTITLED
       TO A DECLARATION THAT THEY ARE NOT LIABLE FOR FUTURE
       RESPONSE COSTS .......................................................................................... 22

VII.   CONCLUSION................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A. Shapiro & Sons, Inc. v. Rutland Waste & Metal Co.*,
  76 F. Supp. 2d 82 (D. Mass. 1999) ........................................................................23

*Allied Towing Corp. v. Great E. Petroleum Corp.*,
  642 F. Supp. 1339 (E.D. Va. 1986) .........................................................................8

*Am. Alternative Ins. Co. v. Moon Nurseries, Inc.*,
  No. 11-cv-2267, 2012 WL 892620 (D. Md. Mar. 14, 2012) ...........................11, 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................5, 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................5

*Bryant v. Colonial Pipeline Co.*,
  699 F. Supp. 546 (W.D. Va. 1987) ...........................................................................8

*Burlington Northern & Santa Fe Ry. Co. v. United States*,
  556 U.S. 599 (2009).........................................................................................15, 16

*City of Colton v. Am. Promotional Events, Inc.-West*,
  614 F.3d 998 (9th Cir. 2010) ..................................................................................23

*Desgraviers v. PF-Frederick, LLC*,
  501 F. Supp. 3d 348 (D. Md. 2020) ..........................................................................6

*Dixon Lumber Co. v. Austinville Limestone Co.*,
  No. 7:16-cv-130, 2017 WL 4933053 (W.D. Va. Oct. 31, 2017) ..........................7, 8

*Foman v. Davis*,
  371 U.S. 178 (1962)..................................................................................................5

*Gussack Realty Co. v. Xerox Corp.*,
  224 F.3d 85 (3d Cir. 2000).......................................................................................22

*J & P Dickey Real Estate Family Ltd. P'ship v. Northrop Grumman Guidance &
  Elecs. Co.*,
  No. 2:11-cv-37, 2012 WL 925015 (W.D.N.C. Mar. 19, 2012) .........................11, 13

*Katyle v. Penn Nat'l Gaming, Inc.*,
  637 F.3d 462 (4th Cir. 2011) .....................................................................................5

*Kline v. Nationsbank of Va., N.A.*,
  886 F. Supp. 1285 (E.D. Va. 1995) ...............................................................21, 22

*La Loma Grande LLC v. United States*,
  No. 11-cv-476, 2017 WL 6061610 (D. Ariz. Mar. 7, 2017)........................................22

*McCleary-Evans v. Md. Dep't of Transp.*,
  780 F.3d 582 (4th Cir. 2015) .................................................................................6

*Nurad, Inc. v. William E. Hooper & Sons Co.*,
  966 F.2d 837 (4th Cir. 1992) ..........................................................................9, 10

*PRSC, LLC v. Admiral, Inc.*,
  No. 8:08-cv-1379, 2009 WL 10685578 (D. Md. Mar. 10, 2009) ..........................................22

*Rao v. Era Alaska Airlines*,
  22 F. Supp. 3d 529 (D. Md. 2014) ...........................................................................5

*In re Triangle Capital Corp. Sec. Litig.*,
  988 F.3d 743 (4th Cir. 2021) ...........................................................................5, 21

*Trimble v. Asarco, Inc.*,
  232 F.3d 946 (8th Cir. 2010) ..............................................................................22

*United States v. Iron Mountain Mines, Inc.*,
  881 F. Supp. 1432 (E.D. Cal. 1995)....................................................................11, 13

**Statutes**

42 U.S.C. § 9601(9) ...........................................................................................9

42 U.S.C. § 9601(22) ..........................................................................................9

42 U.S.C. § 9607(a) .........................................................................................6, 7

42 U.S.C. § 9607(a)(3)........................................................................................18

42 U.S.C. § 9613(f)(1), (3) ...................................................................................6

Declaratory Judgments Act ....................................................................................23

**Other Authorities**

40 C.F.R. § 302.4 ....................................................................................10, 12, 19

Rule 12(b)(6)....................................................................................1, 5, 6, 8

Defendants C&I Leasing, Inc. ("C&I Leasing"); Alban Tractor LLC ("Alban Tractor"); The Rukert Terminals Corporation ("Rukert Terminals"); Solo Cup Operating Corporation (incorrectly named as Solo Cup Company) ("Solo Cup"); ViacomCBS, Inc. ("ViacomCBS"); and Vornado Realty Trust ("Vornado Realty") (collectively, "Defendants") through undersigned counsel, respectfully submit this joint memorandum of law, which explains why Plaintiff 68th Street Site Work Group's ("Plaintiff") latest allegations concerning CERCLA arranger liability are futile because, among many reasons, Plaintiff has utterly failed to make the changes this Court ruled are required to withstand Rule 12(b)(6) scrutiny.[1]   The Court should disallow Plaintiff's proposed amended complaint ("PAC") (Dkt. 828-1) because Plaintiff did not make allegations that support each element of a CERCLA arranger liability claim, as outlined by the Court in its prior Order.

# I.     <u>INTRODUCTION</u>

Although the Court provided a detailed roadmap on how to plead arranger liability in its September 16, 2021 Memorandum Opinion dismissing Plaintiff's Complaint, Plaintiff has not remedied its pleading deficiencies.  Specifically, the Court's Opinion instructed Plaintiff that to sustain an arranger liability claim under CERCLA, Plaintiff must allege that Defendants intended to or knew that they were arranging to dispose of hazardous substances at the 68th Street Landfill. Instead, Plaintiff's PAC still relies on the same conclusory allegations that this Court found to be insufficient.  For example, Plaintiff has again pled that Defendants arranged for disposal "of waste containing hazardous substances."  *This is the exact same allegation the Court informed Plaintiff*

---

[1] Defendants C&I Leasing and Solo Cup have also simultaneously filed oppositions to the Second Corrected Motion for Leave to File an Amended Complaint regarding successor liability.  In the interest of judicial economy, Defendants have jointly filed this arranger liability opposition to streamline the briefing process.  Individual successor liability oppositions were filed because the successor issue did not lend itself to a joint filing.

*it could not make*, as the Court admonished that the "distinction is significant" between alleging a defendant arranged for disposal of waste containing hazardous substances (which is insufficient to plead arranger liability) and alleging a defendant arranged for disposal of hazardous substances (which is required to plead arranger liability).  Further lacking are any allegations that Defendants "knew" their purported wastes were hazardous.  Again, the Court expressly ruled that a non-conclusory allegation of knowledge is required, *but Plaintiff has not cured this deficiency*.  The Court should dismiss Plaintiff's latest pleading for these reasons, and the additional reasons raised below.

Importantly, dismissal should be *with prejudice* due to Plaintiff's failure to follow the Court's unambiguously clear guidance and correct its pleading deficiencies.  Plaintiff initially employed a "broad-brush approach," and this Court cautioned it to "seriously scrutinize" whether it could plausibly plead its claims.  Plaintiff has shown it cannot.  Because this Court wrote any new pleading lacking plausible facts would "be viewed with disfavor," the Court should not give Plaintiff a third bite at the apple and should dismiss its claims with prejudice.[2]

## II.  <u>STATEMENT OF FACTS & PROCEDURAL HISTORY</u>

The 68th Street Dump Superfund Alternative Site (the "Site") "is an aggregate of seven landfills and encompasses approximately 239 acres, nearly 118 acres of which are streams and wetlands." PAC ¶ 4.  The Site "has been organized into five Management Areas ('MAs') identified as MA-A, MA-B, MA-D, MA-E and MA-F."  *Id.* ¶ 5.  Plaintiff alleges that "waste disposal activities occurred between the 1950s and early 1970s under various landfill operating permits . . . . and [involved] disposal of solid and liquid municipal, industrial and commercial wastes."  *Id.* ¶ 6.  Plaintiff does not allege that Defendants disposed of any wastes at the Site.  Rather, Plaintiff

---

[2] The fact that this matter has now been pending for 391 days without Plaintiff being able to plead cognizable claims shows there is no reasonable expectation of its pleading ever being rehabilitated.

alleges in a conclusory fashion that Defendants and/or their purported predecessors "by contract, agreement or otherwise, arranged for disposal, or arranged with a transporter for transport for disposal of waste at the 68th Street Site." *Id.* ¶¶ 41, 68, 133, 171, 224, 250.  Rather than alleging Defendants, with knowledge and intent, arranged with a transporter for disposal of hazardous substances, Plaintiff alleges Defendants and/or their purported predecessors "knowingly and voluntarily contracted, agreed, or otherwise arranged with Robb Tyler, Inc., and/or a Robb Tyler, Inc. affiliate, *with the intent to dispose of their waste* during the relevant time period, *and such waste contained hazardous substances.*" *See, e.g.*, *id.* ¶ 80 (emphasis added); *see also id.* ¶¶ 51, 140, 198, 236, 255.  Plaintiff does not actually allege the hazardous substances Defendants allegedly arranged for the disposal of.  Instead, Plaintiff alleges Defendants were engaged in a variety of business operations and that there were certain "waste streams attributable to" them – none of which are alleged to be "are inherently hazardous." *Id.* ¶¶ 49-50, 77-79, 138-39, 196-97, 234-35, 253-54; Dkt. 786 at 46 n.11.

In 1999, the U.S. Environmental Protection Agency ("EPA") proposed the Site to the National Priorities List and re-proposed it in 2003.  PAC ¶¶ 15-16.  "On April 26, 2006, [members of the 68th Street Site Work Group] and U.S. EPA entered into an Administrative Settlement Agreement and Order for Remedial Investigation and Feasibility Study." *Id.* ¶ 17.  "On September 30, 2013, U.S. EPA issued its final Record of Decision ('ROD') for remedial actions at the 68th Street Site." *Id.* ¶ 22.  On November 28, 2017, the U.S. District Court for the District of Maryland entered a Consent Decree for Remedial Design/Remedial Action ("RD/RA Consent Decree") between EPA/the State of Maryland and two groups that Plaintiff identifies as the "Settling Performing Defendants comprising the members of the 68th Street Site Work Group and Non-Performing Settling Defendants." *Id.* ¶ 23.  Although Plaintiff itself is not a signatory to this

RD/RA Consent Decree, all members of the 68th Street Site Work Group "are signatories to the RD/RA Consent Decree." *Id.* ¶ 34. Plaintiff alleges that it has "incurred over $4.8 million in response costs in connection with the activities and payments required by the RD/RA Consent Decree" and "will continue to incur response costs." *Id.* ¶¶ 25, 27.

On November 20, 2020, Plaintiff initiated this action by filing its Complaint. Dkt. 1. After thirty-one defendants, including C&I Leasing, Rukert Terminals, and Alban Tractor, moved to dismiss (with some seeking summary judgment in the alternative), this Court entered a Memorandum Opinion and Order on September 16, 2021 granting the motions. Dkt. 786, 787. In its Memorandum Opinion (the "MTD Opinion"), the Court held that Plaintiff, as an unincorporated non-party to the RD/RA Consent Decree, was not the real party in interest and that this action had to be prosecuted by the individual members of Plaintiff who signed the RD/RA Consent Decree. *See* Dkt. 786 at 51-57. The Court also granted the motions as to successor liability because Plaintiff neither identified which of the four exceptions to the rule of successor non-liability it was pursuing nor pled "articulable facts plausibly suggesting the existence of one of the four exceptions to successor non-liability." *See id.* at 29-31. Finally, the Court granted the motions as to arranger liability because "Plaintiff merely pleaded a 'threadbare recital of the elements' of § 107(a)(3) arranger liability under CERCLA." *Id.* at 39. The Court also found the arranger liability allegations insufficient because rather than alleging Defendants arranged with a transporter for disposal of hazardous substances, the "Complaint, in contrast, alleges that each Defendant 'arranged with a transporter for transport for disposal or treatment of *waste containing* hazardous substances.'" *Id.* at 40 (citation omitted).

Although the Court allowed Plaintiff the ability to seek leave to amend, it cautioned that due to Plaintiff's initial "'broad-brush' approach," an attempt to replead "without articulable facts plausibly suggesting" a cause of action would "be viewed with disfavor." *Id.* at 31.

## III.   LEGAL STANDARD

Courts may deny leave to amend "in cases of 'prejudice, bad faith, or futility.'" *In re Triangle Capital Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021) (citation omitted) (affirming denial of motion for leave to amend due to futility). The Fourth Circuit has "made clear that district courts are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny." *Id.* (citation omitted). "Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards: 'A district court may deny leave if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules.'" *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (citation omitted). Because futility is intertwined with the *Twombly/Iqbal* plausibility standard, that standard is reproduced here for the Court's convenience.[3]

A motion to dismiss under Rule 12(b)(6) should be granted where the complaint fails to allege facts sufficient to establish each element of the claims. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). To survive a motion to dismiss, the complaint's allegations must rise above the "speculative," "conceivable," or "possible," and instead must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 545, 547, 555, 563, 570; *see also Iqbal*, 556 U.S. at 678 (explaining that the plausibility

---

[3] The Supreme Court has made clear that leave to amend may be denied for "failure to cure deficiencies by amendments previously allowed." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Rao v. Era Alaska Airlines*, 22 F. Supp. 3d 529, 540 (D. Md. 2014) ("The Court only should deny leave to amend if amendment 'would prejudice the opposing party, reward bad faith on the part of the moving party, or amount to futility.'" (citation omitted)).

standard "asks for more than a sheer possibility that a defendant has acted unlawfully"). A complaint must include "'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555); *see also Desgraviers v. PF-Frederick, LLC*, 501 F. Supp. 3d 348, 350 (D. Md. 2020) (noting that a complaint must have "more than bald accusations or mere speculation") (Gallagher, J.). Thus, although well-pleaded allegations of fact are accepted as true, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not. *Iqbal*, 556 U.S. at 678.

## IV.   THE PROPOSED AMENDED COMPLAINT DOES NOT ALLEGE THAT DEFENDANTS ARRANGED FOR THE DISPOSAL OF HAZARDOUS SUBSTANCES

Plaintiff's CERCLA contribution claim fails because it has not pled facts that, taken as true, establish Defendants arranged for the disposal of hazardous substances. The MTD Opinion provided Plaintiff with a road map with clear directions on how to plead this claim, but the PAC makes the very allegations that this Court indicated fail as a matter of law under Rule 12(b)(6), meaning the PAC is futile. In addition to this glaring deficiency, the PAC fails for two additional reasons that are applicable to all Defendants, which C&I Leasing raised in its motion to dismiss, *see* Dkt. 384-2 at 9-11, but the Court did not rule on in its MTD Opinion. Further, as discussed in defendant-specific sections, none of the allegations Plaintiff pleads as to each defendant establish arranger liability under CERCLA section 107(a)(3).

### a.   The Proposed Amended Complaint Does Not Cure the Pleading Deficiencies Identified in the Motion to Dismiss Opinion

When a PRP has resolved its liability to the United States or a State through a judicially approved settlement, it "may seek contribution from any person who is not party to a settlement" and "who is liable or potentially liable under section 9607(a) of" CERCLA. 42 U.S.C. §

9613(f)(1), (3).  An entity is "potentially liable under section 9607(a)" if it (1) is the current owner or operator of a facility; (2) owned or operated the facility at time of disposal of hazardous substances; (3) arranged for disposal of hazardous substances at a facility; or (4) accepted hazardous substances for transport to a facility.  *See* 42 U.S.C. § 9607(a).  Regarding "arranger liability," the MTD Opinion informed Plaintiff that it must allege defendant-specific, non-conclusory facts regarding how a defendant "arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances."  Dkt. 786 at 39. Critically, the Court cautioned that allegations were insufficient if they alleged "that each Defendant 'arranged with a transporter for transport for disposal or treatment of *waste containing* hazardous substances.'"  *Id.* at 40 (citation omitted).

Despite being informed that the "distinction is significant" between what the Complaint alleged and what is required to plead arranger liability, *see id.*, Plaintiff has doubled down on its insufficient allegations, alleging that Defendants "knowingly and voluntarily contracted, agreed, or otherwise arranged with Robb Tyler, Inc., and/or a Robb Tyler, Inc. affiliate, *with the intent to dispose of their waste* during the relevant time period, *and such waste contained hazardous substances*."  *See, e.g.*, PAC ¶ 80 (emphasis added); *see also id.* ¶¶ 51, 140, 198, 236, 255.  This is literally the exact same allegation the Court said Plaintiff could not make, as such an allegation does not plausibly establish liability under CERCLA section 107(a)(3).  *See* Dkt. 786 at 40; *see also id.* at 42 ("[T]he Fourth Circuit has held that 'intent to sell a product that happens to contain a hazardous substance is not equivalent to intent to dispose of a hazardous substance under CERCLA.  For arranger liability to attach, there must be something more.'" (quoting *Consolidation Coal Co. v. Ga. Power Co.*, 781 F.3d 129, 149 (4th Cir. 2015))); *Dixon Lumber Co. v. Austinville Limestone Co.*, No. 7:16-cv-130, 2017 WL 4933053, at *4 (W.D. Va. Oct. 31, 2017)

(granting motion to dismiss for failure to allege the defendant "entered into a transaction with the purpose of discarding a hazardous substance").

Further lacking is any allegation that Defendants "knew" their purported wastes were hazardous. This Court adopted case law holding that a defendant cannot "'be found to be an arranger if he did not know the substance in question is hazardous.'" *See* Dkt. 786 at 43 (quoting *Appleton Papers Inc. v. George A. Whiting Paper Co.*, No. 08-cv-16, 2012 WL 2704920, at *11 (E.D. Wis. July 3, 2012)). This Court also found persuasive case law "granting a motion to dismiss filed by a defendant with no knowledge that the construction and demolition debris it brokered had contained hazardous substances." *Id.* at 44 (citing *Town of Islip v. Datre*, 245 F. Supp. 3d 397 (E.D.N.Y. 2017)). Plaintiff's failure to include these required allegations renders its PAC futile, as it would not withstand scrutiny under a Rule 12(b)(6) motion.

   **b.   The Proposed Amended Complaint Does Not Plausibly Allege Arranger Liability for Two Additional Reasons**

Even if the Court found that Plaintiff cured the deficiencies identified in the MTD Opinion, Plaintiff's PAC still fails as to all Defendants for two reasons. ***First***, the PAC fails because it does not plead facts concerning the purported "release, or threatened release" of hazardous substances. Rather, it alleges only in *a conclusory fashion* that there "has been a 'release' and/or a threatened 'release' of 'hazardous substances' at the 68th Street Site." *See* PAC ¶ 272; *see also id.* ¶¶ 1, 3, 26, 276, 278. Plaintiff's failure to allege facts concerning this element dooms its claim. *See Bryant v. Colonial Pipeline Co.*, 699 F. Supp. 546, 548-49 (W.D. Va. 1987) (granting motion to dismiss because "a plaintiff must allege a release or threatened release of a hazardous substance" and plaintiffs "have not alleged a release or threatened release of either the hazardous substance when it was hazardous, or the trace amounts of mercury and arsenic"); *Allied Towing Corp. v. Great E. Petroleum Corp.*, 642 F. Supp. 1339, 1350 (E.D. Va. 1986) ("Publicker owns a facility, but it

doesn't appear from the complaint that there is a current threat of release of any toxic substance *from that facility* which may have caused Towing economic damage." (emphasis added)).  The PAC's allegations simply show that certain waste may have been disposed at the Site – which is what you would expect to occur at a landfill – and then, some of it was later removed.  *See* PAC ¶ 11 (alleging that "disposal of waste material continued until at least 1969"), *id.* ¶¶ 13, 20 (alleging "there was a drum removal" and action was taken "to remove surface materials and containers").  None of this indicates that there was a "release" from a facility, which is defined as, *inter alia*, the spilling, leaking, or dumping of hazardous substances "*into the environment.*"  42 U.S.C. § 9601(22) (emphasis added).

**Second**, Plaintiff has not pled facts concerning the facility at which Defendants purportedly arranged for disposal.  CERCLA defines "facility" as "(A) any building, structure, installation, equipment, pipe or pipeline[,] . . . well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located . . . ."  42 U.S.C. § 9601(9).  Interpreting this term, the Fourth Circuit has held that a CERCLA "facility" is not an entire CERCLA site; rather, it is only the area "where hazardous substances have come to be located."  *Nurad, Inc. v. William E. Hooper & Sons Co.*, 966 F.2d 837, 842-43 (4th Cir. 1992).  *Nurad* is instructive because, there, the court rejected the plaintiff's argument "that the 'facility' at issue here encompassed the entire Nurad site" and, instead, held that "the relevant 'facility' is properly confined to" the storage tanks where the hazardous substances were located.  *Id.*  Although the PAC notes that the Site "is an aggregate of seven landfills" and has been divided into five Management Areas, which include the landfills, streams, wetlands, a concrete plant, and a junkyard, *see* PAC ¶¶ 4-11, Plaintiff does not identify at which of these

locations Defendants purportedly arranged for disposal of wastes.  Instead, Plaintiff makes the overly broad allegation that the "68th Street Site is a 'facility' within the meaning of Section 101(9) of CERCLA." *Id.* ¶ 265.  This is the same allegation that the Fourth Circuit rejected in *Nurad*, and Plaintiff's PAC, thus, fails.

For these additional reasons, the Court should deny leave to amend.

### c.       None of the Defendant-Specific Allegations Establish Arranger Liability

Plaintiff's attempt to plead arranger liability fails for the above-discussed reasons, which are applicable to all Defendants.  To the extent Plaintiff argues any of its defendant-specific allegations plausibly establish successor liability, those allegations fail for the reasons discussed in the following defendant-specific sections.

### i.       The Allegations Fail as to C&I Leasing

The Court should deny leave to amend because the PAC does not identify any "hazardous substances" that C&I Leasing purportedly owned or possessed and arranged for the disposal of. As the PAC acknowledges, CERCLA defines hazardous substances "by reference to a list of substances published by EPA at 40 C.F.R. § 302.4."  *See* PAC ¶ 266.  Rather than identifying any hazardous substances from this list that were disposed of at the Site, Plaintiff vaguely alleges that records indicate "waste streams attributable to" C&I Leasing include "empty drums and soda cans," *id.* ¶ 79, as well as broken wooden pallets, paper, floor sweepings, and broken glass.  *Id.* ¶ 75.  This is problematic because none of these items appear on EPA's list of hazardous substances. *See* 40 C.F.R. § 302.4.  Instead, just as is the Complaint, Plaintiff has alleged that C&I Leasing "engaged in a standard business practice—waste disposal using a local trash collection service." Dkt 786 at 45.  Indeed, the Court chided Plaintiff for alleging C&I Leasing disposed of "empty drums and empty soda cans" because there is "nothing to indicate that these items are inherently hazardous."  *Id.* at 45-46 n.11.  Plaintiff's use of the CERCLA "buzz word" of "hazardous

substances" – without identifying any hazardous substances on EPA's list – is not enough to plausibly plead a CERCLA claim. *See Am. Alternative Ins. Co. v. Moon Nurseries, Inc.*, No. 11-cv-2267, 2012 WL 892620, at *8 (D. Md. Mar. 14, 2012) (granting motion to dismiss CERCLA claim because complaint was "replete with the use" of "'buzz words'" that constituted "'a mere formulaic recitation'" of CERCLA elements (quoting *Twombly*, 550 U.S. at 555)); *see also J & P Dickey Real Estate Family Ltd. P'ship v. Northrop Grumman Guidance & Elecs. Co.*, No. 2:11-cv-37, 2012 WL 925015, at *5 (W.D.N.C. Mar. 19, 2012) ("Plaintiffs, however, must allege more than a formalistic recitation of the elements of a CERCLA claim to state a claim in federal court." (citing *Twombly*, 550 U.S. at 555)).

Even assuming, *arguendo*, that Plaintiff plausibly identified hazardous substances, the PAC fails because it does not allege that C&I Leasing "owned or possessed" these substances. *United States v. Iron Mountain Mines, Inc.*, 881 F. Supp. 1432, 1451 (E.D. Cal. 1995) ("No court has imposed arranger liability on a party who never owned or possessed, and never had any authority to control or duty to dispose of, the hazardous materials at issue." (citation omitted)) (granting motion to dismiss). Rather, the PAC vaguely alleges that certain "waste streams" were "attributable to" C&I Leasing. *See* PAC ¶¶ 78-79.

Finally, Plaintiff's reference to a Pepsi Cola Co. "service ticket" and allegations that both Allegheny Pepsi Cola and Pepsi Cola Bottling Co. were "a customer of Robb Tyler, Inc." do not plausibly establish arranger liability. *See id.* ¶¶ 69-71. All these allegations show is that these entities may have been involved in "the regular disposition of waste." *See* Dkt. 786 at 46. Nor does the new conclusory allegation that Pepsi Cola Co. was "a generator of solid waste or chemicals that were disposed of at the 68th Street Site," *see* PAC ¶ 72, establish arranger liability,

as this does not allege this entity knowingly and intentionally arranged for disposal of hazardous substances.

ii.     **The Allegations Fail as to Alban Tractor**

The Court should deny leave to amend because the proposed Amended Complaint does not identify any "hazardous substances" that Alban Tractor purportedly owned, possessed, or arranged for the disposal of.   As the Amended Complaint acknowledges, CERCLA defines hazardous substances "by reference to a list of substances published by EPA at 40 C.F.R. § 302.4." *See* PAC ¶ 266.   Rather than identifying any hazardous substances from this list that were disposed of at the Site, Plaintiff vaguely alleges that records indicate "waste streams" attributable to Alban Tractor of "equipment maintenance waste and general office waste." *Id.* ¶ 50. Neither form of waste appears on EPA's list of hazardous substances. *See* 40 C.F.R. § 302.4.   Instead, just as in the Complaint, Plaintiff alleged that Alban Tractor "engaged in a standard business practice—waste disposal using a local trash collection service," without indication that any of the waste or items disposed of are hazardous. Dkt 786 at 45.   Plaintiff's general references to Robb Tyler, Inc. service tickets and allegations that Alban Tractor was "a customer of Robb Tyler, Inc." do not plausibly establish arranger liability or the existence of a hazardous substance. *See* PAC ¶¶ 42-48.   All these allegations show is that these entities may have been involved in "the regular disposition of waste." *See* Dkt. 786 at 46.   Nor does the new conclusory allegation that Alban Tractor was identified as "a generator of solid waste or chemicals that were disposed of at the 68th Street Site," *see* PAC ¶ 42, establish arranger liability, as this does not allege the existence of a hazardous substance, let alone that Alban Tractor knowingly and intentionally arranged for disposal of hazardous substances.   Finally, Plaintiff does not establish that Alban's waste went to the EPA's CERCLA jurisdictional site and not to some other site.   For all Defendants, including Alban, Plaintiff relies on the broad-brush allegation that waste from east Baltimore went to this 68th Street Site.   But at

the time of the disposal in question, Robb Tyler hauled waste from Alban in Harford County, Maryland, and neither Plaintiff's broad-brush allegation (which the Court indicated it would look at with scrutiny), nor any specific allegation in the Amended Complaint closes the pleading gap concerning where Robb Tyler took waste coming from Harford County, Maryland.

Plaintiff's use of the CERCLA "buzz word" of "hazardous substances" – without tying an actual Alban disposal to any hazardous substance on EPA's list – is not enough to plausibly plead a CERCLA claim. *See Am. Alternative Ins. Co. v. Moon Nurseries, Inc.*, No. 11-cv-2267, 2012 WL 892620, at *8 (D. Md. Mar. 14, 2012) (granting motion to dismiss CERCLA claim because complaint was "replete with the use" of "'buzz words'" that constituted "'a mere formulaic recitation'" of CERCLA elements (quoting *Twombly*, 550 U.S. at 555)); *see also J & P Dickey Real Estate Family Ltd. P'ship v. Northrop Grumman Guidance & Elecs. Co.*, No. 2:11-cv-37, 2012 WL 925015, at *5 (W.D.N.C. Mar. 19, 2012) ("Plaintiffs, however, must allege more than a formalistic recitation of the elements of a CERCLA claim to state a claim in federal court." (citing *Twombly*, 550 U.S. at 555)).

Even assuming, *arguendo*, that Plaintiff plausibly identified hazardous substances, the Amended Complaint fails because it does not allege that Alban Tractor "owned or possessed" these substances. *United States v. Iron Mountain Mines, Inc.*, 881 F. Supp. 1432, 1451 (E.D. Cal. 1995) ("No court has imposed arranger liability on a party who never owned or possessed, and never had any authority to control or duty to dispose of, the hazardous materials at issue." (citation omitted)) (granting motion to dismiss).  Rather, the Amended Complaint vaguely alleges that certain "waste streams" were "attributable to" Alban Tractor. *See* PAC ¶ 50.

### iii.    The Allegations Fail as to Rukert Terminals

The Court should deny leave to amend because the allegations of the PAC against Rukert Terminals still fail to identify any "hazardous substances" that Rukert Terminals purportedly

"owned or possessed" and for which it intentionally arranged for disposal.  The PAC is still completely devoid of any factual allegations that Rukert had knowledge that its waste streams contained hazardous substances and that it intentionally arranged for the disposal of hazardous substances.  Without any such allegations, the PAC still fails to state a claim for arranger liability under CERCLA.

Plaintiff's new allegations against Rukert are contained in paragraphs 134-137 and 140-141.  These allegations are as reproduced below:

> 134. On or about March 9, 2004, a Robb Tyler, Inc. employee identified Rukert Terminals as a customer of Robb Tyler, Inc. whose waste was disposed of at the 68th Street Site during the time that the 68th Street Site was in operation.

> 135.  The Robb Tyler Accounts Receivable ledger dated March 31, 1970 identifies Rukert Terminals as a customer of Robb Tyler, Inc.

> 136.  Rukert Terminals is and/or was located at 2021 S. Clinton Street, Baltimore, MD 21224.

> 137.  On or about June 15, 2005, the U.S. EPA issued a 104(e) Request for Information to Rukert Terminals seeking information concerning the transportation, storage, treatment or disposal of hazardous substances, pollutants or contaminants by Rukert Terminals at the 68th Street Site.

> *      *      *

> 140.  Rukert Terminals knowingly and voluntarily contracted, agreed, or otherwise arranged with Robb Tyler, Inc. with the intent to dispose of Rukert Terminals waste during the relevant time period, and such waste contained hazardous substances.

> 141.  As detailed above, the waste that Robb Tyler, Inc. Hauled for Rukert Terminals was disposed of at the 68th Street Site.

PAC ¶¶ 134-141.  None of these paragraphs allege any facts showing that Rukert knew that its waste streams contained hazardous substances or that Rukert intended to arrange for the disposal of hazardous substances.  At most, they allege that Rukert was a customer of Robb Tyler, Inc., and that at least some of Rukert's waste was disposed of at the 68th Street Site.  Even Paragraph 140,

which alleges that "Rukert knowingly … arranged with Robb Tyler, Inc. with the intent to dispose of Rukert Terminals waste," still falls short of alleging that Rukert knowingly and intentionally arranged for the disposal of hazardous substances.   On the contrary, it alleges only that Rukert arranged for the disposal of waste, and that the waste contained hazardous substances.  As this Court previously held, these allegations are insufficient.  Dkt. 786 at 39-40.

As a matter of law, Plaintiff's allegations against Rukert fail to state a claim for arranger liability, and fail to cure the deficiencies this Court previously noted.  *See* Dkt. 786 at 40-43; *Burlington Northern & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 611-12 (2009) (to qualify as an "arranger" under CERCLA, an entity must take "intentional steps to dispose of a hazardous substance.").  Allowing Plaintiff to file the PAC would be futile.

### iv.    The Allegations Fail as to Solo Cup

For the reasons stated above, Plaintiff should also be denied leave to amend its complaint as to Solo Cup, because the proposed pleading fails to allege that Solo Cup intentionally disposed of hazardous substances at the 68th Street Site.  Similar to the allegations for nearly all other Defendants, the portion of the proposed amended complaint relating to Solo Cup merely alleges the disposal of general plant wastes rather than any hazardous substance listed as such under CERCLA.

In an attempt to bolster the previous complaint, which was found lacking in specific allegations relating to the intent to dispose of hazardous substances at the 68th Street Site, Plaintiff has added nearly four pages of allegations with respect to Solo Cup's waste streams.  Despite the number of new paragraphs, however, these new allegations still fail to include a sufficient amount of detail as to any hazardous substances disposed of by Solo Cup, or as to Solo Cup's knowledge that its waste streams contained those hazardous substances.  For example, in various locations in its pleading, Plaintiff generically refers to Solo Cup (and its alleged predecessor companies) as a

"waste generator whose waste was brought to the 68th Street Site" (*See* PAC, ¶¶ 171-173, 175-178). Many of Plaintiff's allegations refer to truck drivers who described the waste as either paper, plastic, mixed waste paper/cardboard, "assorted plant trash", rags, cans or floor sweepings (*See, e.g.*, PAC ¶¶ 175, 178, 180, 183, 185, 187, 189).   In another paragraph, Plaintiff refers to an unidentified Robb Tyler employee who "identified Solo Cup as a generator of solid waste or chemicals", without any further description of what those chemicals may have been. (PAC ¶ 179). And, in yet another vague allegation, Plaintiff refers to "mixed loads that sometimes emitted a chemical-like odor" (PAC ¶ 182).   None of these statements properly or plausibly allege the disposal of hazardous substances at the 68th Street Site.   Finally, Plaintiff alleges elsewhere that other drivers described Solo Cup's wastes as "including inks and varnalene" or wastes that "included 5-gallon buckets of paint like material, colored ink and other liquid waste" (PAC, ¶¶ 192, 194).   None of these items are listed as hazardous substances under CERCLA.   Thus, Plaintiff's attempt to plead a CERCLA claim based on the disposal of normal plant wastes, rather than a knowing disposal of hazardous substances, will inevitably fail.

Tellingly, the only place in its amended pleading that Plaintiff includes any allegations that refer to hazardous substances listed under CERCLA is in Paragraph 197, which is identical to the allegations in the previous, deficient complaint, and nearly identical to the general inventory of chemicals attributed to almost every defendant. This paragraph is the very definition of a formulaic recitation.   Moreover, Plaintiff has failed to allege that Solo Cup had any knowledge that its waste streams contained hazardous substances or somehow concealed hazardous substances in its roll-off containers.   Therefore, the proposed amended complaint lacks the element of intent required by the Supreme Court under *Burlington Northern*. (See, *Burlington Northern*, 556 U.S. at 611-12).

For all of the aforementioned reasons, Plaintiff's request for leave to amend the complaint should be denied.

### v.      The Allegations Fail as to ViacomCBS

The Court should deny leave to amend with respect to ViacomCBS because the PAC does not meet the pleading requirements identified by the Court.  In the MTD Opinion, the Court instructed that a claim based on arranger liability should include the allegation that the defendant in question had the intent to dispose of a hazardous substance.  *See* MTD Opinion at pp. 40-46. The Court distinguished such an allegation from a mere allegation that a defendant had engaged in routine disposition of waste, and that such waste contained hazardous substances.  *Id.*   The allegations in the PAC do not meet the standard articulated by the Court.  Instead, the allegations against ViacomCBS are only that ViacomCBS' alleged predecessor, Westinghouse Electric Co. and other Westinghouse entities ("Westinghouse"), intended to dispose of waste, and that such waste contained hazard substances.   These allegations do not contain the contention that Westinghouse had an intention to dispose of hazardous substances.

The allegations against ViacomCBS are contained in paragraphs 204 through 241.  Within those paragraphs, those that attempt to state an arranger liability claim appear to be contained within paragraphs 224 through 237.  Of these paragraphs:

> Paragraph 224:  The allegations in this paragraph claim only that there was an arrangement for the disposal of wastes at 68th Street Site.  There is no allegation that this arrangement was for the disposal of hazardous substances.

> Paragraphs 225- 232:  These paragraphs contain anecdotal allegations of material taken to the 68th Street Site, but do not contain any allegations that Westinghouse had arranged for the disposal of that particular material at the 68th Street Site, that there was an intent for that material to be disposed at the 68th Street Site, or that the materials in question included hazardous substances.

> Paragraphs 233-234:  This paragraph merely alleges that Westinghouse was a customer of waste hauler Robb Tyler, Inc. and that it was engaged in the business of mass media and television production.

Paragraph 235: This paragraph contains the allegation that Westinghouse produced waste streams that contained hazardous substances, and lists fifteen different hazardous substances. This is the same laundry list of hazardous substances alleged against all defendants.

Paragraph 236: This paragraph alleges that Westinghouse contracted with Robb Tyler, Inc. with the intent to dispose of waste. It also alleges that the waste contained hazardous substances. It does not allege an intent to dispose of hazardous substances.

Paragraph 237: This paragraph alleges that waste from Westinghouse was disposed at the 68th Street Site.

In all of these allegations, there is no allegation that Westinghouse had an intent to dispose of hazardous substances. Similarly, there is no allegation that Westinghouse had an intent to dispose of hazardous substances at the 68th Street Site. There is no allegation that Westinghouse arranged for the disposal of hazardous substances. The only intent alleged is that Westinghouse had an intent to dispose of waste, but not that Westinghouse intended to dispose of hazardous substances. The PAC simply does not contain an allegation that matches the plain language of the CERCLA standard for arranger liability, that the party in question arranged for the disposal or treatment of hazardous substances. *See* 42 U.S.C. § 9607(a)(3); MTD Opinion at p. 40-42. Accordingly, per this Court's holding in the MTD Opinion, the PAC does not contain sufficient allegations of arranger liability. *Id.* at 39-46.

### vi.   The Allegations Fail as to Vornado Realty

Despite attempting to revise its complaint, Plaintiff once again has still not alleged any facts against Vornado that adequately support a claim for arranger liability under CERCLA. The allegations against Vornado are fully set forth in ¶¶ 242-260 of Plaintiff's proposed amended complaint ("PAC"). The only allegation stated by Plaintiff as to Vornado's alleged waste disposal and what is allegedly contained in said waste is found in PAC ¶ 251, as set forth below:

251.  On or about March 8, 2005, a Robb Tyler, Inc. employee identified Two Guys as a **generator of waste** from an **industrial location** whose waste was hauled by Robb Tyler, Inc. to the 68th Street Site approximately three times per week, and which waste included **paper and cardboard** (emphasis added).

However, "paper and cardboard" are not hazardous wastes and are not comprised of hazardous substances.  Nor do either of these items appear on EPA's list of hazardous substances. *See* 40 C.F.R. § 302.4.  They are traditional, non-hazardous wastes that are commonly disposed of by the general public, and the disposal of such materials was not intended to expose persons to CERCLA liability.

Further, the wastes typically generated by any typical retail department stores, such as the Two Guys Department Stores that Vornado operated in the Baltimore area (ECF 185, ¶ 1153), are, absent any other specific information to the contrary, not appropriately characterized as hazardous in nature. Plaintiff does not make any allegation that Vornado disposed of hazardous waste, but rather simply "waste that contained hazardous substances".  The allegation that residential and general office waste contains the following hazardous substances is set forth below:

254.  In addition to the hazardous substances associated with the business of retail sales and **appliance manufacturing** and sales, the **waste streams attributable** to Two Guys, Two Guys Eudowood and Vornado, Inc. also consisted of at least residential and general office waste, which contained the following hazardous substances: acetone, benzene, cadmium, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylene, and zinc (emphasis added).

This statement is beyond conclusory -- it is incorrect.  Residential and general office waste does not as a rule normally contain these hazardous substances. For the sake of argument, even if waste generated from Vornado's Two Guys department store operations did contain trace amounts of these substances, the disposal of this type of waste still does not comply with the CERCLA §107(a)(3) arranger liability standard. The standard for arranger liability is clearly set forth in the statue:

any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter **for transport for disposal or treatment, of hazardous substances owned or possessed by such person**, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances. 42 U.S.C. § 9607(a)(3) (emphasis added).

The statute does not provide for liability when any person disposes of waste that may or may not contain hazardous substances -- only when the actual disposal of hazardous substances occurred. Therefore, Plaintiff has not and apparently cannot allege facts to support an arranger liability claim against Vornado. Moreover, Plaintiff never alleges in the PAC that any hazardous waste from Vornado/Two Guys ever made it to the 68th Street Site. At most, Plaintiff can only speculate that the waste ended up at the Site, because there is simply no evidence that exists to assert same.

Notably, Plaintiff includes a new allegation in its PAC against Vornado that it was a manufacturer. This vague allegation is also not supported by any facts. The amended complaint seeks to paint a dark picture of an industrial location where Vornado must have performed manufacturing that produced hazardous waste[4]. But the allegation is sheer innuendo that doesn't amount to much more than a conclusory and incorrect statement. Tellingly, Plaintiff does not provide any information for the so-called manufacturing operations of Vornado, such as an address and/or location, specific hazardous waste generated, disposed or any other information. Rather than allege specific facts regarding Vornado's purported manufacturing operations and supposed contribution to the hazardous discharges at the 68th Street Site, Plaintiff only provides sparse information and unsupported inferences in attempt to misdirect the Court to allow Plaintiff to

---

[4] Presumably, Plaintiff is alleging that Vornado is a manufacturer or engaged in manufacturing operations because manufacturers normally generate some type of hazardous substances. In contrast, a typical retail store does not. However, this unsupported allegation of manufacturing is simply not true.

pursue these baseless and conclusory allegations against Vornado.  Unfortunately for Plaintiff, this does not meet the minimal pleading standards under R. 12(b)(6) for asserting a CERCLA §107(a)(3) claim. The Plaintiff is simply grasping at straws in an unsuccessful attempt to circumvent the requirements for pleading an arranger liability claim.

## V.   THE COURT SHOULD DENY LEAVE TO AMEND WITH PREJUDICE

The Court should deny Plaintiff's Motion with prejudice because Plaintiff already had an opportunity to replead and has not corrected its deficiencies, notwithstanding clear guidance from the Court on how to do so.  When the Court dismissed Plaintiff's Complaint, it cautioned that "Plaintiff should seriously scrutinize whether the claims against particular Defendants can or should be amended in light of the information that has been presented to this Court to date."  Dkt. 786 at 30.  It further warned that due to the "'broad-brush' approach Plaintiff has employed in its original Complaint . . . an attempt to reassert claims against any particular Defendant without articulable facts plausibly . . . will be viewed with disfavor." *Id.* at 31; *see also id.* at 24 ("Again, though, Plaintiff should weigh the facts now known to the parties in considering whether amendment of the Complaint is warranted.").  Despite these admonishments, Plaintiff has doubled down on its conclusory allegations.  Plaintiff's defiance of this Court's guidance should not be rewarded, as there is no indication a third time would be the charm for Plaintiff.  Denial with prejudice after an opportunity to replead would be in line with Fourth Circuit precedent.  *See Triangle Capital*, 988 F.3d at 756 (denying motion on futility grounds); *Kline v. Nationsbank of Va., N.A.*, 886 F. Supp. 1285, 1289 (E.D. Va. 1995) (denying plaintiff's request for leave to amend "her complaint a second time with respect to her punitive damages claims" because "her allegations supporting her claim of punitive damages in her amended complaint fail to state a claim" and she did "not present what additional allegations she proposes to append to her complaint").

21

## VI.     BECAUSE THE CERCLA CLAIM FAILS, DEFENDANTS ARE ENTITLED TO A DECLARATION THAT THEY ARE NOT LIABLE FOR FUTURE RESPONSE COSTS

In its MTD Opinion, the Court held that dismissal of Count I rendered Plaintiff's Count II for Declaratory Relief to be "futile."   Dkt. 786 at 58 n.16.   Because dismissal was without prejudice, however, the Court did not enter a declaration that Defendants were not liable for any future response costs.   *Id.*   As just discussed, leave to amend should be denied with prejudice.   *See supra* at Section V.   Thus, for the reasons discussed below, Defendants now are entitled to a declaration that they are not liable for future response costs under Count II.

When a Plaintiff brings both CERCLA and declaratory judgment claims and the CERCLA claim is dismissed, the defendant is entitled to a declaration that it is not liable.   *See PRSC, LLC v. Admiral, Inc.*, No. 8:08-cv-1379, 2009 WL 10685578, at *6-7 (D. Md. Mar. 10, 2009) ("Count III seeks a declaration that Defendant is liable for its equitable share of future response costs.   Even though the complaint will be dismissed, the court will declare the rights of the parties as requested."); *see also Trimble v. Asarco, Inc.*, 232 F.3d 946, 958 (8th Cir. 2010) ("However, a plaintiff cannot obtain declaratory relief pursuant to § 9613(g)(2) without having incurred response costs within the meaning of § 9607(a)(4)(B)."), *overruled on other grounds by Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005); *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 92 (3d Cir. 2000) ("With the CERCLA claim dismissed, we see no basis for sustaining the district court's order that plaintiffs indemnify Xerox for future response costs Xerox might incur remediating plaintiffs' property."); *La Loma Grande LLC v. United States*, No. 11-cv-476, 2017 WL 6061610, at *1 (D. Ariz. Mar. 7, 2017) (noting that "declaratory relief under 42 U.S.C. § 9613(g)(2) is unavailable absent a viable claim under 42 U.S.C. § 9607(a)"), *aff'd*, 742 F. App'x 288 (9th Cir. 2018).

Nor can Plaintiff seek declaratory relief under the Declaratory Judgments Act ("DJA") because CERCLA claimants are limited to seeking declaratory relief through CERCLA. *See City of Colton v. Am. Promotional Events, Inc.-West*, 614 F.3d 998, 1007 (9th Cir. 2010) (holdings that CERCLA plaintiffs cannot pursue declaratory relief under DJA because "'a precisely drawn, detailed statute pre-empts more general remedies'" (quoting *Hinck v. United States*, 550 U.S. 501, 506 (2007))); *A. Shapiro & Sons, Inc. v. Rutland Waste & Metal Co.*, 76 F. Supp. 2d 82, 88 (D. Mass. 1999) (CERCLA plaintiff could not seek declaratory relief under DJA because "the court is not inclined to permit an indirect approach to declaratory relief when the direct CERCLA-based approach, for the reasons described, is unavailable")).  For these reasons, Plaintiff is not entitled to the relief it seeks under Count II, and because Count I should be dismissed with prejudice, Defendants are entitled to a declaration that they are not liable for response costs.

## VII.    <u>CONCLUSION</u>

For these reasons, Defendants respectfully request that the Court deny as futile Plaintiff's Motion with prejudice.

Dated: December 16, 2021                  Respectfully submitted,


<u>/s/ Stephen E. Fitzgerald</u>
Stephen E. Fitzgerald
Morgan, Lewis & Bockius LLP
1717 Main Street, Suite 3200
Dallas, TX 75201
Telephone: 214.466.400
Fax: 214.466.4001
stephen.fitzgerald@morganlewis.com

Jason R. Scherr
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: 202.739.3000

Fax: 202.739.3001
jr.scherr@morganlewis.com
*Attorneys for Defendant C&I Leasing, Inc.*

*/s/ Thomas K. Prevas*
Thomas K. Prevas
Gregory Lee Waterworth
Saul Ewing Arnstein & Lehr LLP
500 E. Pratt Street, Suite 800
Baltimore, MD 21202
Telephone: 410.332.8683
Fax: 410.332.8123
tprevas@saul.com
gregory.waterworth@saul.com
*Attorneys for Defendant Alban Tractor LLC*

*/s/ Jennifer Conron Jackson*
Jennifer Conron Jackson
Blades and Rosenfeld PA
20 S Charles St Ste 1200
Baltimore, MD 21201
Telephone: 410.539.7558
jenjackson@blades-law.com

Margaret M. Witherup
Witherup Allen Law
3915 National Drive, Suite 320
Burtonsville, MD 20866
Telephone: 410.424.5300
mwitherup@witherupallenlaw.com
*Attorneys for Defendant The Rukert Terminals Corporation*

*/s/ Andrew G. May*
Steven K. Fedder
Fedder & Janofsky LLC
2650 Quarry Lake Drive, Suite 100
Baltimore, MD 21209
Telephone: 410.415.0081
Fax: 410.415.0085
sfedder@mdcounsel.com

Andrew G May (admitted *pro hac vice*)
Collette Alison Woghiren (admitted *pro hac vice*)
Lisa Zebovitz (admitted *pro hac vice*)
Neal Gerber and Eisenberg LLP

Two North LaSalle St. Ste. 1700
Chicago, IL 60602
Telephone: 312.827.1473
Fax: 312.980.0803
amay@nge.com
cwoghiren@nge.com
*Attorneys for Defendant Solo Cup Operating
Corporation*

*/s/ Mark A. Johnston*
Mark A. Johnston
Jessica Ashley Glajch
Eckert Seamans Cherin & Mellott LLC
1717 Pennsylvania Avenue, 12th Floor
Washington, DC 20006
Telephone: 202.659.6672
Fax: 202.659.6699
mjohnston@eckertseamans.com
jglajch@eckertseamans.com

David Andrew Rockman (admitted *pro hac vice*)
Eckert Seamans Cherin & Mellott LLC
600 Grant St., 44th Fl.
Pittsburgh, PA 15219
Telephone: 412.566.1999
Fax: 414.566.6099
drockman@eckertseamans.com
*Attorneys for Defendant ViacomCBS, Inc.*

*/s/ William Andrew Baker*
William Andrew Baker
Daniel T McKillop (admitted *pro hac vice*)
Monica P Schroeck (admitted *pro hac vice*)
Scarinci Hollenbeck
1100 Valley Brook Avenue, P.O. Box 790
Lyndhurst, NJ 07071-0790
Telephone: 201.896.7213
Fax: 201.896.8660
wbaker@sh-law.com
dmckillop@sh-law.com
mschroeck@sh-law.com
*Attorneys for Defendant Vornado Realty Trust*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of December 2021, I served Defendants' joint opposition regarding arranger liability to Plaintiff's Motion for Leave to Amend Complaint by filing the same via ECF to distribute to all counsel of record.

/s/ Stephen E. Fitzgerald
Stephen E. Fitzgerald

26