IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| 68TH STREET SITE WORK GROUP | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-03385-SAG |
| | ) | |
| 7-ELEVEN, INC., *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF SECOND
CORRECTED MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**

Plaintiffs, by and through counsel, respectfully submit the following Reply in Support of Second Corrected Motion for Leave to File an Amended Complaint (the "Motion") (Dkt. No. 828).

Dated:    January 13, 2021

Respectfully submitted,

Rachel D. Guthrie    admitted *pro hac vice*
Matthew T. Merryman  admitted *pro hac vice*
4100 Terrace St.
Kansas City, MO  64111
Telephone: (816) 608-2760
Facsimile:  (816) 683-1743
Email: rguthrie@justislawfirm.com
         mmerryman@justislawfirm.com

Stuart D. Kaplow
Bar Number 05282
James Kelly-Lieb
Bar Number 20420
Stuart D. Kaplow, P.A.
11426 York Road, 1st Floor
Cockeysville, MD 21030
(410) 339-3910 Telephone
(410) 415-7161 Facsimile
Email: skaplow@stuartkaplow.com
        jkellylieb@kenny-law.com

ATTORNEYS FOR PLAINTIFFS

# TABLE OF CONTENTS

BACKGROUND ......................................................................................................................... 1

LEGAL STANDARD............................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I.      Plaintiffs Adequately Allege that the 68th Street Site is a Facility...................................... 2

II.     Plaintiffs Adequately Allege that there has been a Release or Threatened
        Release .............................................................................................................................. 6

III.    Plaintiffs Adequately Allege that Each Defendant is an "Arranger"................................... 9

        A.      Plaintiffs Specifically Allege Each Defendant's "Hazardous
                Substances".......................................................................................................... 9

        B.      The Material Disposed Need not be Itself a Hazardous Substance ..................... 11

        C.      Knowledge of Hazardous Substances is not an Element of
                Arranger Liability .............................................................................................. 12

        D.      The Useful Product Standard does not Apply to Disposal at a
                Dump.................................................................................................................. 14

        E.      Plaintiffs Adequately Allege Ownership and Possession of Waste..................... 16

        F.      Plaintiffs Adequately Allege Vornado Realty's Operations and
                Hazardous Substances from Retail and Office Waste ......................................... 19

        CONCLUSION.................................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*Agere Sys., Inc., v. Advanced Envtl. Tech. Corp.*, No. 02-3830, 2007 WL 9707449
(E.D. Pa. Oct. 29, 2007) ...................................................................................... 12

*Allied Towing v. Great E. Petroleum Corp.*, 642 F. Supp. 1339 (E.D. Va. 1986) ......................... 8

*Appleton Papers Inc. v. George A. Whiting Paper Co.,* WL 2704920 (E.D. Wis.
July 3, 2012) ........................................................................................................ 15

*B.F. Goodrich v. Betkoski*, 99 F.3d 505 (2nd Cir. 1996) ............................................................. 13

*BP Exploration & Oil, Inc. (93-3310) v. U.S. E.P.A.*, 66 F.3d 784 (6th Cir. 1995) ...................... 4

*Bryant v. Colonial Pipeline Co.*, 699 F. Supp. 546 (W.D. Va. 1987) ........................................... 8

*Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599 (2009) .................................. 14

*Consolidation Coal Co. v. Ga. Power Co.*, 781 F.3d 129 (4th Cir. 2015) ................................... 14

*Covington v. Jefferson Cnty.*, 358 F.3d 626 (9th Cir. 2004) ....................................................... 13

*Franklin v. Tri-County Council for Lower E. Shore of Md.*, No. ELH-15-00786,
2015 WL 3610307 (D. Md. June 5, 2015) ............................................................. 4

*Galveston-Houston Ass'n for Smog Prevention (GHASP) v. U.S. E.P.A.*, 289
Fed.Appx. 745 (5th Cir. 2008) .............................................................................. 4

*Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*, 840 F. Supp. 2d 1013 (S.D. Ohio
2011) .................................................................................................................... 15

*In re Triangle Capital Corp. Sec. Litig.*, 988 F.3d 743 (4th Cir. 2021) ........................................ 1

*James v. Acre Mortg. & Fin., Inc.*, 306 F. Supp. 3d 791 (D. Md. 2018), *rev'd on
other grounds by Edmonson v Eagle Nat'l Bank*, 922 F.3d 535 (4th Cir. 2019) ...................... 4

*LCCS Grp., v. A.N. Webber Logistics, Inc.*, 341 F. Supp. 3d 847 (2d Cir. 1996) ....................... 11

*Midshore Riverkeeper Conservancy, Inc. v. Franzoni*, 429 F. Supp. 3d 67 (D. Md.
2019) ...................................................................................................................... 1

*New York v. Nat'l Serv. Indus., Inc.*, 352 F.3d 682 (2d Cir. 2003) ............................................. 13

*Palin v. N.Y. Times Co.*, 940 F.3d 804 (2d Cir. 2019) .................................................................. 4

*Penn. v. Union Gas. Co.*, 491 U.S. 1 (1989) ............................................................................... 13

*Pfohl Bros. Landfill Site Steering Com. v. Allied Waste Sys., Inc.*, 255 F. Supp. 2d
134 (W.D.N.Y. Mar. 27, 2003) .............................................................................. 16

*Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44 (1996) ..................................................................... 14

*Shanty Town Assoc. Ltd. P'ship v. E.P.A.*, 843 F.2d 782 (4th Cir. 1988) .................................... 4

*Town of Islip v. Datre*, 245 F. Supp. 3d 397 (E.D. N.Y. 2017) ................................... 13

*United States v. Atlas Minerals and Chems., Inc.*, Civ. A. No. 91-5118, 1995 WL
    510304 (E.D. Pa. Aug. 22, 1995)........................................................................... 19

*United States v. Carolawn Co., Inc.*, Civil Action No. 83-2162-0, 1984 WL
    1083051 (D. S.C. June 15, 1984)......................................................................... 12

*United States v. Cello-Foil Prods., Inc.*, 100 F.3d 1227 (7th Cir. 1996)..................... 15

*United States v. Dico*, 920 F. 3d 1174 (8th Cir. 2019) .............................................. 15

*United States v. Gen. Elec. Co.*, 670 F.3d 377 (1st Cir. 2012) ................................... 15

*United States v. Iron Mountain Mines, Inc.*, 881 F. Supp. 1432 (E.D. Cal. 1995)....... 17

*United States v. N.E. Pharm. and Chem. Co.*, 810 F.2d 726 (8th Cir. 1986) ............. 13

*United States v. Wade*, 577 F. Supp. 1326 (E.D. Pa. 1983)....................................... 12

## STATUTES

42 U.S.C. § 9601(9) ................................................................................................. 2

484 U.S. 848 (1987)................................................................................................ 13

## RULES

FED. R. EVID. 801 ..................................................................................................... 4

## BACKGROUND

Plaintiffs reiterate the procedural background and facts stated in their Motion. *See* Pl.

Mot. (Dkt. No. 828). Plaintiffs further state that on December 16, 2021, Defendants C&I

Leasing, Inc. ("C&I Leasing"), Alban Tractor LLC ("Alban Tractor"), The Rukert Terminals

Corporation ("Rukert Terminals"), Solo Cup Operating Corporation ("Solo Cup"), ViacomCBS,

Inc. ("ViacomCBS"), and Vornado Realty Trust ("Vornado Realty") (collectively, "Defendants")

filed a Response Memorandum in Opposition (the "Response") (Dkt. No. 850), arguing that the

proposed amendments would be futile. Plaintiffs respectfully submit this Reply.[1]

## LEGAL STANDARD

Absent "prejudice, bad faith, or futility," a court should grant leave to amend. *In re*

*Triangle Capital Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021). Although leave to amend

is not automatic, Rule 15(a) is to be interpreted liberally by district courts. *Id*. To determine if an

amendment would be futile, district courts inquire whether a proposed amended complaint would

satisfy the requirements of Rule 12(b)(6). *Id.* (citing *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d

462, 471 (4th Cir. 2011)). To survive a motion to dismiss under Rule 12(b)(6), a complaint must

contain facts sufficient to "state a claim to relief that is probable on its face." *Midshore*

*Riverkeeper Conservancy, Inc. v. Franzoni*, 429 F. Supp. 3d 67, 72 (D. Md. 2019) (citing *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, a plaintiff need not include

"detailed factual allegations." *Id.* (citing *Twombly*, 550 U.S. at 555). A complaint must set forth

"enough factual matter (taken as true) to suggest a cognizable cause of action, even if . . . [the]

---

[1] The 68th Street Work Group recognizes that the Group as a whole is technically still the "Plaintiff" even though the proposed Amended Complaint names individual members as Plaintiffs. For ease of reference and out of deference to the Court's previous rulings, the 68th Street Work Group members that are named Plaintiffs in the proposed Amended Complaint will refer to themselves collectively as "Plaintiffs" in this Reply.

actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id*. at 73 (citing *Twombly*, 550 U.S. at 556 (internal citation and quotation omitted)). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *Id*. (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)) (citation omitted). Courts generally do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Id*. (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999)).

## ARGUMENT

### I.    Plaintiffs Adequately Allege that the 68th Street Site is a Facility

Defendants' argument that Plaintiffs have failed to plead that the 68th Street Site is a facility at which Defendants arranged for disposal is without merit. "Facility" is defined in CERCLA Section 101(9) as "any building, structure, installation, equipment, pipe or pipeline" or "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed . . . ." 42 U.S.C. § 9601(9). Defendants contend that Plaintiffs make the broad allegation that "the 68th Street Site is a facility within the meaning of Section 101(9) of CERCLA." While this allegation is included within the proposed Amended Complaint, it is far from the only relevant allegation. Examples of such additional allegations include:

> Plaintiffs assert there has been a release and/or threat of release of hazardous substances from a facility known as the 68th Street Site Superfund Alternative Site located in the Rosedale Area of Baltimore County and City of Baltimore, Maryland ("68th Street Site" or "Site"). These hazardous substances have contaminated the soil and groundwater at the 68th Street Site and have threatened public health and the environment. (Am. Compl. ¶ 1);

> The 68th Street Site is an aggregate of seven landfills and encompasses approximately 239 acres, nearly 118 acres of which are streams and wetlands. The

68th Street Site is in a mixed industrial, commercial and residential area of Baltimore County, crossing the border with Baltimore City in Rosedale, Maryland. The 68th Street Site is transected near the western boundary in a north-south direction by Interstate Route 95, and is transected in an east-west direction by Moores Run. Additional waterways include Herring Run and Redhouse Run. Herring Run discharges into the Back River about 1,500 feet downstream of the 68th Street Site, which ultimately flows into the Chesapeake Bay. (Am. Compl. ¶ 4);

The 68th Street Site has been organized into five Management Areas ("MAs") identified as MA-A, MA-B, MA-D, MA-E and MA-F, with MA-C having been combined into MA-F. (Am. Compl. ¶ 5);

With the exception of MA-A, waste disposal activities occurred between the, waste disposal activities occurred between the 1950s and early 1970s under various landfill operating permits. The landfill activities involved filling of low-lying and wetland areas and disposal of solid and liquid municipal, industrial and commercial wastes. Industrial wastes have been documented to include construction debris, paints, ash, sludges, and other materials from east Baltimore industrial and municipal operations. There is surface debris across much of the 68th Street Site, including metal, concrete, brick and masonry, rubber products and construction/demolition debris (Am. Compl. ¶ 6).

Additionally, Plaintiffs' allegations specifically describe, *inter alia*, various "buildings," "structures," "installations" and "equipment," such as a "concrete plant" and "tire pond" (¶ 8), lagoons (¶ 9) and "vehicles, trailers and equipment" abandoned on Site (¶ 11). All these allegations, taken as true and construed in the light most favorable to Plaintiffs, demonstrate that the Site is a "site or area where a hazardous substance has been deposited, stored, disposed of, or placed."

Moreover, this Court implicitly acknowledged that the Site is a "facility" in its September 16, 2021 Memorandum Opinion (Dkt. No. 786). There, the Court noted that the MSW exemption could not apply because U.S. EPA was handling the Site under the Superfund Alternative Approach instead of as an NPL site. *Id*. at 50. The Court also cited

3

in its Memorandum the RI/FS AOC and the RD/RA Consent Decree. *Id*. at 4.[2] These

documents are also referenced in the proposed Amended Complaint and are part and

parcel of Plaintiffs' allegations.[3] In the RI/FS AOC, U.S. EPA expressly stated "[t]he

68th Street Dump Superfund Site is a 'facility' as defined in Section 101(9) of

CERCLA." RI/FS AOC ¶ 19. The U.S.  EPA's factual determinations warrant deference

by a reviewing court. *See, e.g.*, *Shanty Town Assoc. Ltd. P'ship v. E.P.A.*, 843 F.2d 782,

790, 795 (4th Cir. 1988) (EPA factual findings under Clean Water Act warrant

"considerable deference"); *BP Exploration & Oil, Inc. (93-3310) v. U.S. E.P.A.*, 66 F.3d

784, 795 (6th Cir. 1995) (noting special deference to U.S. EPA "concerning scientific and

technical data"); *Galveston-Houston Ass'n for Smog Prevention v. U.S. E.P.A.*, 289

Fed.Appx. 745, 749 (5th Cir. 2008) (deferring to U.S. EPA, but noting heightened

deference for complex scientific findings as opposed to simple findings of fact). There

---

[2] Both of these documents are publicly available. The RI/FS AOC is available as a PDF on U.S. EPA's website at https://semspub.epa.gov/work/03/2157748.pdf. The RD/RA Consent Decree is a record of this Court and is also available as a PDF on U.S. EPA's website at https://semspub.epa.gov/work/03/2250477.pdf and on Plaintiffs' counsel's website at https://www.justislawfirm.com/cases/68th-street-site/. Plaintiffs request the Court take judicial notice of these documents. The Court may take judicial notice of these documents because they are public records "generally known within the court's territorial jurisdiction" within the meaning of Fed. R. Evid. 801 *See, e.g.*, *James v. Acre Mortg. & Fin., Inc.*, 306 F. Supp. 3d 791, 799 (D. Md. 2018), *rev'd on other grounds by Edmonson v Eagle Nat'l Bank*, 922 F.3d 535 (4th Cir. 2019).

[3] These documents are referenced in the Amended Complaint and form a basis of Plaintiffs' claims, they are integral to the pleadings and should be considered without converting the motion to one for summary judgment. *E.g.*, *Franklin v. Tri-County Council for Lower E. Shore of Md.*, No. ELH-15-00786, 2015 WL 3610307, *2 (D. Md. June 5, 2015) (citing Fed. R. Civ. P. 12(d), 56). "To be 'integral,' a document must be one that by its very existence, *and not the mere information it contains*, gives rise to the legal rights asserted." *Id*. (citing *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point*, LLC, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (internal quotation omitted) (emphasis in original); *see also Palin v. N.Y. Times Co.*, 940 F.3d 804, 811 (2d Cir. 2019) ("A matter is deemed 'integral' to the complaint when the complaint 'relies heavily upon its terms and effect.' Typically, an integral matter is a contract, agreement, or other document essential to the litigation") (citation omitted). These administrative documents are the contracts by which Plaintiffs are incurring response costs at the Site.

can be no question on the merits that the Site is a "facility," and Plaintiffs have certainly met the pleading standard under Rule 12(b)(6).

Defendants' reliance on *Nurad* is misplaced because there the legal question was whether the *Nurad* site was a "facility" for purposes of owner/operator liability, not arranger liability. Joint Mem., at 9–10 (Dkt. No. 850) (citing *Nurad, Inc. v. William E. Hooper & Sons Co.*, 966 F.2d 837 (4th Cir. 1992)). Operator liability is inherently different than arranger liability in that the operator liability is location-specific, whereas an arranger is strictly liable for any hazardous substances it sends to a contaminated facility, regardless of their location within the facility.

Further, *Nurad* is factually distinguishable. In *Nurad*, the only "areas" where hazardous substances had come to be located were certain storage tanks. *Nurad*, 966 F.2d at 842–43. The *Nurad* site had been subdivided, similarly to the 68th Street Site, but many of the subdivisions were rented out to tenants who had no involvement with materials containing hazardous substances. *Id*. The *Nurad* court was concerned about avoiding imposition of liability under CERCLA upon operators of subdivisions of a facility who were uninvolved with any environmental harm and were "powerless to act." *Id*. Here, as detailed in Plaintiffs' allegations, the Site was split into five management areas, all of which except MA-A were used for landfill activities, and even MA-A was also used as a "junkyard" after it ceased operations as a concrete plant. *See* Am. Compl. ¶¶ 4–11. Hazardous substances have been identified throughout the Site after its long tenure of operations as a landfill, leading to soil and groundwater contamination. *Id*. ¶¶ 1, 13, 19, 20, 24. None of the Defendants is alleged to have been an owner or operator of any portion of the Site, so the harm is not divisible, and there is no obligation under CERCLA

to "fingerprint" the exact location of any of the Defendants' wastes. *Nurad,* 966 F.2d at 846 (reiterating the 4th Circuit has rejected a requirement that "a CERCLA plaintiff prove a nexus between waste sent by a particular defendant to a particular site and the resulting environmental harm," and noting that "[t]o require a plaintiff under CERCLA to 'fingerprint' wastes is to eviscerate the statute.") (internal citation omitted).

Moreover, the *Nurad* decision is procedurally distinguishable. Contrary to the representation by Defendants, the *Nurad* court did not assess the sufficiency of the allegations under Rule 12(b)(6). *See* Joint Mem., at 10 (Dkt. No. 850). Rather, the *Nurad* ruling was a determination on the merits of whether certain subsections of the *Nurad* site were within the definition of the "facility." *Id*. To use this holding at the pleadings phase as a shield for arrangers who overtly sent materials containing hazardous substances to the Site would warp the purpose behind CERCLA and blunt a powerful instrument in environmental response. As stated by the very *Nurad* opinion cited by Defendants, "[t]his circuit has been careful not to vitiate what was intended as remedial legislation by erecting barrier upon barrier on the road to reimbursement of response costs." *Nurad*, 966 F.2d at 846.

In sum, Plaintiffs thoroughly allege the Site is a "facility," which is a judicially-noticeable factual determination by the U.S. EPA that warrants deference. The Defendants cite no applicable case to the contrary and their argument on this point should be rejected.

## II.    Plaintiffs Adequately Allege that there has been a Release or Threatened Release

Defendants' argument that Plaintiffs have failed to plead facts that there has been a release or threatened release of hazardous substances at the Site is without merit. "Release" is

defined in CERCLA Section 101(22) as "any spilling, leaking, pumping, pouring, emitting,

emptying, discharging, injecting, escaping, leaching, dumping or disposing into the environment

(including the abandonment or discarding of barrels, containers, and other closed receptacles

containing any hazardous substance or pollutant or contaminant) . . . ." Defendants argue that

Plaintiffs make only the conclusory, broad allegation that there has been a release and/or

threatened release of a hazardous substance at the Site. While this allegation is included within

the proposed Amended Complaint, it is far from the only relevant allegation. Examples of other

allegations include:

> This is a civil action pursuant to the provisions of the Comprehensive
> Environmental Response, Compensation and Liability Act of 1980, as amended
> 42 U.S.C. § 9601 et se. ("CERCLA"). Plaintiffs assert there has been a release
> and/or threat of release of hazardous substances from a facility known as the 68th
> Street Site Superfund Alternative Site located in the Rosedale Are of Baltimore
> County and City of Baltimore, Maryland ("68th Street Site" or "Site"). These
> hazardous substances have contaminated the soil and groundwater at the 68th
> Street Site and have threatened public health and the environment. (Am. Compl. ¶
> 1);

> Three emergency removal actions were performed at the 68th Street Site in the
> 1980s. In 1981, there was a drum removal action in MA-B. In 1984, ten (10) 55-
> gallon drums protruding from the hillside of the Redhouse Run Landfill were
> removed from the 68th Street Site. In 1985, an emergency response removed at
> least forty (40) 55-gallon drums from the Island Landfill following a fire. (Am.
> Compl. ¶ 13);

> Between June 26, 2008 and December 2, 2008, a Non-Time Critical Removal
> Action was conducted to remove surface materials and containers that had
> exhibited elevated chemical concentrations to reduce the risk to trespassers and
> on-Site workers. (Am. Compl. ¶ 20);

> Hazardous substances identified at the 68th Street Site include, but are not limited
> to: metals, including arsenic, barium, lead, and selenium; polychlorinated
> biphenyls ("PCBs"); polycyclic aromatic hydrocarbons ("PAHs") including
> benzo(a)pyrene, benso(a)anthracene, benzo(b)fluoranthene,
> dibenzo(a,h)anthracene; pesticides including dieldrin and DDx, comprising

isomers of dichlorodiphenyltrichloroethane ("DDT"),
dichlorodiphenyldichloroethylene ("DDE") and dichlorodiphenyldichloroethane
("DDD"); dieldrin; endrin; heptachlor epoxide; thallium; and zinc. (Am. Compl.
24);

Plaintiffs further allege, *inter alia*, that there were lagoons used for liquid waste disposal (¶ 8),

and that fill material was placed along a stream in an environmentally sensitive ecosystem (¶ 11).

These allegations, taken as true and construed in the light most favorable to Plaintiffs, with all

reasonable inferences drawn therefrom, demonstrate that there has been a release of hazardous

substances into the environment at the Site. Specifically, Plaintiffs have alleged that hazardous

substances have been identified throughout the Site and contaminated the soil and groundwater

at the Site. This is enough to show that a release has occurred. This distinguishes the Site from

those in the cases cited by Defendants, which focus on hazardous substances that appeared to

either (1) have been contained within drums or other containers such that there was no "release"

and/or (2) have not caused any economic harm. *Allied Towing v. Great E. Petroleum Corp.*, 642

F. Supp. 1339, 1350 (E.D. Va. 1986) (holding that a plaintiff cannot recover from a facility

owner damages associated with the removal of barrels of materials containing hazardous

substances when there has been no release or threat of release of those substances to cause

economic harm); *Bryant v. Colonial Pipeline Co.*, 699 F. Supp. 546, 549 (W.D. Va. 1987)

(holding that a plaintiff can not recover under CERCLA for the costs associated with upgrading a

facility to store hazardous substances when the plaintiff has not alleged that there has been a

release or threatened release of those hazardous substances into the environment).

Furthermore, U.S. EPA also made the determination in the RI/FS AOC that "[t]he

contamination found at the Site . . . includes 'hazardous substances' as defined in Section

101(14) of CERCLA . . . ." RI/FS AOC ¶ 20. U.S. EPA expressly concluded that the

conditions at the Site "constitute an actual and/or threatened 'release' of a hazardous

substance from the Facility as defined in Section 101(22) of CERCLA . . . ." *Id.* at ¶ 21.
For the reasons argued above, the Court should take judicial notice of these findings,
which are part and parcel of Plaintiffs' allegations, and which warrant deference from this
Court. There can be no question on the merits that there has been a "release" and
Plaintiffs have certainly met the Rule 12(b)(6) standard. Plaintiffs have thoroughly
alleged a "release," which is also a judicially-noticeable factual determination by the U.S.
EPA that warrants deference. The Defendants cite no applicable case to the contrary and
their argument on this point should be rejected.

III.    **Plaintiffs Adequately Allege that Each Defendant is an "Arranger"**

Defendants argue that Plaintiffs have not proven *on the pleadings* that each Defendant
had actual knowledge of the hazardous quality of the material it sent to the Site, and thus
Plaintiffs have failed to establish the requisite intent for arranger liability, citing the Court's
September 16, 2021 Order and Memorandum Opinion (Dkt. Nos. 786 and 787). Defendants'
interpretation of the Court's Memorandum and Order would stand in direct contrast to the strict
liability scheme imposed by CERCLA. Plaintiffs have adequately pled each Defendant's
arranger liability.

A.    **Plaintiffs Specifically Allege Each Defendant's "Hazardous Substances"**

Defendants Alban Tractor, C&I Leasing, Solo Cup, and Vornado Realty each argue that
Plaintiffs do not identify any specific hazardous substances that Alban Tractor owner or
possessed and arranged for the disposal of, and instead hide behind only the term "hazardous

substance."[4] This is false. Plaintiffs adequately and specifically allege each Defendant's

hazardous substances as follows:

**Alban Tractor:** In addition to the hazardous substances associated with construction equipment sales and repair, Alban Tractor's waste streams consisted of equipment maintenance waste and general office waste, which contained the following hazardous substances: acetone, arsenic, benzene, cadmium, chromium, copper, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylene, and zinc. (Am. Compl., ¶ 50).

**C&I Leasing:** In addition to the hazardous substances associated with beverage manufacturing and distribution, the waste streams attributable to Allegheny Pepsi-Cola Bottling Company and Pepsi Cola Bottling Co. also consisted of food processing waste, printing waste, transportation waste and general office waste, which contained the following hazardous substances: acetone, barium, benzene, cadmium, chromium, copper, dichlorobenzene, dichloroethylene, ethyl benzene, lead, manganese, methyl ethyl ketone, methylene chloride, nickel, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylene, and zinc. (Am. Compl., ¶ 78).

**Solo Cup:** In addition to the hazardous substances associated with the manufacture and distribution of disposable consumer products, Maryland Cup Corp., MD Cupcorp, MD Cup Corp., Solo Cup Co. and Sweetheart Cup's waste streams consisted of fabrication waste, retail waste and general office waste, which contained the following hazardous substances: acetone, benzene, cadmium, copper, dichloroethylene, lead, mercury, methyl ethyl ketone, methylene chloride, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylene, and zinc. (Am. Compl., ¶ 197).

**Vornado Realty:** In addition to the hazardous substances associated with the business of retail sales and appliance manufacturing and sales, the waste streams attributable to Two Guys, Two Guys Eudowood and Vornado, Inc. also consisted of at least residential and general office waste, which contained the following hazardous substances: acetone, benzene, cadmium, dichloroethylene, lead, methyl

---

[4] To the extent any other Defendant intended to make this same argument, Plaintiffs incorporate as if fully stated herein their response as to the other Defendants referenced above. Plaintiffs' detailed hazardous substances allegations for Rukert Terminals and ViacomCBS are at ¶¶ 139 and 235, respectively.

ethyl ketone, methylene chloride, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylene, and zinc. (Am. Compl., ¶ 254).

These lists, especially with all inferences drawn in Plaintiffs' favor, cannot be considered a failure to identify any hazardous substance.

### B.    The Material Disposed Need not be Itself a Hazardous Substance

In addition to the specific lists of hazardous substances, Plaintiffs also alleged certain types of waste streams attributed to each Defendant known to contain hazardous substances, such as, *inter alia*, metal, oily rags, or floor sweepings. Defendants suggest this is insufficient and that Plaintiffs must instead allege a hazardous substance exactly as it appears on EPA's list of hazardous substances. Demanding allegations directly patterned on the statutory and regulatory text is the exact type of formulaic recitation that Defendants argue is improper in every other circumstance. It is also not required by CERCLA.

It is hornbook law that a material disposed need not be itself a listed hazardous substance to trigger CERCLA liability for disposal of hazardous substances, with some distinction between solid and liquid wastes. Regarding solid wastes, if a "disposed-of waste is not itself a hazardous substance" but "if separating out those hazardous substances is at all possible, even only upon the intrusion of an intervening force, then the defendant may be susceptible to liability." *LCCS Grp., v. A.N. Webber Logistics, Inc.*, 341 F. Supp. 3d 847, 854 (citing *B.F. Goodrich v. Betkoski*, 99 F.3d 505, 516 (2d Cir. 1996)) (contrasting with wastes where hazardous substances are "irreversibly bound" such that they cannot be released). Regarding liquid wastes and mixed wastes, "whether a material is hazardous under CERCLA depends on the character of its constituents. If a waste material contains hazardous substances, then the waste material is itself a hazardous substance for purposes of CERCLA. To distinguish a waste solution or mixture from its hazardous constituents defies reason." *United States v. Carolawn Co., Inc.*, Civil Action No.

83-2162-0, 1984 WL 1083051, *2 (D. S.C. June 15, 1984); *see also Agere Sys., Inc., v. Advanced Envtl. Tech. Corp.*, No. 02-3830, 2007 WL 9707449, *5 (E.D. Pa. Oct. 29, 2007) ("If the industrial waste solution contained hazardous substances, it itself was hazardous . . ."); *United States v. Wade*, 577 F. Supp. 1326, 1340 (E.D. Pa. 1983) (mixture of wastes containing any quantity or concentration of a 'hazardous substance' is itself a hazardous substance).

Although certain waste streams Plaintiffs allege for each Defendant are not *per se* hazardous substances, Plaintiffs also allege the specific listed hazardous substances attributable to each Defendant based on the individual waste streams identified and based on the industries in which each Defendant is engaged. Here, to the extent the wastes alleged were solid wastes, there is no indication hazardous substances therein were "irreversibly bound," and there is every indication that they were released at the Site. The exact list of hazardous substances ultimately attributable to each Defendant may change after discovery. But Plaintiffs' allegations are more than sufficient to withstand Rule 12(b)(6).

### C.   Knowledge of Hazardous Substances is not an Element of Arranger Liability

Parties that arrange for *disposal*—as opposed to sellers of *useful products*[5]—do not have to know their waste contains hazardous substances to be liable under CERCLA. Defendants' reliance on *Datre* on this point is misplaced. There, in addition to vast procedural differences with this case and the application of the useful product doctrine not at issue here, the district court wrongly concluded that the primary purpose of arranger liability is deterrence. *Town of*

---

[5] Plaintiffs do not admit that sellers of a product must know their products contain hazardous substances to be held liable if the sale constituted a disposal. However, Plaintiffs acknowledge that some courts analyzing the useful product doctrine have considered whether a generator knew its waste contained hazardous substances in order to assess whether the intent was for disposal or sale. This is irrelevant to "traditional" disposal at a landfill such as the Site since waste itself is not a useful product, nor is intended to be included as useful products for such courts.

*Islip v. Datre*, 245 F. Supp. 3d 397, 422–23 (E.D. N.Y. 2017). Deterrence and prevention is the purpose of RCRA's proactive, cradle-to-grave regulatory scheme. *E.g.*, *Covington v. Jefferson Cnty.*, 358 F.3d 626, 639 (9th Cir. 2004) (RCRA fines serve as credible deterrent against future violations). But remediation is the primary purpose of CERCLA's retroactive, strict liability scheme. *See United States v. N.E. Pharm. and Chem. Co.*, 810 F.2d 726, 733 (8th Cir. 1986), *cert denied*, 484 U.S. 848 (1987) (CERCLA's overwhelmingly remedial scheme, while imposing liability based on a past act, is not a deterrent). CERCLA is a retroactive statute designed to address legacy contamination, and to meet its ends, CERCLA imposes strict liability without no *mens rea* requirement. In many cases, such as at this Site, the disposal at issue occurred decades before modern environmental laws, at a time when little, if anything, was known about the chemical constituents in waste. Indeed, as Plaintiffs have alleged in the proposed Amended Complaint, the U.S. EPA, RCRA or CERCLA (inclusive of its definition of "hazardous substance") did not even come into existence until *after* the Site had ceased accepting waste. *See* Am. Compl., ¶¶ 28–32. "Strict liability is intended to make sure that those who 'benefit financially from a commercial activity' internalize the environmental costs of the activity as a cost of doing business." *B.F. Goodrich v. Betkoski*, 99 F.3d 505, 514 (2nd Cir. 1996), *overruled on other grounds by New York v. Nat'l Serv. Indus., Inc.*, 352 F.3d 682, 685 (2d Cir. 2003) (citing S. Rep. 848, 96th Cong., 2d Sess. 13 (1980)). Although ignorance of hazardous substances may have been common in the 1960s before modern environmental laws, Congress saw fit to impose strict, retroactive liability on industries that generated them, for the good of all. "The remedy that Congress felt it needed in CECLA is sweeping: *everyone* who is potentially responsible for hazardous-waste contamination may be forced to contribute to the costs of cleanup." *Penn. v. Union Gas. Co.*, 491 U.S. 1, 21 (1989) (plurality op of Brennan, J. (emphasis

in original), *overruled on other grounds*, *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44 (1996).

Requiring a CERCLA plaintiff to prove that a defendant knew its waste contained hazardous

substances—particularly in a case such as this where "hazardous substances" by law did not yet

exist—would create a novel ruling that effectively eviscerates the CERCLA statute itself and

externalizes environmental costs. Surely, this cannot be the intent of the Court's Memorandum

and Order. Defendants' arguments to the contrary are self-serving. Such a position adopted by

this Court in the modern era would encourage willful ignorance by generators of the contents of

their own waste streams, an untenable position in CERCLA's remedial statutory scheme.[6]

### D.    The Useful Product Standard does not Apply to Disposal at a Dump

The Defendants—particularly Rukert Terminals, Solo Cup, and ViacomCBS[7]—argue

Plaintiffs failed to properly allege their intent to dispose of waste at the Site. Defendants'

interpretation of *Burlington Northern* and the Court's Memorandum and Order is too narrow to

give effect to the purpose of CERCLA. Arranging for treatment or disposal, or arranging for

transport for treatment or disposal, of waste containing hazardous substances, at the facility

containing such hazardous substances, triggers arranger liability under Section 107(a) (3). *See,*

*e.g., Consolidation Coal Co. v. Ga. Power Co.*, 781 F.3d 129, 149 (4th Cir. 2015). Under the

plain language of CERCLA, an entity qualifies as an arranger under Section 107(a)(3) when it

takes intentional steps to dispose of a hazardous substance. *Burlington N. & Santa Fe Ry. Co. v.*

*United States*, 556 U.S. 599, 611 (2009). The Court, in its Memorandum and Order, gleans from

*Consolidation Coal* and *Burlington Northern* that intent and state of mind are important

---

[6] By comparison, willful ignorance precludes application of the innocent-party defense
under Section 107(b) of CERCLA, 42 U.S.C. 9607(b). *See Adobe Lumber, Inc. v. Hellman*, 658
F. Supp. 2d 1188, *1207 (E.D. Cal. 2009) (collecting cases including, *inter alia*, *United States v.*
*Monsanto Co.*, 858 F. 2d 160, 169 (4th Cir. 1988)).

[7] To the extent any other Defendant intended to make this same argument, Plaintiffs
incorporate as if fully stated herein its response as to the other Defendants referenced above.

considerations in an arranger determination. This is consistent with cases such as *General Electric Co.,* which have held that any such determination should be made after a fact-intensive inquiry. *United States v. Gen. Elec. Co.*, 670 F.3d 377 (1st Cir. 2012). Factors which cut against a finding of intent (though they may not preclude it entirely) include the supposed arranger receiving money for the materials sent, the supposed arranger anticipated that the materials would be used in some way, and the actual commercial usefulness of the product. *See Appleton Papers Inc. v. George A. Whiting Paper Co.,* WL 2704920 (E.D. Wis. July 3, 2012); *Burlington N., supra; United States v. Dico*, 920 F. 3d 1174 (8th Cir. 2019)*.* In other words, the question is one of *disposal versus sale*, regardless whether the generator knew the waste contained hazardous substances.

Here, there is no need to engage in a fact-intensive analysis because the Site was a dump and the Defendants did not sell waste as a product. Intent to dispose can be *inferred* in the "traditional" arranger case, where one enters a contract "to directly dispose of a hazardous waste product." *Burlington N.*, 556 U.S. at 607; *see also United States v. Cello-Foil Prods., Inc.*, 100 F.3d 1227, 1231 (7th Cir. 1996) (intent may be inferred from the totality of the circumstances). As customers of the Site, each Defendant is the "traditional" type of arranger described by the Supreme Court in *Burlington Northern* and is thus liable under CERCLA. *Id.* at 610–11 ("It is plain from the language of the statute that CERCLA liability would attach under § 9607(a)(3) if an entity were to enter into a transaction for the sole purpose of discarding a used and no longer useful hazardous substance."). Perhaps the clearest example of liability as an arranger is the party that sends its hazardous substances to a landfill. Implicit in such circumstances is the party's intent to dispose of that waste. *Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*, 840 F. Supp. 2d 1013, 1027 (S.D. Ohio 2011) (finding plaintiff's "allegations unquestionably state a plausible claim

under Section 107 . . . based on the nature of the conduct in question" which "involves a dump and landfill" and that "[a]lthough the word 'intent' is not specifically included in the averment, the state of mind is implied in the very nature of the alleged activity"); *Pfohl Bros. Landfill Site Steering Com. v. Allied Waste Sys., Inc.*, 255 F. Supp. 2d 134, 156 (W.D.N.Y. Mar. 27, 2003) (granting summary judgment where defendant "was a regular Landfill customer" and therefore qualified as an arranger). Here, Defendants purposely discarded their commercially useless waste streams at a dump. This is "the easy case posited by the Supreme Court where CERCLA liability would attach . . ." *Hobart Corp.*, 840 F. Supp. 2d at 1029. And Plaintiffs' allegations, taken as a whole, readily demonstrate intentional disposal of waste containing hazardous substances.

The Defendants also emphasize the Court's statement that many of the defendants named in the original Complaint "engaged in a standard business practice—waste disposal using a local trash collection service." Any argument which calls for a blanket exemption to CERCLA liability for businesses "engaged in a standard business practice" would give no incentive for industries to improve their handling of materials containing hazardous substances.

### E.      Plaintiffs Adequately Allege Ownership and Possession of Waste

Defendants Alban Tractor, C&I Leasing, and Rukert Terminals each argue that Plaintiffs fail to adequately allege that they "owned or possessed" the waste.[8] The *Iron Mountain Mines* case cited by Defendants on this point held that a complaint did not adequately plead arranger liability when it did not "allege that the government operated the mine in such a way that it could be said to possess the waste from the mine" and "there are no additional allegations that would *suggest* that the government *ever* possessed the mining waste." *United States v. Iron Mountain Mines, Inc.*, 881 F. Supp. 1432, 1451 (E.D. Cal. 1995) (emphasis added). *Iron Mountain Mines*

---

[8] To the extent any other Defendant intended to make this same argument, Plaintiffs incorporate as if fully stated herein their response as to the other Defendants referenced above.

specifically focused on the government's limited involvement at the mine, where they did not

have supervision or control over materials and were not directly responsible for arranging the

transportation and disposal of materials. *Id.* The relevant allegations for Alban Tractor are:

> On or about February 12, 1998, a Robb Tyler, Inc. employee identified Alban Tractor as a generator of solid waste or chemicals that were disposed of at the 68th Street Site. (Am. Compl. ¶ 42);

> Alban Tractor is and/or was engaged I the business of construction equipment sales and repair. (Am. Compl. ¶ 49);

> In addition to the hazardous substances associated with construction equipment sales and repair, Alban Tractor's waste streams consisted of equipment maintenance waste and general office waste, which contained the hazardous substances: . . . . (Am. Compl. ¶ 50);

> Alban Tractor knowingly and voluntarily contracted, agreed, or otherwise arranged with Robb Tyler, Inc. with the intent to dispose *of Alban Tractor's waste* during the relevant time period, and such waste contained hazardous substances. (Am. Compl. ¶ 51) (emphasis added).

The relevant allegations as to C&I Leasing are:

> On or about February 12, 1998, a Robb Tyler, Inc. employee identified Pepsi Cola Co. as a generator of solid waste or chemicals that were disposed of at the 68th Street Site. (Am. Compl. ¶ 72);

> Allegheny Pepsi-Cola Bottling Company and Pepsi Cola Bottling Co. are and/or were engaged in the business of beverage manufacturing and distribution. (Am. Compl. ¶ 77);

> In addition to the hazardous substances associated with beverage manufacturing and distribution, the waste streams attributable to Allegheny Pepsi-Cola Bottling Company and Pepsi Cola Bottling Co. also consisted of food processing waste, printing waste, transportation waste and general office waste, which contained the following hazardous substance: . . . . (Am. Compl. ¶ 78);

> Allegheny Pepsi-Cola Bottling Company and Pepsi Cola Bottling Co. knowingly and voluntarily contracted, agreed, or otherwise arranged with Robb Tyler, Inc., and/or a Robb Tyler, Inc. affiliate, with the intent to dispose of *their* waste during the relevant time period, and such waste contained hazardous substances. (Am.

Compl. ¶ 80) (emphasis added).

The relevant allegations as to Rukert Terminals are:

> On or about March 9, 2004, a Robb Tyler, Inc. employee identified Rukert Terminals as a customer of Robb Tyler, Inc. whose waste was disposed of at the 68th Street Site during the time that the 68th Street Site was in operation. (Am. Compl. ¶ 134);

> Rukert Terminals is and/or was engaged in the business of terminal operations and stevedore services. (Am. Compl. ¶ 138);

> In addition to the hazardous substances associated with terminal operations and stevedore services waste, Rukert Terminals' waste streams also consisted of transportation waste and general office waste, which contained the following hazardous substance: . . . . (Am. Compl. ¶ 139);

> Rukert Terminals knowingly and voluntarily contracted, agreed, or otherwise arranged with Robb Tyler, Inc. with the intent to dispose *of Rukert Terminals waste* during the relevant time period, and such waste contained hazardous substances. (Am. Compl. ¶ 140) (emphasis added).

These allegations, taken as true within the Complaint as a whole, and drawn in Plaintiffs' favor, expressly state and allow for the reasonable inference that each Defendant (or its alleged predecessors) owned or possessed the waste it arranged to be disposed at the Site.

Further, at least Defendants Alban Tractor and C&I Leasing argue that Robb Tyler, Inc. Service Tickets are alone insufficient to establish arranger liability. Plaintiffs' allegations about the Service Tickets are but a subset of the allegations, which are to be taken as a whole. No single service ticket allegation is intended to establish arranger liability alone. But the evidence Plaintiffs cite in their allegations, including the Service Tickets, easily allow for an inference that each Defendant owned and/or possessed their waste streams that were disposed of at the Site.

F.       **Plaintiffs Adequately Allege Vornado Realty's Operations and Hazardous Substances from Retail and Office Waste**

Vornado Realty argues that it was not a "manufacturer." The allegations in the original Complaint state that Vornado Realty is in the business of real estate development, which is an accurate statement of its current operations. *See* Compl., ¶ 1157 (Dkt. No. 1). However, Plaintiffs identified facts through additional research during the course of this litigation that Vornado Realty's predecessors, Two Guys and/or Two Guys Eudowood historically operated retail department stores selling appliances and furniture that may have also included a manufacturing element. Therefore, Plaintiffs modified the allegations in the proposed Amended Complaint to be more accurate about Vornado Realty's operations at the relevant time period. Plaintiffs are entitled to allege on information and belief. If Vornado Realty did not, in fact, manufacture appliances, it can establish that on the merits, which may affect the precise list of hazardous substances. But it would by no means result in *no* hazardous substances. Contrary to Vornado Realty's assertions, retail and office waste do regularly contain hazardous substances (such as ink, cleaning supplies, used batteries, etc.). *See generally, Betkoski*, 99 F.3d 505 (reversing district court ruling that liability could not be premised on hazardous substances in office waste, noting comprehensive expert testimony to the contrary); *see also United States v. Atlas Minerals and Chems., Inc.*, Civ. A. No. 91-5118, 1995 WL 510304, **24–25 (E.D. Pa. Aug. 22, 1995) (allocating CERCLA liability to party for, *inter alia*, plant trash that consisted primarily of lunchroom waste and office waste," noting "[t]he fact that Exide's trash included lunchroom waste and office waste inexorably leads to the conclusion that Exide's trash must have included some potato chips," and expert testimony showed potato chips contained at least three listed hazardous substances). Plaintiffs' hazardous substances allegations are based on historic expert

testimony on such waste streams. There is no deficiency in Plaintiffs' allegations in this regard, which must be accepted as true and viewed in the light most favorable to Plaintiffs.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court enter an appropriate order granting Plaintiff's Second Corrected Motion for Leave to File an Amended Complaint, and for such other and further relief as the Court deems just and appropriate under the circumstances.

Dated:    January 13, 2021              Respectfully submitted,


                                        THE JUSTIS LAW FIRM LLC


                                        */s/ Rachel D. Guthrie*
                                        Rachel D. Guthrie        admitted *pro hac vice*
                                        Matthew T. Merryman   admitted *pro hac vice*
                                        4100 Terrace St.
                                        Kansas City, MO  64111
                                        Telephone: (816) 608-2760
                                        Facsimile:  (816) 683-1743
                                        Email: rguthrie@justislawfirm.com
                                                mmerryman@justislawfirm.com


                                        Stuart D. Kaplow
                                        Bar Number 05282
                                        James Kelly-Lieb
                                        Bar Number 20420
                                        Stuart D. Kaplow, P.A.
                                        11426 York Road, 1st Floor
                                        Cockeysville, MD 21030
                                        (410) 339-3910 Telephone
                                        (410) 415-7161 Facsimile
                                        Email: skaplow@stuartkaplow.com
                                                jkellylieb@kenny-law.com

                                        ATTORNEYS FOR PLAINTIFFS

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 13, 2021, a copy of the foregoing Plaintiffs' Reply in

Support of Second Corrected Motion for Leave to File an Amended Complaint was filed

electronically. Notice of this filing will be sent to all parties by operation of the Court's

electronic filing system. Parties may access the filing through the Court's Electronic Case Filing

System.

/s/ Rachel D. Guthrie
Rachel D. Guthrie