IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **BROWNING-FERRIS, INC.,** *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Case No.: SAG-20-3385 |
| | * | |
| **ALBAN TRACTOR LLC,** *et al.*, | * | |
| | * | |
| Defendants. | * | |

* * * * * * * * * * * * *

## MEMORANDUM OPINION

Six corporate Plaintiffs, Browning-Ferris, Inc., Black & Decker (U.S.) Inc., Brunswick Corporation, Cleveland Cliffs Steel Corporation (f/k/a AK Steel Corporation), Crown Cork & Seal Company, Inc., and Exxon Mobil Corporation (collectively "Plaintiffs"), filed a Second Amended Complaint ("SAC") against six remaining defendants: Alban Tractor, LLC ("Alban"), C&I Leasing, Inc. ("C&I"), Paramount Global, Inc. (f/k/a ViacomCBS, Inc.) ("Paramount"), the Rukert Terminals Corporation ("Rukert"), Solo Cup Operating Corporation ("Solo Cup"), and Vornado Realty Trust ("Vornado") (collectively, "Defendants"). ECF 934. Like the original Complaint brought by the 68th Street Site Work Group ("the Work Group") against 156 defendant companies, the SAC seeks recovery under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), for costs Plaintiffs have incurred and will incur in response to the release or threatened release of hazardous substances from the 68th Street Dump Superfund Alternative Site ("68th Street Site," or "Site"). *Compare* ECF 934 *with* ECF 1.

Currently pending are four contested motions, each seeking to dismiss the SAC for different reasons. ECF 952 is a motion filed by Vornado and Paramount to dismiss on standing grounds. ECF 953 is a motion filed by Rukert, Vornado, and Alban seeking to dismiss for failure

to state a CERCLA arranger liability claim. ECF 955 is a motion filed by Solo Cup to dismiss on the basis of successor liability. And ECF 958 is a motion to dismiss by C&I, citing both successor liability and a failure to state a claim. Some Defendants have joined motions filed by others. *See* ECF 971; ECF 955-1 at 11. This Court has reviewed the four pending motions, the attachments, and the oppositions and replies thereto. ECF 962-969. This Court also held a motions hearing on January 29, 2025, at which it heard argument on each motion.

For the reasons stated below, Defendants' motions will be denied, and this Court will set a discovery schedule, beginning with a period of limited discovery on the successor liability issues raised by Solo Cup and C&I.

   **I.    Procedural History**

As referenced above, the original Complaint in this action was filed by an unincorporated association, the Work Group, consisting of twelve member entities. ECF 1 ¶ 27. That Complaint named 156 defendants, many of whom resolved the matter through settlement or entries of default. In 2021, this Court adjudicated a number of motions, granting motions to dismiss and motions for summary judgment on behalf of a number of the remaining defendants. ECF 786, 787. In relevant part, this Court determined that the Work Group could not qualify as the real party in interest in this CERCLA contribution litigation, because the Work Group is not party to the Consent Decree with the EPA and State of Maryland, and the member entities who had assigned their claims to the Work Group had not bound themselves to the judgment. ECF 786 at 51-57. Thus, this Court reasoned, despite the assignment of CERCLA claims from the member entities to the Work Group, the member entities were the real parties in interest. *Id*. at 53-55. *See, e.g.*, *Boarhead Farm Agreement v. Advanced Envtl. Tech. Corp.*, 381 F. Supp. 2d 427, 432 (E.D. Pa. 2005) ("[U]nder [CERCLA], the PRPs [potentially responsible parties] are the real parties in interest, despite the

fact that here, the PRPs paid for remediation by contributing to the Agreement Group which, acting as intermediary, then pooled the funds and paid the contractors conducting the remediation."). This Court permitted amendment of the complaint to rectify the real party in interest issue, expressly reserving the issue of whether the member PRPs lacked standing to sue at the inception of this litigation. ECF 786 at 57 n.15.

The Work Group appealed this Court's rulings on a single issue: whether CERCLA requires a plaintiff to prove a defendant's knowledge that its disposed trash contains hazardous material. ECF 910. The United States Court of Appeals for the Fourth Circuit ruled in favor of the Work Group, remanding the case back to this Court for further proceedings. ECF 921. Following remand, Plaintiffs filed their SAC, which removed the Work Group as a Plaintiff in favor of six Plaintiff entities who were among the settling PRPs. ECF 934.

## II. Factual Background

This Court provided a detailed factual background in its earlier memorandum opinion, ECF 786, which it incorporates by reference herein. Essentially, however, waste disposal activities occurred between the 1950s and the early 1970s at the 68th Street Site, which is comprised of seven landfills and the surrounding acreage. ECF 934 ¶¶ 4, 6. One of the entities operating a permitted landfill at the Site during that time was Robb Tyler, Inc. ("Robb Tyler"), an entity providing waste hauling services for several area businesses. *Id.* ¶¶ 11, 12.

Plaintiffs, among others, were identified by the government as PRPs who had engaged in or arranged for waste disposal at the Site. *Id.* ¶¶ 14, 17. Along with other members of the 68th Street Site Work Group, an unincorporated association of PRPs, the six Plaintiffs entered into an Administrative Settlement Agreement and Order for Remedial Investigation and Feasibility Study in 2006. *Id.* ¶ 17. Eventually, in 2017, the United States District Court entered a Consent Decree

3

for Remedial Design/Remedial Action ("Consent Decree") between EPA and the State of Maryland, on the one hand, and a group of PRPs (the "Settling PRPs") on the other hand. *Id.* ¶ 23; *United States v. AAI Corp., et. al.*, No. 17-cv-2909-RDB, ECF 8 (D. Md. Nov. 29, 2017). The Settling PRPs included Plaintiffs. *Id.* ¶¶ 23, 34. The Work Group is not a signatory to the Consent Decree. Plaintiffs have incurred and will continue to incur response costs to fulfill their obligations under the Consent Decree. *Id.* ¶¶ 25-27.

Plaintiffs allege that each Defendant arranged with Robb Tyler to dispose of its waste containing hazardous substances at the 68th Street Site. *See id.* ¶¶ 42-48, 52-53, 68-74, 82-83, 108-112, 114-119, 121-122, 128-130, 136-137, 170-194, 197, 199-200, 213-215, 219-220. In relevant part, Plaintiffs allege that each Defendant's waste stream contained general office waste, which in turn contained at least the following fourteen hazardous substances: acetone, benzene, cadmium, dichloroethylene, lead, methyl ethyl ketone, methylene chloride, perchloroethylene, toluene, trichloroethane, trichloroethylene, vinyl chloride, xylene, and zinc. *Id.* ¶¶ 50-51, 80-81, 119-120, 134-35, 197-198, 217-218.

### III.   Analysis

#### A.   Real Party in Interest/Standing Issue

As described above, the original Complaint in this case listed the Work Group as the plaintiff, ECF 1 at 4, 9, while the SAC names six corporate Plaintiffs, ECF 934 at 1-2, 7. Although Plaintiffs made that change in response to this Court's earlier ruling that the Work Group did not qualify as a real party in interest, ECF 786 at 53-55, Defendants now argue that the corporate Plaintiffs lacked standing to sue at the time of the inception of this action because they had assigned their claims to the Work Group. ECF 952-1. Because a plaintiff must have standing to sue throughout a case's lifespan, Defendants contend, Plaintiffs are unable to bring their claims at this

juncture. *Id*. at 2. While Plaintiffs' approach to this litigation indisputably has caused unnecessary complications, this Court ultimately disagrees with Defendants' assertion that both the Work Group and its corporate members are precluded from maintaining this action.

The Fourth Circuit's decision in *Martineau v. Wier*, 934 F.3d 385 (4th Cir. 2019), is both binding and instructive. The plaintiff in that case, Paige Martineau, suffered an assault and serious injury in a stabbing attack by another tenant at her apartment building. *Id.* at 387. She hired counsel to pursue relief from that tenant and her landlords, ultimately settling the case against her landlords based on their representation that they had only a standard business relationship with the other tenant and did not know of his severe mental illness or propensity for violence. *Id.* Martineau later learned that her landlords were relatives of the tenant and had "ample knowledge" of his mental issues and violent tendencies. *Id.* at 388. Subsequently, Martineau filed for Chapter 7 bankruptcy. *Id.* After her bankruptcy proceedings concluded, Martineau filed a legal action against her landlords and the tenant, trying to rescind the settlement agreement as fraudulently induced. *Id.* The landlords argued, in relevant part, that Martineau lacked standing to pursue her tort claims because legal claims are property of the bankruptcy estate and could only be asserted by the trustee. *Id.* Subsequently, Martineau petitioned the bankruptcy court to reopen her proceedings, and she filed amended schedules listing her claims against the landlords and the tenant. *Id*. at 388-89. The bankruptcy court granted Martineau's motion to reopen the proceedings and appointed a trustee, but the bankruptcy trustee abandoned any interest in Martineau's claims and closed her bankruptcy case. *Id.* at 389.

The United States District Court in *Martineau* concluded that she lacked standing to sue because "the bankruptcy trustee alone had exclusive standing to pursue this action at the time [Martineau] filed her complaint." *Id.* at 391. The fact that Martineau later regained standing when

5

the trustee abandoned the claims did not persuade the district court, because it found she did not have "Article III standing at the outset of the litigation." *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*¸ 528 U.S. 167, 180 (2000)).

The Fourth Circuit disagreed. In so doing, it found that the district court's analysis "conflates Article III standing with the distinct issue of whether Martineau or her bankruptcy trustee was the 'real party in interest,' legally entitled to pursue these claims." *Id.* at 391. It framed the standing question as whether Martineau had "a distinct injury at the hands of" the defendants, "traceable to their conduct, and redressable by a favorable decision" on her claims. *Id.* Answering those questions in the affirmative, the Fourth Circuit determined that the related question of whether, at the time of the complaint, Martineau "was legally entitled to pursue these tort claims on her own behalf" was a "real party in interest" issue under Rule 17 of the Federal Rules of Civil Procedure, not a standing question. *Id.*

Under Rule 17 of the Federal Rules of Civil Procedure, "an action must be prosecuted in the name of the real party in interest." Fed R. Civ. P. 17(a). The function of the "real party in interest" doctrine is "to enable a defendant to present defenses he has against the real party in interest, to protect the defendant against a subsequent action by the party actually entitled to relief, and to ensure that the judgment will have proper res judicata effect." *Va. Elec. & Power Co. v. Westinghouse Elec. Corp.*, 485 F.2d 78, 84 (4th Cir. 1973). "To determine whether the requirement that the action be brought by the real party in interest has been satisfied, the court must look to the substantive law creating the right being sued upon to see if the action has been instituted by the party possessing the substantive right to relief." 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1544 (3d ed. 2021).

Applying those standards, the Fourth Circuit concluded in *Martineau* that by the time the district court and Fourth Circuit issued their rulings in the case, the bankruptcy trustee had abandoned the claims, bringing them outside the bankruptcy estate and restoring Martineau as the real party in interest with the right to bring the claims on her own. 934 F.2d at 392-393. Because she had possessed standing all along and was now the real party in interest, she was entitled to maintain her suit. *See id.* at 393.

This case is analogous, although it does not present in a bankruptcy context. The present Plaintiffs, some of the individual corporate members of the Work Group, have had standing throughout the litigation. They suffered a distinct injury at the hands of the Defendants (in the form of payments they have made to remediate the Site without compensation), traceable to the conduct of the Defendants (failure to pay for their share of the remediation) that would be redressable by a favorable decision on their CERCLA claims. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).[1] Their assignment of their claims to the Work Group, therefore, did not deprive them of standing to sue.

Of course, the assignment of claims can affect a party's present entitlement to bring suit – in other words, which party qualifies as the real party in interest at a given time. As this Court reasoned in its 2021 opinion, the real party in interest according to CERCLA is the corporate Plaintiffs who signed the Consent Decree with the government, not the Work Group that those

---

[1] The only two cases Defendants cite to argue that assignment of a CERCLA claim deprives a potential claimant of standing are both non-binding and unpersuasive. *See* ECF 952-1 at 13 & n.4. One such case, *JFE Steel Corp. v. ICI Ams., Inc.*, 797 F. Supp. 2d 452, 465 (D. Del. 2011), contains little analysis on this point and uses the term "standing" though it really describes a real party in interest issue. The other case, *Elite Operations, Inc. v. Union Pac. R.R. Co.*, Civ. No. H-13-3461, 2015 WL 5474434, *4-*5 (S.D. Tex. Sept. 17, 2015), includes a standing analysis that appears in conflict with the Fourth Circuit's analysis in *Martineau*. Additionally, while *Elite Operations* is about a decade old, it has never been cited by any court as persuasive authority. This Court, also, declines to follow it in light of the contradictory analysis by the Fourth Circuit.

corporate Plaintiffs later formed. ECF 786 at 55-57. But, unlike Article III standing, real party in interest analysis can change throughout the course of litigation and is not locked as of the date of an action's filing. As the Fourth Circuit explains, "Rule 17 makes clear that circumstances on the date of filing do *not* control, prohibiting courts from dismissing a complaint on real-party-in-interest grounds without first providing the real party in interest with the opportunity to 'ratify, join, or be substituted into the action." *Martineau*, 934 F.3d at 392 (quoting Fed. R. Civ. P. 17(a)(3)) (emphasis in original).

Assessing the convoluted twists and turns of this case, Plaintiffs are the real parties in interest at the present moment. They are the original signatories to the Consent Decree with EPA and the State of Maryland. ECF 934 ¶¶ 23, 34. Presently, they are legally entitled to pursue their claims because they have revoked their earlier revocable assignment to the Work Group of their rights to bring these claims. *See* ECF 965 at 5; ECF 935. They, as individual corporate entities, have expended funds (by virtue of their contributions to the Work Group's coffers) and "will continue to incur response costs" for the express purpose of remediating the 68th Street Site. *See* ECF 934 ¶¶ 25-27. Because they are real parties in interest and had Article III standing under *Spokeo* at the time the original Complaint was filed, the six Plaintiffs are entitled to maintain this suit.

### B. Rule 12(b)(6) Motions to Dismiss

#### 1. Legal Standards

The remaining motions to dismiss, ECF 953, 955, 958, invoke Rule 12(b)(6), alleging that either Plaintiffs' allegations relating to successor liability or those relating to arranger liability are deficient. Rule 12(b)(6) permits a defendant to test the legal sufficiency of a complaint by way of a motion to dismiss. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty*.

*Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken

9

as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011)..

Courts generally do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to

10

the affirmative defense 'clearly appear[] *on the face of the complaint*.'" *Goodman*, 494 F.3d at 464 (emphasis, and second alteration, in original) (quoting *Forst*, 4 F.3d at 250).

### 2. Successor Liability

Two Defendants, Solo Cup and C&I, challenge whether Plaintiffs have adequately pleaded facts to support a plausible claim of successor liability as to their companies. ECF 955, 958. As this Court reviewed in its 2021 opinion, ECF 786, the Fourth Circuit has recognized that a corporate successor may be held liable for its predecessor's actions under CERCLA. *PCS Nitrogen Inc. v. Ashley II of Charleston LLC*, 714 F.3d 161, 173 (4th Cir. 2013); *United States v. Carolina Transformer Co.*, 978 F.2d 832, 837 (4th Cir. 1992). However, because CERCLA does not expressly discuss successor liability, courts apply the standard common law rule that a corporation that acquires the assets of another does not also acquire its liabilities, except in four limited circumstances:

> (1) the successor expressly or impliedly agrees to assume the liabilities of the predecessor;
> (2) the transaction may be considered a de facto merger;
> (3) the successor may be considered a 'mere continuation' of the predecessor; or
> (4) the transaction is fraudulent.

*PCS Nitrogen Inc.*, 714 F.3d at 173 (citing *Carolina Transformer*, 978 F.2d at 837).

Cases considering successor liability claims under a motion to dismiss standard have generally required the plaintiff (1) to identify which of the four exceptions it is invoking for successor liability and (2) to provide facts supporting the invocation of the chosen exception. *See, e.g., Leonard v. Bed, Bath & Beyond, Inc.*, No. 5:15-CV-00284-F, 2016 WL 158587, at *3 (E.D.N.C. Jan. 8, 2016) ("[I]n order to bring a claim against a corporation based on the conduct of its predecessor, a plaintiff must allege at least one basis for successor liability."). Courts have often dismissed complaints in which the plaintiff failed to identify a specific exception on which it

premised its assertion of successor liability, and complaints in which the plaintiff failed to assert sufficient facts to support the exception it asserted. *See, e.g.*, *id.* (concluding that the complaint "appear[s] to describe a run-of-the-mill sale of a business's assets—not the type of unusual transaction that would give rise to successor liability under one of the four exceptions."); *Carolina Power & Light Co. v. 3M Co.*, No. 5:08-CV-460-FL, No. 5:08-CV-463-FL, 2010 WL 11420854, at *16 (E.D.N.C. Mar. 24, 2010) (deeming allegations insufficient for failing to identify a particular theory where they "state[d] only that defendants [we]re 'successors in interest to' and/or 'responsible for the environmental liabilities of' various persons who sent [contaminated] transformers to [a site]."); *Metro Container Grp. v. AC & T Co., Inc.*, 450 F. Supp. 3d 583, 604-05 (E.D. Pa. March 30, 2020), *vacated on other grounds*, No. 18-3623, 2020 WL 3060381 (E.D. Pa. June 8, 2020) (allegations that defendant was responsible for the waste attributable to the predecessor "amount[ed] to conclusory finger-pointing . . . the lightest weight blanket allegations," and left defendants to "speculate as to what theory of liability attache[d] their liability."); *New York v. Town of Clarkstown*, 95 F. Supp. 3d 660, 682-83 (S.D.N.Y. 2015) (deeming an allegation that defendant "is the successor to" another entity without alleging any facts in support insufficient as a "conclusory claim."). Allegations amounting to a "laundry list" of possible successor liability findings are also insufficient in a CERCLA context. *See Hobart Corp. v. Dayton Power & Light Co.*, No. 3:13-cv-115, 2014 WL 631518, at *3 (S.D. Ohio Feb. 18, 2014) (dismissing an allegation that the defendant was "the legal successor in interest under the theories of de facto merger and/or mere continuation and/or assumption of liabilities to [predecessor company]" as conclusory).

At the outset, the factual allegations in the SAC are far more robust than those in the original Complaint with respect to successor liability of the remaining Defendants. In the original Complaint, the Work Group frequently asserted a "laundry list" of liability theories with few or no

factual allegations to support its claim. The SAC's allegations with respect to the two entities now contesting successor liability are described in greater detail below:

      **a. C&I**

Paragraphs 56-68 of Plaintiff's SAC, addressing successor liability as to C&I, state:

56. Defendant C&I Leasing, Inc. ("C&I Leasing") is the successor to and/or formerly known as and/or also known as Allegheny Pepsi-Cola Bottling Company and Pepsi Cola Bottling Co.

57. Defendant C&I Leasing, Inc. ("C&I Leasing" is the successor by merger to and/or formerly known as and/or also known as the entities identified on nexus documents for the 68th Street Site as Allegheny Pepsi-Cola Bottling Company, Pepsi Cola Co. and Pepsi Cola Bottling Co.

58. According to publicly available information, Morton Lapides' grandfather started a soft drink business in or about 1921, which evolved into the Pepsi-Cola Bottling Company of Baltimore in the 1930s.

59. According to publicly available information, Morton Lapides aquired [sic] Pepsi-Cola Bottling Company of Baltimore in or about 1962 and renamed it Allegheny Beverage Corporation.

60. According to the Maryland Department of Assessments & Taxation ("MDAT"), Allegheny Beverage Corporation was formed in or about 1966.

61. According to publicly available information from as early as 1968, Allegheny Pepsi-Cola Bottling Co. was a subsidiary of Allegheny Beverage Corporation.

62. According to publicly available information, Morton Lapides was identified as the chairman, President and/or Vice President of "Allegheny Pepsi-Cola Bottling Co." as well as "Pepsi-Cola Bottling Co." during the 1960s, with both names associated with an address at 400 Key Hwy. in Baltimore, Maryland.

63. According to nexus documents for the 68th Street Site, both Pepsi Cola Bottling Co. and Pepsi Cola Co. are associated with an address on Key Hwy. and 400 Key Hwy., respectively.

64. During the relevant time period, Pepsi Cola Co. and Pepsi Cola Bottling Co. were synonymous with Allegheny Pepsi-Cola Bottling Company.

65. According to publicly available information from 1985, Morton Lapides, chairman of Allegheny Beverage Corporation, was planning to sell Allegheny Pepsi-Cola Bottling Co. to PepsiCo, Inc.

> 66. According to MDAT, C&I Leasing, Inc. merged into Allegheny Pepsi-Cola Bottling Co. in or about September 1988, with the surviving entity changing its name to C&I Leasing, Inc.
>
> 67. According to the Securities and Exchange Commission, C&I Leasing is and/or was a Maryland subsidiary of PepsiCo, Inc.
>
> 68. C&I Leasing, by virtue of its merger with nexus party Allegheny Pepsi-Cola Bottling Co., is one and the same as and formerly known as nexus parties Pepsi-Cola Bottling Co. and Pepsi Cola Co.

ECF 934 ¶¶ 56-68.

It is clear that Plaintiffs invoke the merger/continuation theory of successor liability. C&I is correct that Plaintiffs' factual recitation does not completely "dot all the Is and cross all the Ts" with respect to establishing that exception to the successor liability rule. And Plaintiffs employ phrases, such as "synonymous with," that do not invoke any particular legal category. *See* ECF 934 ¶ 64. This Court finds, however, that Plaintiffs have set forth sufficient facts to justify a period of limited discovery on the issue of successor liability. The facts that Plaintiffs assert plausibly suggest continuity and merger, not asset acquisition of the type that would break a successorship chain. Allowing limited discovery on this issue, then, would allow both sides a fair opportunity to assess successorship before merits discovery begins.

### b. Solo Cup

The SAC includes thirty paragraphs of successor liability allegations relating to Solo Cup. ECF 934 ¶¶ 140-169. Essentially, Plaintiffs claim two distinct lines of successorship. First, relying on part on Solo Cup's Answer to the original Complaint along with facts in the public record, Plaintiffs contend that Maryland Cup Corporation and Sweetheart Cup Company, Inc. are predecessors to Solo Cup. ECF 934 ¶¶ 142-157. Second, Plaintiffs contend that Solo Cup "is one and the same as, the successor by merger or *de facto* merger to, or the mere continuation or alter

ego of, or otherwise assumed the liabilities of, the entity identified on the nexus records for the 68th Street Site as Solo Cup Co." *Id.* ¶ 158. In support of that contention, Plaintiffs cite a number of public records showing that various corporate entities, using identical addresses and incorporating the name "Solo Cup Company" or "SCC", qualified to do business and/or merged out of existence on the same dates. *Id.* ¶¶ 159-169.

The second "line" alleged is more problematic, as it involves conclusory allegations of successor liability without specifying which exception to successor liability is applicable. Further, it also involves a large number of transactions before the Defendant Solo Cup came into existence in 2005. The inferences that would need to be drawn to pass successor liability through each of those transactions would be even greater, and the lack of specificity regarding the applicable exception for each transaction makes those inferences less palatable. However, Plaintiffs' first "line" of successor liability, while unable to fill in all of the relevant facts, is less of a "throw spaghetti at the wall and see what sticks" approach than the second "line." This Court again agrees with Plaintiff that it should exercise its discretion to permit an initial period of limited discovery on successor liability. Allowing that limited period, followed by an opportunity to present a new dispositive motion if appropriate, best facilitates the interests of both parties at this stage and is supported by the facts Plaintiffs allege in the SAC.

   **2. Arranger Liability**

Several Defendants also seek dismissal on the grounds that the SAC does not adequately allege arranger liability. ECF 953, 958. Of course, in evaluating a motion to dismiss, the Court takes all of Plaintiffs' allegations to be true. As compared to the original Complaint in this case, Plaintiffs' SAC significantly expanded the factual allegations pertaining to each remaining

15

defendant, both in terms of successor liability and in terms of allegations regarding their waste streams. *Compare* ECF 1 *with* ECF 934.

Defendants argue that Plaintiffs' bolstered factual allegations remain insufficient.[2] Specifically, they argue that Plaintiffs' allegations regarding hazardous substances that "would have been" in their waste streams is overly conclusory, that "disposal of non-hazardous waste streams does not create CERCLA liability," that the items listed in C&I's 104(e) responses were not hazardous, that Plaintiff's boilerplate list of business endeavors and related hazardous substances is too generalized and conclusory, and that the defendants are not alleged to have "owned or possessed" the hazardous substances, as all they were doing was disposing of regular non-hazardous trash. *See generally* ECF 953, 958, 968, 969.

In light of the Fourth Circuit's guidance in the appeal of this matter, this Court disagrees. Of course, Plaintiffs had the ability to hone in, with greater precision, on specific hazardous substances likely to be attributable to each business's known waste. For example, for C&I and its related companies, Plaintiffs could have focused on the hazardous substances associated with empty soda cans instead of relying on general office waste. *See* ECF 934 ¶ 80.

However, instead of surmising how the allegations could be stronger, this Court is constrained to take as true whatever factual allegations Plaintiffs assert. And while Plaintiffs approached each defendant's liability in a somewhat boilerplate fashion, the allegations in the SAC plausibly assert a claim: each Defendant arranged for the disposal of its workplace trash including its general office waste, and general office waste in the relevant time frame contained a number of

---

[2] To the extent Defendants' arguments rely on excerpts from this Court's original opinion, their arguments are unpersuasive in light of the Fourth Circuit's subsequent discussion of this case, which emphasized CERCLA's "broad strict liability and narrow defenses and exemptions." ECF 921-2 at 22 (citing *PCS Nitrogen Inc. v. Ashley II of Charleston LLC*, 714 F.3d 161, 185 (4th Cir. 2013).

hazardous substances. Given the Fourth Circuit's unequivocal holding that CERCLA imposes no intent or knowledge requirement, arranger liability includes businesses engaged in standard waste disposal using a local trash collector service, so long as their trash contained any quantity of any hazardous substance. *See* ECF 921-2 at 17, 22-23. Here, if the Court accepts, as it must, the allegation that each Defendant's trash contained general office waste and the allegation that general office waste in that time contained hazardous substances, those allegations are sufficient to state a plausible claim (when combined with the allegations about Defendants' use of Robb Tyler to transport their waste to the Site).

Of course, the Defendants will have their opportunities to prove that Plaintiffs' assertions are not substantiated by evidence. The Defendants will be free, following discovery, to defend this case on a variety of grounds: "our company did not do general office work," or "our general office waste did not contain pencils or other common substances" or "the trash Robb Tyler picked up from our facility did not belong to us." Perhaps one or more Defendants will offer contrary expert testimony that general office waste does not contain any of the hazardous substances Plaintiffs allege. But at this stage, this Court must accept as true the facts as alleged by Plaintiffs. Plaintiffs' allegations in the SAC are sufficiently detailed and plausible to require Defendants' motions to dismiss to be denied.

### IV. Conclusion

For the reasons set forth above, the four pending Motions to Dismiss, ECF 952, 953, 955, and 958, are DENIED. This Court will schedule a teleconference with the parties to discuss a discovery schedule, which will commence with a period of discovery on successor liability for C&I and Solo Cup and an opportunity for those entities to seek summary judgment on successor liability, if appropriate, before general liability discovery begins. A separate Order follows.

Dated: February 13, 2025 /s/
Stephanie A. Gallagher
United States District Judge